IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TIFD III-E INC.,THE TAX MATTERS PARTNER OF CASTLE HARBOUR-I LIMITED-LIABILITY COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CASE NOS. 3:01CV01839(SRU) |
| | ) 3.01CV01840(SRU) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) |

UNITED STATES' MEMORANDUM OPPOSING
PLAINTIFF'S ASSERTION OF PRIVILEGE CLAIMS

INTRODUCTION

The plaintiff provided the United States and the Court copies of a revised privilege

log, consisting of 78 pages, on February 6, 2004. There are 139 entries on this revised

privilege log, which describes, sparsely, 139 documents which the plaintiff continues to

withhold from the United States on grounds of privilege, either attorney-client or

attorney work product.   The United States is informed, by plaintiff's letter dated

February 6, 2004, that the Court has been provided copies of the 139 documents

referred to in this revised privilege log.  Having reviewed this revised privilege log, the

United States contends that the plaintiff has forfeited its privilege claims with respect to

certain subject matters to which many of the withheld documents pertain for the

reasons set forth below.

DISCUSSION

I.    Plaintiff Has Forfeited Privilege Claims Regarding Its Intent or Purpose for
the Castle Harbour Transaction

In the Second Circuit, "[a] transaction is a sham if it is fictitious or if it has no

business purpose or economic effect other than the creation of tax deductions."

DeMartino v. Commissioner,  862 F.2d 400, 406 (2d Cir. 1988); Nicole Rose, 320 F.3d

282, 284 (2d Cir. 2002); Gilman v. Commissioner, 933 F.2d 143, 147 (2d Cir. 1991).

In Jacobson v. Commissioner, 915 F.2d 832, 837 (2d Cir. 1990), the Court held that

"[a] sham transaction analysis requires a determination of 'whether the transaction has

any practicable economic effects other than the creation of income tax losses.'" 915

F.2d at 837.

The determination of "[w]hether a transaction lacks economic substance is a

question of fact." Lee v. Commissioner, 155 F.3d 584, 586 (2d Cir. 1998).  Further,

"[i]n determining whether an activity is engaged in for profit, greater weight is given to

objective facts than to the taxpayer's mere statement of intent." Id. Accord Jacobson

v. Commissioner, 915 F.2d at 838.

In Gilman, the Second Circuit affirmed the Tax Court's economic substance

analysis from "the standpoint of a prudent investor." 933 F.2d at 146-48.   The Tax

Court had required the taxpayer to demonstrate that "a prudent investor could have

concluded that there was a realistic opportunity" to profit from the transaction.  933

F.2d at 147-49. See also ACM Partnership v. Commissioner, 157 F.3d at 258 ("a

nominal, incidental pre-tax profit ... would not support a finding that the transaction was

designed to serve a non-tax profit motive").

-2-

The plaintiff contends that there was a business purpose other than tax avoidance for the Castle Harbour transaction.  To support this position it has offered documents, some redacted on grounds of privilege, and deposition testimony.  It is expected that the plaintiff will offer trial testimony on this matter.  Unless plaintiff can demonstrate such business purpose, it cannot prevail in this litigation.

By placing at issue GECC's intent–the ultimate beneficiary of the tax savings– in undertaking the Castle Harbour transaction, and offering documents and witnesses to establish a business purpose, the plaintiff  forfeited all privilege claims pertinent to this issue.  John Doe Co. v. United States (In Re Grand Jury Proceedings), 350 F.3d 299 (2d. Cir. 2003) ("at issue waiver" or "implied waiver" described as "forfeiture" of privilege);  U.S. v. Bilzerian, 926 F.2d 1285, 1292 (2d. Cir. 1991).   It is inherently unfair for the plaintiff to produce documents or provide testimony to support a business purpose for Castle Harbour and, at the same time, withhold documents, either in their entirety or partially, on the basis of privilege, which relate to another purpose for Castle Harbour, tax avoidance.  Sanofi-Synthelabo v. Apotex, 2004 WL 113485 (S.D.N.Y., Jan. 26, 2004) (unfairness results from partial explanation for an action when complete explanation is relevant). As the plaintiff apparently contends that its tax planning was legitimate, such planning was part of its business purpose and cannot be fairly withheld from the United States in this action.  Gregory v. Helvering, 293 U.S. 465, 469 (1935) (right of taxpayer to decrease taxes cannot be disputed); UPS v. Commissioner, 254 F.3d 104, 1019 (11th Cir. 2001) (the concept of "business purpose" is corollary to axiom that tax planning is permissible).

