**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TIFD III-E INC., the Tax Matters Partner of CASTLE HARBOUR-I LIMITED-LIABILITY COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES OF AMERICA, )<br><br>Defendant. ) | Case Nos.: 3:01-CV-01839 (SRU) (lead case)<br>3:01-CV-01840 (SRU) |

**PLAINTIFF'S RESPONSE TO UNITED STATES' MEMORANDUM OPPOSING
PLAINTIFF'S ASSERTION OF PRIVILEGE CLAIMS**

**I.   Introduction**

This memorandum is submitted in response to the government's broad and belated assault on plaintiff's attorney-client privilege. While no formal motion has been filed, the government is the moving party, seeking an unprecedented and erroneous ruling that plaintiff's privilege should be forfeited.

In November of last year, the government questioned by letter—in summary fashion— plaintiff's assertions of attorney-client privilege and work product doctrine protection over 265 documents, claiming that the documents were unprotected in whole or part. Plaintiff fully resolved the government's challenges with respect to 126 of these documents, and at the government's insistence, submitted the remaining 139 documents to the Court for *in camera* review on February 6, 2004. Along with the 139 documents, plaintiff submitted a log containing, for each document, its original privilege log entry, the government's challenge to that document, and plaintiff's response to the government's challenge. On February 17, 2004,

plaintiff submitted a letter to the Court setting forth legal authority and arguments supporting its assertions of privilege and work product protection in response to the government's summary challenges to privilege. Plaintiff supplied the government with copies of its February 6 log and its February 17 letter to the Court.

On February 17, 2004, after reviewing plaintiff's February 6 log, the government filed its UNITED STATES' MEMORANDUM OPPOSING PLAINTIFF'S ASSERTION OF PRIVILEGE CLAIMS ("Def. Memorandum") in support of its implied motion. In its memorandum, after its review of plaintiff's February 6 log, the government abandons its previous varied arguments that the 139 documents are not protected by the attorney-client privilege or work product doctrine protection, and instead asserts for the first time that the Court should invoke a broad forfeiture of plaintiff's attorney-client privilege with respect to any communications concerning tax advice relating to the Castle Harbour partnership transaction.[1] Notably, in making this broad argument, the government does not, and cannot, assert that plaintiff has placed the advice of its legal counsel directly at issue. Similarly, the government does not cite any other grounds for forfeiture recognized by the courts. Instead, the government argues that it is entitled to judicial forfeiture of plaintiff's privilege on fairness grounds because discovery has shown strong evidence that business exigencies led to the Castle Harbour transaction.

The government's claim that fairness to it requires the extraordinary forfeiture of plaintiff's privilege is particularly unfair to the plaintiff in this case, where the IRS first raised the business purpose issue by asserting in its Notices of Final Partnership Administrative

---

[1] The government states, "Having reviewed this revised privilege log, the United States contends that the plaintiff has forfeited its privilege claims with respect to certain subject matters to which many of the withheld documents pertain for the reasons set for the below." Def. Memorandum at 1.

Adjustment, the notices precipitating this litigation (the "FPAAs"), that there was no business purpose for the Castle Harbour transaction. Plaintiff defended against this assertion by challenging it in its complaint, as it was compelled to do. The government now makes the erroneous argument that it would be unfair to the government to allow the plaintiff to dispute the IRS's assertion and at the same time maintain privilege. The only unfairness here would be to deprive the plaintiff of its privilege because it disputes the IRS's assertion concerning business purpose. Plaintiff will prove business purpose and thereby disprove the IRS's assertion in its FPAAs. Plaintiff is not relying on legal advice or privileged communications to dispute the IRS's claim of no-business purpose. No concept of fairness, forfeiture, or waiver supports the government's unfair effort to destroy plaintiff's privilege under these circumstances. Indeed, were the Court to grant the government's implied motion, it would signal a fundamental change in the law of privilege as it relates to tax litigation. There is no history or practice in tax litigation of the courts invoking forfeiture of the taxpayer's privilege on the grounds that the taxpayer disputes the IRS's position that the transaction in question lacked business purpose. In tax cases, a taxpayer's privilege can be waived by specific acts of partial disclosure of privileged communications or by the taxpayer's reliance on a legal opinion as a defense against the IRS's assertion of penalties. *See, e.g., Long-Term Capital Holdings v. United States*, No. 3:01 CV 1290 (JBA), 2003 WL 1548770, at *6-7 (D. Conn. Feb. 14, 2003). The courts have not, however, given the IRS the broad power now sought from this Court by the government to control and destroy a taxpayer's attorney-client privilege and work product doctrine protections.

