IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TIFD III-E INC., THE TAX MATTERS PARTNER OF CASTLE HARBOUR-I LIMITED-LIABILITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CASE NOS. 3:01CV01839(SRU)<br>3.01CV01840(SRU) |

UNITED STATES' REPLY MEMORANDUM OPPOSING
PLAINTIFF'S ASSERTION OF PRIVILEGE CLAIMS

**I.   The United States Is Entitled to the 139 Documents Set Forth on the Privilege Log Provided the Court on February 6, 2004**

The United States disputes plaintiff's assertion of privilege as proper grounds for withholding in whole or in part 139 documents listed on the privilege log provided the Court on February 6, 2004. In requesting the *in camera* review by the Court, the United States acted upon the sparse description of the documents provided in the plaintiff's original privilege log and the plaintiff's refusal to produce, in any form, any part of the 139 documents during the three month period after the Government identified these documents. The United States explained why the privilege assertions were not valid, in letters to the plaintiff dated November 4, 5, 6, and 7, 2003.[1] There is nothing in plaintiff's privilege log provided to the Court on February 6, 2004, which changes the

---

[1] The United States is still considering asking the Court to inspect, *in camera*, some of the redactions maintained by the plaintiff in the 126 documents produced on February 6, 2004.

-1-

Government's position regarding plaintiff's original inadequate explanations and assertions of privilege.

The plaintiff asserts attorney-client privilege as a ground for withholding all or part of the 139 documents listed on the privilege log provided the Court on February 6, 2004. In addition, plaintiff asserts the attorney work product privilege with respect to nine (9) documents (Nos. 634, 636, 1410, 1411, 1413, 1416, 1422, 1425, and 1450). The plaintiff also asserts the attorney client privilege and "joint defense" as a ground for withhold two (2) documents (Nos. 894 and 895).

Plaintiff's apparent responses to the Government's letters of November 4, 5, 6, and 7, 2003, are set forth in the February 6, 2004, privilege log. Not having been provided these responses beforehand, the Government provided the Court, on February 17, 2004, the United States' Memorandum Opposing Plaintiff's Assertion of Privilege Claims, which set forth additional reasons for the production of the 139 withheld documents.

Since providing the Court the 139 documents on February 6, 2004, the plaintiff submitted a letter to the Court on February 17, 2004, in which it attempted to justify its withholding all or parts of the 139 documents at issue.[2] Pl. Let. [3] Plaintiff also responded to the United States' memorandum on March 2, 2004.

---

[2] Plaintiff's letter contends mistakenly that the United States did not respond to its "offer" to meet and discuss the privilege log dispute. Pl. Let. 2. After three months of no response from the plaintiff, the United States requested the Court's assistance, thus rejecting plaintiff's offer.

[3] References to "Pl. Let." are to Plaintiff's Letter to the Court, dated February 17, 2004.

-2-

The United States maintains that the privilege assertions of the plaintiff are without merit, as are plaintiff's laments about the current discovery dispute process. [4]

## II. The 139 Withheld Documents are Relevant and Should be Produced Despite Plaintiff's Privilege Assertions

### A. All 139 Documents Are Relevant

Neither the plaintiff's discovery responses nor the plaintiff's privilege log raise any objection to the production of the 139 documents described therein on grounds of relevance. That objection has been waived. In reviewing the documents *in camera*, the Court must assume that the documents are relevant to this litigation, either to the plaintiff's case or the defendant's case, at least for discovery purposes. Fed. R. Civ. P. 26(b)(1). Plaintiff's apparent argument that the United States' position here is a "bootstrap" argument must fail, as the plaintiff cannot complain that discovery concerning business purpose, tax planning, and tax motivation is not relevant. Pl. Mem. 11. The United States is pursuing these avenues of discovery precisely because of its disbelief that the Castle Harbour transaction was motivated other than by tax avoidance.

---

[4] Plaintiff's response memorandum attempts to avoid, *inter alia*, taking responsibility for its own failure to respond to the Government's November 4, 5, 6, and 7, 2003, letters in a timely fashion.
   Plaintiff's memorandum also inexplicably seeks to rewrite the history of discovery in this case, particularly the extension of discovery from October 15, 2003, to February 15, 2004. Not only did the unopposed motion to extend discovery state as one of the grounds for an extension the Government's problems with plaintiff's privilege logs–the issue now joined–but stated as the primary ground that "Defendant's discovery was delayed due to unavailability of plaintiff's lead counsel." Docket Entry #34; Pl. Resp. Mem. 4. Plaintiff cannot dispute this history nor use it to confuse this privilege dispute.

