## McKee Nelson LLP

**DAVID J. CURTIN**
Direct Dial: (202) 775-8669
dcurtin@mckeenelson.com

*Correspondence from:*
➢ WASHINGTON, DC

1919 M STREET, NW, SUITE 800
WASHINGTON, DC 20036
Telephone 202.775.1880
Facsimile 202.775.8586

NEW YORK, NY

3 TIMES SQUARE, 35TH FLOOR
NEW YORK, NY 10036
Telephone 917.777.4200
Facsimile 917.777.4299

FILED
2004 JUL -9 P 5:45
U.S. DISTRICT COURT
BRIDGEPORT, CONN.

February 17, 2004

**VIA FEDERAL EXPRESS**

Honorable Stefan R. Underhill
United States District Court
District of Connecticut
915 Lafayette Blvd.
Bridgeport, CT 06604

    Re:    <u>TIFD III-E INC. v. United States</u>
             <u>Case No.: 3:01CV1839 (SRU) (D. Conn.)</u>

Dear Judge Underhill:

       By transmittal letter dated February 6, 2004, and pursuant to a February 3, 2004, telephone conference with the Court, plaintiff submitted for *in camera* review 139 documents that plaintiff asserts are protected in whole or part from disclosure under the attorney-client privilege or the work product doctrine. Along with these documents, plaintiff submitted a 78-page log supporting its assertions (the "Log"). These 139 documents represent a subset of 265 documents, with respect to all of which the government challenged plaintiff's assertions of privilege and work product protection. The government's challenges to the balance of these documents have been resolved.

       Further to my letter of 6 February and the 3 February telephone conference, this letter briefly sets forth legal authorities and, in the case of some of the 139 documents, presents arguments on selected documents supporting plaintiff's assertions of attorney-client privilege and work product doctrine protection.[1] With respect to the remaining documents, plaintiff presents general arguments that, when viewed in conjunction with the Log and the documents themselves, amply support its privilege and work product assertions.

       Plaintiff has produced over 17,000 documents to the government, containing over 100,000 pages, in the course of this litigation and the preceding Internal Revenue Service examination. This case involves the federal income tax treatment of a multi-million

---

[1]      On February 17, 2004, the date of this letter, Plaintiff received the UNITED STATES' MEMORANDUM OPPOSING PLAINTIFF'S ASSERTION OF PRIVILEGE CLAIMS. It appears from the government's memorandum that the government has abandoned its original arguments relating to the 139 documents before the Court in favor of a so-called forfeiture argument that it now adopts. Nonetheless, plaintiff submits this letter responding to the government's original arguments and will submit a response to the government's new argument under separate cover.

McKee Nelson LLP
*Attorneys at Law*
www.mckeenelson.com

*An independent law firm allied with* ⹃ ERNST & YOUNG

Honorable Stefan R. Underhill
February 17, 2004
Page 2

dollar commercial aircraft leasing partnership that was in operation for over five years. During the course of that operation, the partnership business consulted with legal counsel on numerous issues, including its dealings with major commercial airlines, potential aircraft purchasers, and federal and foreign regulators. Moreover, the partners consulted with legal counsel on numerous issues related to the formation and operation of the partnership business. The government challenges plaintiff's assertions of privilege and work product protection in four letters, dated November 4, 5, 6, and 7, 2003, and attached hereto as Exhibits A, B, C, and D, respectively. The government makes six arguments challenging plaintiff's assertions of privilege and work product protection. The Log submitted to the Court reflects which of these six arguments the government is making as to each privileged document and provides plaintiff's response as to each document. Plaintiff's further responses to these six arguments follow.

1.  Confidential Communication of Factual Information and Business Advice

The government's broadest argument, which challenges 119 of the 139 documents submitted for *in camera* review, concerns documents for which, the government admits, "some redactions on grounds of privilege may be appropriate".[2] Exs. A through D. Plaintiff has since produced seventeen of these documents in redacted form.[3] Plaintiff has offered to meet and confer with government counsel on these seventeen documents, in the hope that the government will withdraw its objections to plaintiff's claims of privilege over the redacted portions of these documents, and thereby ease the Court's burden of review. The government has not responded to this offer.