II    "Pitch" Documents and Opinion Letters Demonstrate the Unfairness of
       Plaintiff's Privilege Claims

Item No. 441 on plaintiff' privilege log is an example of a privilege claim that should

be considered forfeited.  Plaintiff redacted a portion of document bates stamped

71262, claiming attorney-client privilege.  This document forms part of  the proposal

("pitch") to GECC executives for approval of Castle Harbour.  Another copy of the

same document was part of Exhibit I to the deposition of Robert O'Reilly, a former

GECC executive who signed off on the Castle Harbour transaction.  Mr. O'Reilly

testified about the approval process and is likely to be a trial witness for the plaintiff.

(Reilly Ex. 1 consisted of four pages, bates stamped 76301 through 76304; page

numbered 71262 is the same as 76301; Reilly Ex. 1 contains signatures of the GECC

executives approving the transaction.) (Copy Attached as Exhibit 1.)

To permit the plaintiff's redaction to stand is inherently unfair.   The plaintiff has

made a selective disclosure of portions of the proposal, which is a product of both

business and legal advice, yet have declined to reveal a portion of the legal advice

(identified in the privilege log as that of Richard D'Avino, Chief Tax Counsel for

GECC).  Plaintiff has proffered testimony and documents which purport to establish

"business purpose" but here attempts to keep from the United States the entirety of

one of the key documents, the actual "pitch" made to GECC executives to approve

Castle Harbour.  Having made a claim of "business purpose," the plaintiff should not

be able to selectively withhold documents or portions of documents which pertain to

the intent of either the plaintiff, or its corporate parent (GECC), in entering into the

Castle Harbour transaction.  Pitney-Bowes, Inc. v. Mestre, 86 F.R.D. 444, 447

(S.D.Fla. 1980) (plaintiff placed in issue, "the very soul of this litigation," the intent of the parties with regard to contract terms).

Another example is privilege log entry No. 210. The author of this document, Robert O'Reilly testified at his deposition about the "business purpose" of GECC in forming Castle Harbour. He is an expected trial witness for the plaintiff on this very issue. He undoubtedly acted upon the "legal advice" purported to be in this document, even though Mr. O'Reilly (not a lawyer) is the author of the document which is dated after the formation of Castle Harbour. It is inherently unfair to the United States in this action to withhold any aspect of Mr. O'Reilly's knowledge or opinions about Castle Harbour's purpose as he was one of the executives approving this transaction. Plaintiff cannot pick and choose among O'Reilly's statements or base of knowledge on this topic once it placed his role in the approval process and his knowledge about the transaction at issue, as it now attempts to do.

Similarly, document No. 906 should be disclosed in its entirety. This document apparently is the final tax opinion letter from King & Spalding regarding the propriety of the Castle Harbour transaction. It is 91 pages in length, according to the revised privilege log. Again, plaintiff, and GECC, have produced numerous documents concerning their "business purpose" intent for entering into Castle Harbour but have claimed attorney-client privilege with respect to the "non-business purpose or tax purpose" for the same transaction. Having raised the issue of intent as the justification basis for its claiming of tax benefits, placing $62 million at issue in this suit, all documents reflecting intent of Castle Harbour and GECC should be available to the

-5-

United States and the Court in this litigation. The tax opinion from King & Spalding should not be exempt.

Further, if plaintiff will rely upon the King & Spalding opinion to defend against the penalties which the Internal Revenue Service asserted in the Final Notice of Partnership Administrative Adjustment for the taxable years 1997 and 1998, the King & Spalding opinion must be disclosed now. See, Long-Term Capitol Holdings v. United States, 2003 WL 1548770, 91 AFTR 2d 2003-1139, 2003-1 USTC ¶ 50,304 (D. Conn. 2003.)

## CONCLUSION

The plaintiff in this action forfeited any otherwise valid privilege claims, attorney-client or attorney work product, with respect to the allegation of a business purpose for the Castle Harbour transaction. It is inherently unfair to allow the plaintiff to pick and choose which relevant documents should be provided the United States and the Court with respect to this issue, which in many ways is "the very soul of this litigation." Pitney-Bowes, 86 F.R.D. at 447. The forfeiture of privilege must encompass all relevant documents, including the 139 documents withheld from the United States and

-6-

set forth on plaintiff's revised privilege log.  <u>United States v. Exxon Corp.</u>, 94 F.R.D. 246, 249 (D.D.C. 1981):

> . . .the waiver must pertain to all documents bearing upon the subject matter of the defense.  Otherwise, the party interposing the defense is free to divulge only those documents that are most favorable to his defense; this is precisely the inequitable result that the waiver doctrine seeks to avoid.