      During the course of discovery in this case, the facts presented in the documents and in deposition testimony demonstrate that there was real business purpose for entering into the Castle Harbour transaction. Immediately following the first Gulf War in 1991, the commercial

airline industry suffered a severe downturn, which led to industry instability and the bankruptcy of several major commercial airlines. The effects of this downturn rippled through to the commercial aircraft leasing industry, in which plaintiff's parent, General Electric Capital Corporation ("GECC"), was a major player. In 1992, GECC set out on a process of attempting to sell down, or reduce, its exposure in the commercial aircraft leasing industry, and the evidence will show that this process led directly to the creation of the Castle Harbour commercial aircraft leasing partnership in 1993.

Faced with this business purpose evidence, the government sought, and received, a four-month extension of the discovery period. During the course of more than two years of discovery, including the extension period, the government has deposed over twenty people and has sought and secured testimony on the business purposes for and tax aspects and ramifications of the Castle Harbour transaction. Indeed, the government points to no instances where deponents have refused to answer the government's questions on these topics. Also, plaintiff has produced over 17,000 documents, consisting of over 100,000 pages, many of which bear on these very topics. Significantly, the government does not direct the Court's attention to any specific deposition testimony to support a claim that plaintiff has partially disclosed privileged communications while withholding the balance of such privileged communications. No such sword-and-shield use of the privilege exists in this case.

Despite its efforts, the government is disappointed that it has not discovered evidence to refute the strong evidence of business purpose it has discovered. In a last-ditch effort to develop any evidence it might be able to use against plaintiff, the government is urging the Court, the trier of fact in this case, to comb through plaintiff's privileged communications and tease out any tidbits that the government might use to its advantage. In the government's view, fairness

requires the Court to assist the government in developing a record of what legal advice concerning taxes was requested by and given to plaintiff because the government has been unable to develop a favorable record on the business purpose dispute. Even if the fairness doctrine had any application in this instance, this is not what the fairness doctrine requires. The government's retreat to the use of a broad forfeiture argument to attack privilege is without merit and should be rejected.

## II.     The Sham Transaction Doctrine

The government's ill-conceived fairness doctrine argument relies on a misreading of Second Circuit case law. First, the government asserts that under the sham transaction doctrine, plaintiff "cannot prevail in this litigation" unless it can demonstrate the presence of a business purpose. *See* Def. Memorandum at 3. This assertion is incorrect. Under Second Circuit law, a transaction will not be disregarded as a sham in substance for federal income tax purposes unless it has neither business purpose nor objective economic effect. *See DeMartino v. Commissioner*, 862 F.2d 400, 406 (2d Cir. 1988) (stating that a transaction is a sham for tax purposes "if it has no business purpose or economic effect other than the creation of tax deductions").[2] Thus, contrary to the government's assertion, it is not always necessary for the taxpayer to establish a business purpose. *See Rosenfeld v. Commissioner*, 706 F.2d 1277, 1281 (2d Cir. 1983) ("Many financial decisions are motivated by the prospect of legitimate tax savings, rather than business concerns, and we have already expressed our agreement with Judge Learned Hand's view that a

---

[2] This disjunctive articulation of the sham in substance doctrine is consistent with the test for sham transactions first articulated by the Fourth Circuit in *Rice's Toyota World, Inc. v. Commissioner*, 752 F.2d 89 (4th Cir. 1985). The *Rice's Toyota* test provides that, "[t]o treat a transaction as a sham, the court must find that the taxpayer was motivated by no business purposes other than obtaining tax benefits in entering the transaction, and that the transaction has no economic substance because no reasonable possibility of a profit exists." *Id*. at 91.

5

transaction which is otherwise legitimate, is not unlawful merely because an individual seeks to minimize the tax consequences of his activities.").

More important at this point to the resolution of the issue before the Court, the government's argument is flawed by the mistaken premise that evidence of tax planning informs the business purpose inquiry. Even in those cases where a taxpayer is required to establish a business purpose, the appropriate inquiry is "whether there is a legitimate non-tax business reason for the form [of the transaction]; in other words, were the parties motivated *at least in part* by reasons unrelated to taxes." *Newman v. Commissioner*, 902 F.2d 159, 163 (2d Cir. 1990) (emphasis added). Tax planning is not part of the business purpose inquiry, and consequently a valid business purpose will not be disregarded because a taxpayer also has tax reasons for structuring a transaction in a particular manner.