### B. Underlying Factual Information or Business Advice Cannot Be Withheld Pursuant to a Claim of Privilege

The Court must decide if the plaintiff should produce the entirety of 119 documents, the withholding of which the United States challenged on the ground that business, not legal advice, formed part of the document. Pl. Let. 3. The United States' position rests on the principle set forth in Upjohn v. United States, 449 U.S. 383, 395 (1981), to which plaintiff cites, i.e., that underlying facts are not protected from disclosure. Pl. Let. 4. See also, In re Fischel, 557 F.2d 209, 212 (9th Cir. 1977); Cuno, Inc. v. Pall Corp., 121 F.R.D. 198, 204 (E.D.N.Y. 1988).

Plaintiff's contentions regarding accounting analysis are also difficult to understand. Pl. Let. 10. On the February 6, 2004, privilege log, plaintiff makes a representation that an in-house counsel, James Kalashian, made a request for these accounting analyses. The basis for that representation is not apparent, on either the original privilege log or the February 6, 2004, privilege log. Grand Central Partnership v. Cuomo, 166 F.3d 473, (1999) (rejecting affidavit made without personal knowledge as support of Vaughn index claim of exemption). Furthermore, under this theory of privilege, virtually all accounting analysis for every business transaction would be privileged as business advice intertwined with legal advice–an untenable circumstance which is contrary to Upjohn.

### C. Plaintiff's Assertion of a "Joint Defense" With the Dutch Banks Lacks Merit.

Plaintiff's contentions about the "joint defense" exception to waiver are without merit. Pl. Let. 9. Plaintiff has been consistent throughout this litigation–until now–in arguing that the two Dutch banks, ING and Rabo, are not parties to this litigation. Indeed, the branches of these banks which operate in the United States were not involved in the Castle Harbour transaction, and therefore, plaintiff contended that for purposes of discovery, the Dutch banks were beyond the jurisdiction of this Court (or any U.S. court for that matter). The Dutch banks were deposed in London, United Kingdom, for this case but the banks were not represented by the plaintiff's counsel. Indeed, plaintiff's counsel examined ING and Rabo's representatives at these depositions. ING and Rabo expressed no "common interest" in this litigation at their depositions. As "tax indifferent" parties, they are apparently not concerned about the outcome of this litigation. The fact that the Internal Revenue Service sent ING and Rabo copies of the Notices of Final Partnership Administrative Adjustment establishes nothing other than the IRS followed its procedures correctly in sending copies of the notice to all putative "partners."[5]

While the common interest doctrine may preserve otherwise valid claims of privilege despite disclosure to third parties when all of those parties are found to be part of the "common interest" or "joint defense," the common interest doctrine does not create a new privilege to protect business communications or communications also disclosed to third parties not within the "common interest" group. The common interest rule does not

---

[5] The participants in Castle Harbour were actually "members" of a limited-liability company (corporation) which elected to be taxed as a partnership.

apply to ING and Rabo here to protect factual information or business advice. Colton v. United States, 306 F.2d 633, 638 (2d Cir. 1962). Further, plaintiff has failed to establish a factual predicate to establish that the "common interest" rule should apply. Not all discussions about potential business deals are within the "common interest" doctrine. Indeed, plaintiff's position presumes it will prevail on one of the central issues in this litigation, i.e., that it and the Dutch banks formed a partnership. The United States contends that the Dutch banks were lenders, not joint venturers. See Boca Investerings Partnership vs. United States, 314 F.3d 625, 631 (D.C. Cir. 2003); ASA Investerings Partnership, 201 F.3d 505, 512 (D.C. Cir. 2003). There is no basis for invoking the "common interest" doctrine to protect communications between a lender and a borrower. Such a rule proves too much and could presumably cover all communications between counsel in every business deal.

### III.   The Plaintiff Has Placed the Advice of Its Legal Counsel At Issue

The plaintiff is taking an unsustainable position by asserting privilege and continuing to insist on redacting portions of documents such as No. 441, which is the front page of the "pitch" document. This document was ultimately signed by the GECC executives approving Castle Harbour. This was Exhibit No. 1 to the O'Reilly deposition, which was discussed at length in the United States' February 17, 2004, memorandum. This document will undoubtedly become a trial exhibit. The process of approval for the Castle Harbour transaction was examined in the depositions of O'Reilly, Nayden, Lewis, and Dull. This approval process is the heart of plaintiff's business purpose argument. Pl. Resp. Mem. 2-5. Yet, plaintiff contends it is entitled to shield some of the advice, allegedly legal advice, these individuals acted

-6-

upon in approving Castle Harbour. That is not permitted by the law of this circuit. John Doe Co. v. United States (In Re Grand Jury Proceedings), 350 F.3d 299 (2d. Cir. 2003) ("at issue waiver" or "implied waiver" described as "forfeiture" of privilege"); U.S. v. Bilzerian, 926 F.2d 1285, 1292 (2d. Cir. 1991).

The "Plaintiff's Response" for document No. 441 is telling:

> The information redacted on the page Bates-numbered 71262 is legal advice of in house legal counsel Richard D'Avino, Esq. and outside legal counsel King & Spalding given to senior GECC employees charged with deciding whether to engage in the Castle Harbour transaction.