The government's only basis for objecting to plaintiff's assertions of attorney-client privilege and work product doctrine protection over these 119 documents is the generalized and unsupported argument that "underlying factual information or business advice is not within the scope of communications protected by the attorney-client privilege or the attorney work product doctrine." Exs. A through D. This broad argument, which is the only basis for the government's challenge to over 85 percent of the documents before the Court, misconceives the scope of both the attorney-client privilege and the work product doctrine.

---

[2]  These documents correspond to Log entries 174, 181, 204, 206, 266, 268, 316, 345, 359, 361, 363, 364, 368, 371, 375, 382, 396, 398, 399, 403, 408, 409, 421, 427, 432, 435, 442, 448, 449, 453, 454, 456, 457, 458, 468, 480, 481, 490, 522, 523, 547, 551, 570, 574, 581, 582, 588, 589, 591, 593, 597, 602, 604, 614, 615, 620, 622, 623, 624, 632, 634, 635, 636, 651, 658, 659, 669, 670, 679, 704, 708, 715, 770, 771, 778, 797, 875, 880, 892, 902, 903, 904, 905, 906, 907, 908, 909, 910, 911, 912, 913, 914, 915, 916, 972, 973, 974, 975, 980, 1003, 1005, 1021, 1179, 1231, 1326, 1327, 1344, 1410, 1411, 1413, 1416, 1417, 1418, 1419, 1422, 1425, 1433, 1450, and 1488.

[3]  These seventeen documents correspond to Log entries 174, 181, 204, 206, 266, 345, 359, 361, 375, 427, 432, 582, 620, 651, 679, 778, and 1021.

Attorney-Client Privilege

Plaintiff has asserted attorney-client privilege protection for each of these 119 documents. "To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). As previously stated, the government only generally argues that "underlying factual information or business advice is not within the scope of communications protected by the attorney-client privilege." Exs. A through D.

While business advice is not within the scope of communications protected by the privilege, legal advice about business certainly is. "[T]he privilege is triggered only by a client's request for legal, as contrasted with business, advice." *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984) [hereinafter *Marc Rich*]. However, just because a client is seeking advice concerning a business transaction, it does not follow that the attorney is providing business, rather than legal, advice. As the *Marc Rich* court makes clear,

> [w]hile [a transaction may be] considered by [the client] for various business purposes, [if] the documents reflect that [the lawyer] was not consulted for advice on whether the [transaction] would in fact secure these business objectives[, but rather] was consulted as to the tax consequences of [the transaction] and whether those consequences should affect the structure of the [transaction], and as to corporate law considerations in structuring the [transaction,] . . . these documents memorialize client confidences obtained in the pursuit of legal advice concerning the mechanics and consequences of alternative business strategies. Such material is protected by the privilege.

*Id.* at 1037-38.

It is well recognized that, "[a]lthough the solicitation or giving of business advice is not privileged, . . . [t]he mere fact that business advice is given or solicited does not . . . automatically render the privilege lost: where the advice given is predominantly legal, as opposed to business, in nature the privilege will still attach." *United States v. Davis*, 132 F.R.D. 12, 16 (S.D.N.Y. 1990) (internal citations and quotation marks omitted, second alteration in original); *cf. Colton v. United States*, 306 F.2d 633, 638 (2d Cir. 1962) ("Attorneys frequently give to their clients business or other advice which, *at least insofar as it can be separated from their essentially professional legal services*, gives rise to no privilege whatever.") (emphasis added). In applying these rules, plaintiff has undertaken to redact only the legal advice from any document containing both legal and business advice, and none of the withheld portions of the 119 documents contains business advice falling outside the scope of the privilege.

Honorable Stefan R. Underhill
February 17, 2004
Page 4

The government also erroneously claims that factual portions of privileged communications fall outside the protection of the privilege and must be produced. This attack on privilege encapsulates a misconception of the attorney-client privilege running throughout the government's four letters reproduced at Exhibits A through D. The government avoids recognizing that while the privilege does not protect facts *per se*, it does protect communications, including the communication of facts between lawyer and client. "It is self-evident that individual documents and files may still be withheld [under the privilege] insofar as they thus are or report confidential communications between [an attorney] and his clients." *Colton,* 306 F.2d at 639.[4] This is true even when the document is or reports a confidential communication of non-privileged facts.[5] For example, in *Clark v. Buffalo Wire Works*, 190 F.R.D. 93 (W.D.N.Y 1999), Basile Korbut wrote and kept notes of, "among other things, Korbut's recollections of and opinions concerning work-related events and conversations." *Id.* at 94. The notes were made and kept to be forwarded to legal counsel; were in fact forwarded to legal counsel; and were intended to be, and remained, confidential. The court held that the factual notes were protected by the attorney-client privilege. *See id. at 96; see also Bernbach v. Timex Corp.*, 174 F.R.D 9, 10 (D. Conn. 1997) (holding that notes of "facts underlying [the plaintiff's] allegations" are privileged)).