Dated: February _/ 7_, 2004


JOHN A. DANAHER III
United States Attorney

JOHN B. HUGHES
Chief, Civil Division


ROBERT J. HIGGINS (ct23378)
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C.  20044
Telephone: (202) 307-6580
Facsimile: (202) 514-5440

# TRANSPORTATION & INDUSTRIAL FUNDING          PROJECT AIRLEASE

- Raise $120MM of Capital (Off-Balance Sheet Financing for Rating Agency Purposes and Equity Capital for GAAP Purposes)

- Reduce Deferred Tax Liabilities, Creating Significant Current Year Net Book Income ($50-55MM)

- Enhanced Cash Economic Benefit ($65.0MM NPV)

- REDACTED

- Foreign Investors Increase Tax Risks And Significantly Limit Operational Flexibility

|  | Book Income |
|---|---|
| 1993 | $50-55MM |
| 1994-2000 | $20-22MM |
| Cumulative Total | $70-77MM |

CONFIDENTIAL
ATTORNEY/CLIENT
PRIVILEGED INFORMATION
STRICTLY PRIVATE

**TAX EFFICIENT STRUCTURE RAISES SIGNIFICANT CAPITAL AND PRODUCES ATTRACTIVE BOOK INCOME PROFILE**

0076301

MN 054694

EXHIBIT

## TRANSPORTATION & INDUSTRIAL FUNDING

### PROJECT AIRLEASE

CONFIDENTIAL
ATTORNEY/CLIENT
PRIVILEGED
INFORMATION
STRICTLY PRIVATE

- Participation In Partnership With Foreign Investors Requires GE Capital To Severely Limit Involvement With Aircraft

  **All Operations, Accounting and Decision-Making Activities Involving Aircraft Must be Undertaken Outside the United States**

  - Accounting/Operations -- U.K./Ireland

  - Decision-Making -- Hong Kong

- Participation In Partnership Eliminates Ability to Actively Manage Aircraft . . . Even Outside the U.S.

  **No Significant Changes Can Be Made To Aircraft or Leases (e.g. Re-engining or Lease Workouts) Prior To Partnership Unwind In 2000 or Removal of Aircraft from Partnership**

| | Aircraft | Lease |
|---|---|---|
| 26 | 727-200 | American |
| 21 | 737-200 | Delta |
| 8 | 737-200 | U.S. Air |
| 3 | DC 9-30 | U.S. Air |
| 2 | DC 10-30 | Continental |
| 2 | 727-200 | Continental |
| 1 | 747-300 | Swissair |
| 63 | Aircraft ($555MM FMV subject to $256MM debt) | |

**STRUCTURE SIGNIFICANTLY LIMITS OPERATIONAL FLEXIBILITY**

0076302

MN 054695



PROJECT AIRLEASE

TRANSPORTATION & INDUSTRIAL FUNDING

GE CAPITAL

TFC

$246.6MM Cash
$555MM FMV Aircraft Subject to
$258MM debt

TFD III-M

$6.6M Cash

GE Capital Advisory
Services (U.K.)

CONFIDENTIAL
ATTORNEY/CLIENT
PRIVILEGED
INFORMATION
STRICTLY PRIVATE

$6.6M Cash

EQUITY INVESTORS

CASTLE HARBOUR-I LIMITED LIABILITY
COMPANY

Cash $363.6MM

CASTLE HARBOUR LEASING INC.

TFD III-E

$240 MM Cash
Aircraft

$240MM Cash
Aircraft

0076303

CH242036

PROJECT AIRLEASE

TRANSPORTATION & INDUSTRIAL FUNDING

APPROVED BY:

D. J. NAYDEN

J.A. PARKE

R. D'AVINO

0076304

MN 054697

CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing United States' Memorandum Opposing

Plaintiff's Assertion of Privilege Claims has been made upon the following by depositing

the original thereof in the United States mail, postage prepaid, and courtesy copies by

facsimile, this ___ day of February , 2004:

> Anthony M. Fitzgerald
> CARMODY & TORRANCE LLP
> 195 Church Street
> P.O. Box 1950
> New Haven, Connecticut 06509-1950
> (Facsimile) (203) 784-3199
>
> David J. Curtin
> MCKEE NELSON LLP
> 1919 M Street, N.W., Suite 800
> Washington, D.C. 20036
> (Facsimile)  (202) 775-8586
>
> Suzanne C. Feese
> KING & SPALDING
> 191 Peachtree Street
> Atlanta, Georgia 30303-1763
> (Facsimile) (404) 572-5147
>
> ROBERT J. HIGGINS (ct23378)
> Trial Attorney, Tax Division
> U.S. Department of Justice
> Post Office Box 55
> Washington, D.C.  20044
> Telephone: (202) 307-6580
> Facsimile: (202) 514-5238