In *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998), for example, the government argued unsuccessfully that its substantial need for a tax opinion authored by an accounting firm overcame the taxpayer's work product doctrine protection. *Id.* at 1204. The government claimed "necessity for the Memorandum on the ground that it [would] provide insight into [the taxpayer's] subjective motivation for engaging in corporate restructuring and [was] thus relevant to determining whether the transaction was motivated by a legitimate business purpose." *Id.* The Second Circuit responded:

> While the Memorandum unquestionably presupposes a desire to achieve a favorable tax result, such a desire is in no way incompatible with the existence of a 'legitimate non-tax business reason' for its choice. *Newman v. Commissioner*, 902 F.2d 159, 163 (2d Cir.1990); *see also Frank Lyon Co. v. United States*, 435 U.S. 561, 580, 98 S. Ct. 1291, 1302, 55 L. Ed. 2d 550 (1978) ( "The fact that favorable tax consequences were taken into account ... on entering into [a] transaction is no reason for disallowing those consequences" where the transaction has a legitimate business purpose.).

6

*Id*.  Because the presence of tax considerations in a transaction does not determine whether the taxpayer had a business purpose, the government's premise for obtaining plaintiff's privileged documents is incorrect, and its argument fails.

### III. Plaintiff's Attorney-Client Privilege Should Not be Forfeited Under the Fairness Doctrine

The government argues that because plaintiff has produced strong documentary and testimonial evidence of its business purpose for the Castle Harbour transaction, the Court, on grounds of fairness, should forfeit plaintiff's attorney-client privilege with respect to any documents that bear on any tax law advice related to the transaction.  This purported fairness argument is in fact itself unfair in the extreme.

#### A. The Fairness Doctrine

In *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), the Second Circuit acknowledged that the attorney-client privilege "may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications."  *Id.* at 1292.  In that case, the defendant wanted to testify, without waiving his privilege, that he in good faith believed his actions complied with the law.  The Second Circuit agreed with the trial court that such testimony would imply that Bilzerian's lawyer had advised him that his actions were legal, but Bilzerian refused to disclose the advice.  In affirming the district court's denial of Bilzerian's motion *in limine* seeking to protect his privilege, if he testified, the Second Circuit found that Bilzerian's "testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue."  *Id*.  The court further determined that Bilzerian's communications with his lawyer concerning the legality of his actions "would have been directly relevant in determining the extent of his knowledge and, as a result, his intent."  *Id.*

7

The Second Circuit has been clear that the attorney-client privilege should not be forfeited in every case where a party puts a matter, including intent, at issue. *See John Doe v. United States (In re Grand Jury Proceedings)*, 350 F.3d 299, 302 (2d Cir. 2003). If that were the case, then "whenever a suspect in a criminal proceeding told the prosecutor or an investigating agent that he believed he had done nothing wrong, or whenever a party to a brewing civil dispute made a statement to his adversary to the same effect, he would thereby forfeit his privileges. That is not the law." *Id.* at 304. "Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *United States v. John Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 183 (2d Cir. 2000).

In determining whether forfeiture is appropriate, district courts in the Second Circuit often look to the test articulated in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), a case that the *Bilzerian* court cited with approval. In *Hearn*, the court stated:

> All of [the] established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. The factors common to each exception may be summarized as follows: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

Id. at 581. The district courts that have applied the *Hearn* test have often explained that waiver is appropriate only where the truth of the matters placed in issue by the privilege holder "can *only* be assessed by examination of the privileged communication." *In re Kidder Peabody Securities Litigation*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (emphasis added); *accord Johnson*

8

*Matthey, Inc. v. Research Corp.*, No. 01CIV.8115MBMFM, 2002 WL 1728566, at *2 (S.D.N.Y. July 24, 2002), *reconsidered in part*, 2002 WL 31235717 (S.D.N.Y Oct. 3, 2002); *Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co.*, 200 F.R.D. 183, 193 (W.D.N.Y. 2001); *Walsh v. Seaboard Surety. Co.*, 184 F.R.D. 494, 496 (D. Conn. 1999) (applying state law).