The plaintiff admits in this response that legal advice was given to the decision makers. The record shows that the decision makers acted on that advice. There is an extensive examination on this document at the O'Reilly deposition.[6] Obviously, the examination did not include the redacted portion which is at issue here. The plaintiff apparently contends that the "action" of approving the Castle Harbour transaction is a fact that assists the plaintiff in establishing a business purpose. In filing this suit and in providing the explanations in discovery to establish the business purpose of the transaction, plaintiff placed the decision making process and the information relied upon by the decision-makers who decided to enter into the Castle Harbour transaction in issue. Because, according to the testimony of the business executives involved, the information relied on includes certain legal opinions and advice, those opinions and the advice received are necessarily open to inspection, just as the opinions and advice received from other executives would be. The Second Circuit recognizes that it is

---

[6] The United States can provide the Court a copy of the O'Reilly transcript if it would help the Court resolve this issue.

patently unfair to allow plaintiff to withhold from scrutiny and cross-examination some of the items considered in making a decision while at the same time allowing plaintiff to choose to disclose other items which underlie the same decision.

Plaintiff admits that it will attempt to prove business purpose at trial. Pl. Resp. Mem. 11. Plaintiff thus abandons its contention that, theoretically, it could still prevail in this litigation without proving a business purpose. Pl. Resp. Mem. 5-7.

It is misleading for the plaintiff to suggest that the Castle Harbour transaction was not structured for tax purposes. The discovery record is replete with facts which demonstrate tax motivations. Why else were there two "tax indifferent" members of Castle Harbour, the Dutch banks, ING and Rabo? Furthermore, deposition testimony of Richard Koffey, from the plaintiff's investment bank, Babcock & Brown, explicitly described his role in the planning of Castle Harbour, "In general, I had responsibility for matters that were tax sensitive, because I have tax expertise." Koffey[7] 33.

The plaintiff is mistaken, and disingenuous, in contending that the United States has not pursued the tax advice issue in the discovery process—which obviously is not over as this privilege dispute is part of the discovery process. Pl. Resp. Mem. 11-13. There are 139 documents listed on plaintiff's February 6, 2004, privilege log which the United States has sought during the entire course of discovery and plaintiff has similarly resisted producing, in whole or in part, during that same period. All of these documents, apparently, concern tax aspects of the Castle Harbour transaction.

---

[7] References to "Koffey" are to the deposition transcript for Richard S. Koffey, May 14, 2003.

Ironically, it is plaintiff's "pitch" document, which plaintiff's executive witnesses' signed (Nayden, Lewis, O'Reilly), which epitomizes all the misapprehensions in plaintiff's memorandum. Pl. Mem. 14. Certainly, Mr. O'Reilly was entitled to receive legal advice. But, once the end result of that legal advice became a document which approved the transaction structure, the purpose of which is at the heart of this litigation, and Mr. O'Reilly was offered as a witness to that approval process and the purpose of the transaction, claims of privilege with respect to communications which informed his recommendation and approval and/or his conclusions that the deal had a bona fide business purpose are forfeited. John Doe Co., 350 F.3d at 299. Otherwise, the validity of the adversary process, which relies on each side being able to challenge claims and defenses, in this case claims of business purpose proffered by plaintiff in structuring and entering into the Castle Harbour transaction, is compromised. The adversary process does not allow one side, such as plaintiff here, to pick and chose which relevant facts will be revealed. Because allowing such picking and choosing is inherently unfair and unjust, claims of privilege are deemed forfeited by such conduct.

## CONCLUSION

For all of the foregoing reasons, as well a those in our memorandum of February 17, 2004, the Court should direct plaintiff to provide unredacted copies of all items on the February 6, 2004 privilege log to the United States forthwith.

Dated: March 5, 2004

JOHN A. DANAHER III
United States Attorney

JOHN B. HUGHES
Chief, Civil Division

_____
ROBERT J. HIGGINS (ct23378)
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C. 20044
Telephone: (202) 307-6580
Facsimile: (202) 514-5440

CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing United States' Reply Memorandum Opposing Plaintiff's Assertion of Privilege Claims has been made upon the following by depositing the original thereof in the United States mail, postage prepaid, and courtesy copies by facsimile, this 5th day of March, 2004:

Ann H. Rubin
CARMODY & TORRANCE LLP
195 Church Street
P.O. Box 1950
New Haven, Connecticut 06509-1950
(Facsimile) (203) 784-3199

David J. Curtin
MCKEE NELSON LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036
(Facsimile) (202) 775-8586

Suzanne C. Feese
KING & SPALDING
191 Peachtree Street
Atlanta, Georgia 30303-1763
(Facsimile) (404) 572-5147

ROBERT J. HIGGINS (ct23378)
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C. 20044
Telephone: (202) 307-6580
Facsimile: (202) 514-5238