Plaintiff has never made any assertion of privilege with respect to underlying facts but has every right to assert privilege over communications of facts. The government has the right, which it exercised here, to depose witnesses concerning the facts themselves. While the facts themselves are discoverable, no adverse party, including the government, is free to invade the privileged communications between lawyer and client on the grounds that facts were included in the discussions. *See Upjohn Co. v. United States,* 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."). The Second Circuit, in *United States v. Cunningham,* 672 F.2d 1064, 1073 n.8 (2d Cir. 1982), explained that "[t]he privilege attaches not to the information but to the communication of the information. Thus, [the client] may be examined as to any fact but may not, absent a waiver, be compelled to say whether or not he communicated that fact to his counsel." Being compelled to produce a document that reflects a confidential

---

[4] The *Colton* court makes clear that a document need not itself be a confidential communication between attorney and client to warrant privilege protection; it is enough if the document "reports" a confidential communication. *Accord Nesse v. Pittman,* 206 F.R.D. 325, 329 (D.D.C. 2002) (affording protection to documents that "relay" confidential communications and documents "memorializing" such communications).

[5] Of course, however, the communication of non-privileged documents is not itself a privileged communication of the contents of the non-privileged documents. *See United States v. Silverman,* 430 F.2d 106, 121-22 (2d Cir. 1970), *modified,* 439 F.2d 106 (2d Cir. 1970). Nevertheless, it is possible that "confidential communications [can be] made at the same time, e.g., 'give me your advice as to how these [documents] should be prepared in the future' or 'tell me what is wrong with these [documents].'" *Id.* at 122.

Honorable Stefan R. Underhill
February 17, 2004
Page 5

communication of facts is tantamount to being compelled to testify as to what facts were communicated confidentially, and just as the privilege protects against such compelled testimony, it protects against such compelled production.

Based on the principles of privilege, the subject 119 documents are protected by the attorney-client privilege and are properly withheld from production. For example, twenty of these documents are draft and final legal opinions prepared by outside counsel.[6] To the extent the government argues that a legal opinion conveys business advice, the Second Circuit has flatly rejected this argument. "Whatever else it may be . . . , an attorney's opinion as to the lawfulness of a transaction is certainly 'legal advice.'" *Marc Rich,* 731 F.2d at 1038. And as discussed above, documents—such as legal opinions—that reveal information, including factual information, confidentially communicated by a client to obtain legal advice are protected by the privilege. "Where the client is a corporation, as here, the privilege extends to communications between a lawyer and his or her client—both information provided to the lawyer by the client and professional advice given by an attorney that discloses such information." *In re Six Grand Jury Witnesses,* 979 F.2d 939, 943-44 (2d Cir. 1992); *see also P. & B. Marina, Ltd. P'ship v. Logrande,* 136 F.R.D. 50, 53 (E.D.N.Y. 1991) ("The privilege generally applies to all communications made by the attorney to the client 'if such communications contain legal advice or reveal confidential information on which the client seeks advice.'" (*quoting Standard Chartered Bank v. Ayala Int'l Holdings,* 111 F.R.D. 76, 79 (S.D.N.Y. 1986))). These principles are equally applicable in the context of a lawyer providing a legal opinion, or advice, on matters of tax law. *See Marc Rich,* 731 F.2d at 1037 ("Tax advice rendered by an attorney is legal advice within the ambit of the privilege."); *Colton,* 306 F.2d at 637 ("There can, of course, be no question that the giving of tax advice . . . [is] basically [a matter] sufficiently within the professional competence of an attorney to make [it] prima facie subject to the attorney-client privilege."); *Bria v. United States,* No. CIV.3:00CV1156(CFD), 3:01MC(CFD), 2002 WL 663862, at *2 (D. Conn. Mar. 26, 2002) (same); *see also Long-Term Capital Holdings v. United States,* No. 3:01 CV 1290 (JBA), 2003 WL 1548770 (D. Conn. Feb. 14, 2003). Moreover, several of these documents, like numerous other documents at issue here, are drafts. Drafts may deserve privilege protection in their own right. *See Marc Rich,* 731 F.2d at 1037 ("For example, although some of the documents appear to be drafts of communications the final version of which might eventually be sent to other persons, and as distributed would not be privileged, we see no basis in the record for inferring that [the client] did not intend that the drafts—which reflect its confidential requests for legal advice and were not distributed—to [sic] be confidential.").