Consequently, even when a privilege holder has placed a matter in issue, fairness does not require forfeiture unless revealing attorney-client communications is essential to resolving the matter because there is no other way the relevant information can be obtained. *See Resolution Trust Corp.*, 200 F.R.D. at 193 ("Even if the court found that [plaintiff] made the kind of factual assertions in its claims that would waive privilege, it would still be possible to examine those assertions in depositions of [plaintiff's] officers, plaintiff's expert, and interrogatories without requiring review of the privileged communications."); *Paramount Communications, Inc. v. Donaghy*, 858 F. Supp. 391, 395-97 (S.D.N.Y. 1994); *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.*, 111 F.R.D. 76, 81 (S.D.N.Y. 1986) ("What is relevant . . . here is not what counsel said to Ayala or Ayala said to counsel, but what Ayala knew or should reasonably have been expected to know . . . . Ayala's privileged communications are not the only available means by which SCB can learn what Ayala knew. Plainly and simply, Ayala, if asked in discovery, must itself reveal what it knew."). Likewise, fairness does not demand forfeiture of the privilege where the privilege holder has not yet relied directly on advice of counsel to support its claims, and it is not clear that the privilege holder will be required to do so in the future. *See Paramount*, 858 F. Supp. at 397. Finally, the Southern District of New York has specifically held that fairness does not require forfeiture of privileged communications that bear on the privilege holder's intent, when such intent has no bearing on the issues in the case. *See In re Buspirone Antitrust Litigation*, 208 F.R.D. 516, 521 (S.D.N.Y. 2002).

**B.     The Fairness Doctrine Does Not Apply in This Case**

The government's argument that fairness requires the Court to forfeit plaintiff's privilege fails for at least three reasons. First, as discussed above, it incorrectly assumes that evidence of tax planning is directly relevant to business purpose. Second, even if the existence of tax planning did inform the business purpose inquiry, the government's argument stretches the Second Circuit's fairness doctrine far beyond its established bounds. Finally, the government's separate argument that plaintiff has waived privilege by claiming reliance on counsel also fails because plaintiff has never asserted that it will rely on any opinion of outside legal counsel to defend against penalties asserted by the IRS.

*(i).     Tax planning does not inform the business purpose inquiry, and plaintiff has placed neither business purpose nor tax planning in issue*

Plaintiff has produced documents and deposition testimony demonstrating the business exigencies that led directly to the formation of the Castle Harbour partnership. None of this evidence was based on a partial disclosure of privileged communications. In the absence of waiver, the government resorts to the inaccurate and overbroad claim that plaintiff has placed its subjective intent in issue and, out of fairness, the Court should grant the government access to any privileged communications that bear on any tax planning aspects of the transaction. The government's argument incorrectly attempts to make tax law advice part of the determination of whether a taxpayer has a business purpose for entering into a transaction. As discussed above, the Second Circuit has soundly rejected this notion. The plaintiff is not relying on advice of counsel to prove business purpose or defend against penalties. In effect, however, the government is attempting to force the plaintiff to do so.

Because the existence or nonexistence of tax planning does not determine the existence of a business purpose for Castle Harbour, this case is quite unlike the case of *Pitney-Bowes, Inc.*

*v. Mestre*, 86 F.R.D. 444 (S.D. Fla. 1980), cited by the government in its memorandum. There, the intent the court was concerned with—the intent of the parties with regard to construction of certain terms of their agreements—was placed in issue and, indeed, was "the very soul of [the] litigation." *Id*. at 447. That is not the case here. Like the Southern District of New York did in *In re Buspirone Antitrust Litigation*, 208 F.R.D. at 521, this Court should find that fairness does not require forfeiture of privileged communications that do not bear on the intent in issue.

Moreover, the government's argument for privilege forfeiture is a bootstrap argument because it is the government, not the plaintiff, that is attempting to put tax planning and tax legal advice at issue. The plaintiff disputes the government's claim of no business purpose and will prove business purpose. The government's strategic response to plaintiff's business purpose evidence is to raise a tax motive claim and, having raised the claim itself, the government argues that the plaintiff has waived or forfeited its privilege. Merely because the government plans to make a tax purpose argument does not justify the destruction of plaintiff's privilege.