---

[6] These documents correspond to Log entries 382, 435, 490, 589, 591, 902, 903, 904, 905, 906, 907, 908, 909, 910, 911, 912, 913, 914, 915, and 916.

As further examples, ten of these documents are draft and final presentations prepared by in-house counsel and communicated to the corporate client.[7] These presentations are often the means by which in-house counsel disseminates legal advice to those corporate representatives who have a need to receive and understand such advice. Each of these ten documents contains an objective assertion of attorney-client privilege in the form of a privilege legend. *See In re Grand Jury Proceedings,* No. M-11-189, 2001 WL 1167497, at *10 (S.D.N.Y. Oct. 3, 2001) ("While the determination of whether a document is privileged does not depend upon the technical requirement of a privilege legend, the existence of such a legend may provide circumstantial evidence that the parties intended certain communications to be privileged."). As evident on the face of the documents and explained in our Log, these documents reflect the legal advice of in-house and outside counsel and reveal confidential communications made to such counsel for the purpose of obtaining the legal advice. That in-house counsel chose to distill confidential communications into presentations that could be given to senior corporate employees does not impact the attorney-client privilege protection afforded the underlying confidential communications.

In light of the government's categorical arguments, plaintiff does not believe that it is necessary to review each of these 119 documents in this letter. The assertions of attorney-client privilege with respect to these documents are amply justified by the documents themselves, particularly when considered in light of the information provided in the Log. Of course, plaintiff does not intend to minimize or waive its assertion of attorney-client privilege with respect to any of these documents. Should the Court need a more detailed discussion of plaintiff's assertion of privilege with respect to any particular document in issue here, plaintiff requests the opportunity to supply the Court with such discussion.

Work Product Doctrine

In addition to the attorney-client privilege, plaintiff has asserted work product protection for eleven of the 119 documents at issue.[8] "The work-product rule shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need." *United States v. Adlman,* 68 F.3d 1495, 1501 (2d Cir. 1995) (*quoting* Fed. R. Civ. P. 26(b)(3)). To justify protection under the work product doctrine, the concern over litigation must be real, rather than speculative. *See id.* The contents of these eleven documents reveal that they were prepared because of the prospect of potential litigation, and, at the very least, "would not

---

[7] These documents correspond to Log entries 316, 409, 622, 1410, 1411, 1413, 1416, 1417, 1418, and 1425.

[8] These documents correspond to Log entries 408, 409, 634, 636, 1410, 1411, 1413, 1416, 1422, 1425, and 1450.

Honorable Stefan R. Underhill
February 17, 2004
Page 7


have been prepared in substantially similar form but for the prospect of [such] litigation." *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998).

But more to the point, the government argues that the work product doctrine does not protect business advice or factual information contained in a document that otherwise qualifies for work product doctrine protection. *See* Exs. A through D. This argument is without merit. None of the eleven documents contains business advice, but even if they did, the Second Circuit has held that a document otherwise protected under the work product doctrine does not lose its protection "merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation." *Adlman*, 134 F.3d at 1195.

Further, the government's argument with respect to underlying factual information is inconsistent with Second Circuit precedent. *See In re Grand Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156, 161 (2d Cir. 2002) ("While it may well be that work product is more deeply concerned with the revelation of an attorney's opinions and strategies, and that the burden of showing substantial need to overcome the privilege may be greater as to opinions and strategies than as to facts, *see* Fed. R. Civ. P. 26(b)(3), we see no reason why work product cannot encompass facts as well."). The work product protection properly shields these eleven documents from disclosure in this case.