> (ii). *The privileged communications are not essential to the government's case*

Even assuming that evidence of tax planning informs the business purpose inquiry, which it does not, fairness does not require that the Court forfeit plaintiff's attorney-client privilege. This case does not present issues similar to those presented in cases cited by the government where the Second Circuit and the Southern District of New York have ruled in favor of forfeiture. Unlike the defendant in *Bilzerian*, plaintiff here has not placed its knowledge of the law, let alone its basis for that knowledge, directly in issue, and the government does not argue that it has. Moreover, this is not a case, and the government does not argue that it is a case, like *Sanofi-Synthelabo v. Apotex Inc.*, No. 02 Civ. 2255 (RWS), 2004 WL 113485 (S.D.N.Y. Jan. 26, 2004), where—in specific deposition testimony—the privilege holder revealed part of a relevant

privileged communication but withheld the rest on grounds of privilege. *See id.* at *4 ("The communications disclosed . . . was [sic] subject to the attorney-client privilege and . . . relevant to the issues before the court. The party has provided only a portion of the [privileged communications] and as such has sought to use the attorney-client privilege as a sword and a shield at the same time.").

This is not a case where application of the privilege will deny the government access to information vital to its case, *see Hearn*, 68 F.R.D. at 581; it is distinctly not a case were the facts "can *only* be assessed by examination of the privileged communication." *Resolution Trust Corp.*, 200 F.R.D. at 193. The government has been provided with and taken the opportunity to depose over twenty witnesses at all levels of the planning and operational phases of the Castle Harbour partnership, including high-level GECC executives, representatives of the investment bank that responded to GECC's request for proposals, and the lead negotiators from the two Dutch financial institutions that were GECC's partners in Castle Harbour. These depositions have taken the parties to two foreign countries. The government's opportunities to inquire into tax planning from non-privileged sources have been unrestricted. The government's unhappiness with the results of its inquiries is not reason enough to forfeit plaintiff's attorney-client privilege.

The government does not, because it cannot, point to any instance where a deposition witness refused to answer any questions posed by the government regarding the tax aspects of the transaction. There is no instance in this case where counsel for plaintiff has instructed a witness not to answer on grounds of privilege or otherwise. Further, there is no instance where a deponent revealed portions of a privileged communication concerning taxes. The government's interest in forfeiting the privilege arose more than two years after plaintiff defended its business

12

purpose by filing the complaint in this case, and only after discovery closed. The government has had an extended opportunity to discover evidence through established legal channels, and the Court should declare that the government has no right to belatedly root about in plaintiff's privileged communications based on a fairness argument. There is simply no indication that forfeiting plaintiff's privilege with respect to confidential communications concerning tax advice related to the Castle Harbour transaction is "the only available means by which the [government] could learn what [plaintiff] knew." *Paramount*, 858 F. Supp. at 396.

> To be sure, as in every lawsuit, it would be useful and convenient for [the government] to obtain [plaintiff's] privileged material, and the substance of its confidential communications with its attorneys might reveal some of [plaintiff's motivations]. But those are not reasons to void the attorney-client privilege. [Plaintiff's] privileged communications are not the only available means by which [the government] can learn [plaintiff's motivations]. Plainly and simply, [plaintiff], if asked in discovery, must itself reveal [its motivations].

*Standard Chartered Bank PLC*, 111 F.R.D. at 81.

### (iii).  *Plaintiff has not asserted reliance on advice of counsel*

At the end of its memorandum, and as an apparent afterthought, the government asserts that if plaintiff will rely on the legal opinion of its outside legal counsel to defend against the penalties asserted by the IRS, plaintiff must disclose the opinion. *See* Def. Memorandum at 6. Plaintiff has never claimed that it is relying on the opinion of its outside legal counsel in defending against penalties. As previously stated, fairness does not demand forfeiture of the privilege where the privilege holder is not relying on advice of counsel to support its claims, and it is not clear that the privilege holder will be required to do so in the future. *See Paramount*, 858 F. Supp. at 397. *See also Long-Term Capital Holdings v. United States*, No. 3:01 CV 1290 (JBA), 2003 WL 1548770, at *6-7 (D. Conn. Feb. 14, 2003).

**IV.    Individual Documents Addressed in the Government's Memorandum**

In its memorandum, the government addresses three of plaintiff's privileged documents in particular, the documents corresponding to entries 441, 210, and 906 on the plaintiff's privilege log. These documents have been addressed individually in plaintiff's February 16 log and in plaintiff's February 17 letter to the Court. Plaintiff incorporates its discussions therein by reference, and little additional treatment is warranted here.