2.  <u>Arguments Attacking the Type of Communication or the Existence of a Communication</u>

For ten documents before the Court, the government attacks the communication giving rise to the privilege by claiming variously that no attorney was involved in the communication, that no communication occurred, or that the communication involved business advice.[9] *See* Exs. A through D.

Two of these ten documents, corresponding to Log entries 328 and 441, are presentations similar to the presentations discussed above. With respect to the document corresponding to Log entry 328, the government asserts that the presentation is likely business advice and further asserts that there is no communication identified. *See* Ex. A. As explained in the Log, the pages of the presentation that have been withheld reflect legal advice and also reflect confidential communications made to a lawyer for the purpose of obtaining such advice. With respect to the document corresponding to Log entry 441, the government asserts that the document "forms part of the plaintiffs' [sic] contention that it had a 'business purpose' for the Castle Harbour transaction. It is defendant's understanding this document was used to obtain authorization for the transaction. The redacted information should be released." Ex. B. Plaintiff has previously produced the "business advice" portions of this document and has only

---

[9]     These documents correspond to Log entries 328, 379, 395, 441, 446, 767, 803, 810, 812, and 1171.

Honorable Stefan R. Underhill
February 17, 2004
Page 8

redacted the legal advice provided to corporate decision makers by their lawyers. This document contains a privilege legend, and the redacted portion of the presentation is protected by the attorney-client privilege.

As explained in the Log, the other eight of these ten documents were likewise properly withheld. Each reflects confidential communications between lawyers and their clients made for the purpose of obtaining or giving legal advice.

3.   Waiver

The government argues that for two documents, any valid assertion of privilege was waived.[10] With respect to the first of these two documents, the document corresponding to Log entry 205, the government argues that the privilege was waived by addressing the document to addressees at Financial Guaranty Insurance Company and Kidder Peabody. *See* Ex. A. As explained in the Log, at the time the document was written, these two companies were wholly owned subsidiaries of the General Electric Company, the ultimate client of the in-house counsel who authored of the document. "Corporations . . . can demonstrate sufficient interrelatedness to be treated as one entity for attorney-client privilege purposes if they . . . are closely affiliated . . . ." *Music Sales Corp. v. Morris,* No. 98CIV.9002, 1999 WL 974025, at *7 (S.D.N.Y. Oct. 26, 1999); *see also United States v. AT&T,* 86 F.R.D. 603, 616 (D.D.C. 1979) ("The cases clearly hold that a corporate 'client' includes not only the corporation by whom the attorney is employed or retained, but also parent, subsidiary and affiliate corporations."). The privilege was not waived with respect to this document.

The second of these two documents, the document corresponding to Log entry 210, is a letter authored by a corporate employee and addressed to in-house counsel; it contains a privilege legend. The letter is a confidential communication concerning the formation of the Castle Harbour partnership. The government argues that privilege over this document was waived when the corporate employee testified at deposition about the purpose of forming the Castle Harbour partnership. *See* Ex. A. During the corporate employee's deposition, however, he mentioned neither the letter nor the confidential communication. The government does not argue that this employee gave deposition testimony about this privileged communication. The employee was deposed on the facts but not on communications of facts to lawyers. The government argues that if the reasons contained in the letter are the same reasons stated in the deposition, the attorney-client privilege is waived. Once again, the government misses the point that the attorney-client privilege protects communications and not facts. "[T]he privileged communication and the facts recounted within it are two different things. Thus, a client does not normally lose the privilege as to communications with his attorney merely because he testifies at trial to the same events discussed with his lawyer." *United States v. Rakes,* 136 F.3d 1, 5 (1st Cir. 1998). "[T]he attorney-client privilege protects communications

---

[10]   These documents correspond to Log entries 205 and 210.

<b>
</b>

Honorable Stefan R. Underhill
February 17, 2004
Page 9

rather than information; the privilege does not impede disclosure of information except to the extent that that disclosure would reveal confidential communications." *Marc Rich*, 731 F.2d at 1037. Attorney-client privilege was properly asserted over this document, and that privilege was not waived during the author's deposition testimony.