The government's argument with respect to the document corresponding to log entry 441 is truly remarkable: The government has previously complained that plaintiff failed to produce business communications and now complains that plaintiff did. This document contains a summary of the Castle Harbour transaction and legal advice that was reviewed by appropriate GECC executives for approval of the transaction. The business aspects of the transaction summarized in the document were produced, and the legal advice in the document was redacted. The disclosure was not "selective," as the government asserts; plaintiff produced what was required to be produced under law and redacted what was necessary to protect its attorney-client privilege. Even the government must admit that corporate executives charged with giving final approval to enter into a multi-million dollar long-term business venture are entitled to receive legal counsel on the issue.

The government incorrectly asserts that the document corresponding to log entry 210 contains legal advice. Plaintiff has never asserted that this document contains legal advice. Plaintiff has consistently asserted that this document reflects a privileged communication between Mr. O'Reilly and counsel *for the purpose of obtaining* legal advice. The government deposed Mr. O'Reilly and asked him all the questions it wanted about his knowledge of Castle Harbour. However, the government now argues that it is in an "inherently unfair" position

because plaintiff is withholding Mr. O'Reilly's knowledge of facts. Def. Memorandum at 5. Mr. O'Reilly was deposed on his knowledge of facts. The government has no right to invade privileged communications involving Mr. O'Reilly. In short, privileged communications can be withheld but not facts.

The document corresponding to log entry 906 is a legal opinion concerning federal income tax, as noted on plaintiff's privilege log. Like the other documents presented to the Court for *in camera* review, it is protected by the attorney-client privilege, and the government has failed to establish justification for this Court to forfeit plaintiff's privilege over the document.

## V.     Conclusion

The government has pointed to no instances when plaintiff's witnesses refused to answer the government's deposition questions concerning tax planning, and indeed, no such instances exist in this litigation. Moreover, the government does not point to any deposition testimony in which the witness disclosed or relied on legal advice concerning taxes, and, again, no such testimony exists in this case. This is not a case that justifies the application of the fairness doctrine to destroy plaintiff's attorney-client privilege. The government's meritless argument, which the government waited to articulate until the disputed documents were in the Court's

hands, is a last-ditch effort to gain access to communications it now acknowledges are privileged. The Court should view the government's argument as such and reject it.

Dated this 2nd day of March, 2004.

Respectfully submitted,

/s/ Ann H. Rubin
Ann H. Rubin / Fed. Bar No. ct04486
One of the Attorneys for Plaintiff

Ann H. Rubin / Fed. Bar No. ct04486
CARMODY & TORRANCE LLP
195 Church Street
P.O. Box 1950
New Haven, CT  06509-1950
Telephone:  (203) 777-5501
Facsimile:   (203) 784-3199
arubin@carmodylaw.com

William F. Nelson, ct22883
William S. McKee, ct23187
David J. Curtin, ct22881
John A. Galotto, ct22882
Michael J. Desmond, ct23186
MCKEE NELSON LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586
wnelson@mckeenelson.com
wmckee@mckeenelson.com
dcurtin@mckeenelson.com
jgalotto@mckeenelson.com
mdesmond@mckeenelson.com

Suzanne C. Feese, ct23162
KING & SPALDING
191 Peachtree Street
Atlanta, GA  30303-1763
Telephone:  (404) 572-3566
Facsimile:   (404) 572-5147
sfeese@kslaw.com

## CERTIFICATE OF SERVICE

This is to certify that the foregoing PLAINTIFF'S RESPONSE TO UNITED STATES' MEMORANDUM OPPOSING PLAINTIFF'S ASSERTION OF PRIVILEGE CLAIMS has been served by facsimile and regular mail, postage prepaid, on March 2, 2004, to:

>Robert J. Higgins
>Trial Attorney, Tax Division
>U.S. Department of Justice
>P.O. Box 26
>Ben Franklin Station
>Washington, D.C.  20044
>
>Facsimile:  (202) 514-9440

and by regular mail, postage prepaid to:

>John B. Hughes
>Assistant U.S. Attorney
>Chief, Civil Division
>United States Attorney's Office
>District of Connecticut
>157 Church Street
>New Haven, CT  06508

>   /s/ Ann H. Rubin
>Ann H. Rubin
>Fed. Bar No. ct04486
>
>One of the Attorneys for Plaintiff