4.      Common Interest or Joint Defense

The government argues that two documents are not privileged because the parties to the communication lacked a common interest that would justify a joint defense relationship.[11] A privileged communication shared with a third party loses its privileged status, unless the disclosure falls under the common interest rule. *See United States v. United Technologies Corp.*, 979 F. Supp. 108, 111 (D. Conn. 1997). According to the government, there was a "lack of common defense as ING and Rabo Bank are not parties to this litigation." Ex. C. The common interest rule is not as narrow as the government argues. For the rule to apply, the parties "must share a common interest about a legal matter," *id.* (internal quotation marks omitted), and the rule has specifically been held to extend to joint venturers developing a common legal strategy. *See id.* at 112. Here, each document is a confidential communication between outside lawyers for the plaintiff and outside lawyers for Rabo Bank and ING, the plaintiff's partners in the Castle Harbour partnership during the years in issue, concerning the Internal Revenue Service examination of the Castle Harbour partnership. The partners of the Castle Harbour partnership had a common legal interest in responding to Internal Revenue Service inquiries and assertions; indeed, the Internal Revenue Service issued copies of the Notices of Final Partnership Administrative Adjustment, the documents precipitating the instant litigation, to each of the Castle Harbour partners, including ING and Rabo Bank. It is hard to see how the government now challenges the partners' common interest. These document were properly withheld under the attorney-client privilege and the common interest rule.

5.      Invoices

The government argues that two documents were improperly redacted because they are legal invoices and should be produced without redaction.[12] *See* Exs. B & C. The first of these, the document corresponding to Log entry 437, is actually an email concerning billing, not an invoice. As explained in the Log, and evident on the face of the document, the redacted portion of the email reflects client requests for legal advice of outside counsel and further reflects the legal services provided by such outside counsel. The redacted portion of this document is protected by the attorney-client privilege. The second of these two documents, corresponding to Log entry 576, is a legal invoice. It is appropriate to redact the portions of a legal invoice that "reveal the motive of the client in

---

[11]     These documents correspond to Log entries 894 and 895.

[12]     These documents correspond to Log entries 437 and 576.

seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law." *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). The redacted portions of the document corresponding to Log entry 576 are minimal and reflect the specific nature of legal services rendered. These redacted portions are protected by the attorney-client privilege.

6. <u>Accounting Analyses</u>

Finally, the government argues that four documents are accounting analyses that are not protected by the attorney-client privilege.[13] *See* Ex. C. As reflected on our log, the first two of these documents, corresponding to Log entries 896 and 897, are emails that seek information for in-house counsel to use in providing legal advice to the corporate client; these documents were properly withheld as privileged. The other two of these four documents, documents corresponding to Log entries 898 and 899,[14] are analyses of data, prepared by a corporate employee and confidentially communicated to in-house counsel at such counsel's request, for the purpose of rendering legal advice. Moreover, each of these two documents contains a privilege legend. Analyses of this nature, prepared under these conditions are protected by the attorney-client privilege.

In *In re Six Grand Jury Witnesses*, legal counsel was hired by a contractor that was being investigated for submitting false payment claims to the government. Counsel requested that certain employees conduct analyses of costs. During grand jury testimony, the employees were asked questions regarding their analyses, which they refused to answer on grounds of privilege. The district court reviewed the analyses *in camera* and directed the employees to answer the questions, "so long as . . . the questions were not connected to or identified with the analyses the witnesses had conducted at the request of defense counsel." 979 F.2d at 942. The Second Circuit held that four of the questions "risk[ed] violation of the attorney-client privilege because the witness, in responding, might be understood to be implying to the grand jury that he had conveyed privileged information to the lawyer." *Id.* at 945. In *In re Six Grand Jury Witnesses*, there was no question that the documented analyses were privileged, and the Court was careful to limit any questioning that might infringe on the communication of the analyses. Likewise, here, the documents communicating the analyses are privileged.

\* \* \*

The 139 documents before the Court were properly withheld in full or redacted under the attorney-client privilege or the work product doctrine, as indicated in the Log, and plaintiff's claims of privilege and work product protection should be upheld by the

---

[13] These documents correspond to Log entries 896, 897, 898, and 899.

[14] The document corresponding to Log entry 448 is an exact copy of the document described at entry 899.

Honorable Stefan R. Underhill
February 17, 2004
Page 11

Court. If, however, the Court is of the view that any of the 139 document before it should be disclosed to the government in whole or part, plaintiff reiterates its request that plaintiff be given the opportunity to provide supplemental information and explanation before the Court ultimately decides to order the disclosure of any document.

Sincerely,

David J. Curtin

cc:     Robert J. Higgins, Esq.