IN THE UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| TIFD III-E INC., the Tax Matters Partner of CASTLE HARBOUR-I LIMITED-LIABILITY COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case Nos.:  3:01-CV-01839 (SRU) (lead case)<br>              3:01-CV-01840 (SRU)<br><br>JULY 12, 2004 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE TESTIMONY FROM JOHN LACEY REGARDING "ADDITIONAL ANALYSIS" PERFORMED AFTER AUGUST 15, 2003**

Plaintiff, TIFD III-E INC. ("Plaintiff") submits the following Memorandum in support of its motion in limine to exclude from the trial of this matter new opinion points that the government has indicated it anticipates eliciting testimony on at trial from its proffered expert witness, John Lacey.[1]

## I.     INTRODUCTION

This case involves a challenge by Plaintiff to administrative determinations made by the Internal Revenue Service ("IRS") in Notices of Final Partnership Administrative Adjustment ("FPAAs") mailed on June 29, 2001 at the conclusion of an extensive audit of the partnership income tax returns filed by Castle Harbour-I Limited Liability Company ("Castle Harbour") for

---

[1] The parties disagree as to who has the burden of raising this issue with the Court. As described below, it is Plaintiff's position that the government is attempting to offer new opinion points at trial, and that this can only be done with leave of Court upon a showing of good cause. Although government counsel initially stated that he would raise the issue with the Court, to date this has not been done and the government now appears to take the position that the issue is Plaintiff's to deal with. To resolve this stalemate, Plaintiff is filing this motion in order to bring the matter to the Court's attention prior to the final pre-trial conference, scheduled for July 15, 2004.

{N0719863}

the 1993 through 1998 tax years. The FPAAs articulate four alternative theories for adjusting Castle Harbour's tax returns, one of which has now been abandoned.

On August 15, 2003, in accordance with the Court's April 17, 2002 Scheduling Order, the government provided Plaintiff with a report from Mr. Lacey, as required by Fed. R. Civ. P. 26(a)(2). The expert report presents seven separate opinion points, all of which Plaintiff disputes for reasons that will become clear at trial. The last of these opinion points is the only one that has arguable relevance to this in limine motion:

> Castle Harbour allocated almost all of its taxable income to banks [ING and Rabo] that did not pay tax on it and avoided allocating the taxable income to GECC, which would have paid over $100 million in tax. The cash paid to the Dutch Banks was a small percentage of and almost invariant to the taxable income allocated to them by Castle Harbour.

August 15, 2003 Report of John Lacey ("August 15 Report") at 5 (excerpts attached as Exhibit A). This opinion point, and its relationship to the government's FPAA theories that are the subject of this case, was explored in detail during Mr. Lacey's September 11, 2003 deposition.

On June 10, 2004, nearly 10 months after the Court-ordered expert disclosure deadline and just over a month before trial is scheduled to begin, the government first disclosed to Plaintiff that Mr. Lacey had "conducted additional analysis of Castle Harbour's members' capital accounts" and that it anticipated eliciting testimony from Mr. Lacey at trial regarding this additional analysis. See June 10, 2004 Letter from R. Higgins to D. Curtin (attached as Exhibit B). In its June 10 letter, the government took the untenable position that Mr. Lacey's additional analysis was merely a "supplement" to his August 15 Report, designed only to inform Plaintiff of prior "incomplete" or "incorrect" disclosures within the meaning of Fed. R. Civ. P. 26(e).

The government did not provide Mr. Lacey's "additional analysis" to Plaintiff until June 18, 2004.[2] The additional analysis (marked as Defendant's trial Exhibit 62 and attached hereto as Exhibit C), on its face expresses opinion points not disclosed in the August 15 Report or in Mr. Lacey's subsequent deposition testimony. Indeed, the "hypothetical" label Mr. Lacey puts on his additional analysis (a term not used in any of Mr. Lacey's prior disclosures) makes clear that he is proffering new opinions. The deadline has long passed for the government to disclose its expert opinion points and any testimony regarding Mr. Lacey's additional analysis should be excluded from trial.

## II. DISCUSSION

In order to place Mr. Lacey's new opinion points in context, Plaintiff has included in this memorandum a brief summary of the government's legal theory to which the new opinion points apparently relate, as set forth in the FPAA and previously described by the IRS in its audit report.

### A. The Government's Section 704(b) Theory

Mr. Lacey's additional analysis appears related, if at all, to the third alternative legal theory described in the FPAAs, i.e., that "the special allocations contained in the Castle Harbour-I Limited Liability Company partnership agreement lack substantial economic effect" and that most of Castle Harbour's taxable income should therefore be reallocated from ING and Rabo to Plaintiff and TIFD III-M. See June 21, 2001 FPAA (excerpts attached as Exhibit D).

---

[2] Plaintiff has made repeated requests for all backup documents and material that support or relate to Mr. Lacey's additional analysis, including drafts of the analysis, notes, and communications with counsel showing or explaining the origin of the analysis. To date, the government has produced only a June 29, 2004 letter from Mr. Lacey attaching schedules that parallel those provided on June 18. The June 29 letter also included a cursory explanation of the schedules that falls far short of the disclosure mandated by Fed. R. Civ. P. 26(a)(2) (assuming the government had leave of Court to make such a disclosure).

"Substantial economic effect" is a legal term of art defined in Treas. Reg. (26 C.F.R.) § 1.704-1(b). Put simply, the substantial economic effect rule of Treas. Reg. § 1.704-1(b) permits the IRS, in certain circumstances, to override an agreement reached among partners in a partnership as to how they will allocate the "book" or economic income of the partnership. In its audit report (IRS Form 886, marked as Plaintiff's trial Exhibit 376) issued in explanation of the FPAAs, the IRS respected Castle Harbour's allocations of <u>book</u> income, but improperly invoked the substantial economic effect rule in an effort to reallocate <u>taxable</u> income from ING and Rabo to Plaintiff and TIFD III-M INC. <u>See</u> Plaintiff's July 8, 2004 Trial Brief at 73-75 (discussing the IRS's relevant audit determinations).

Mr. Lacey's "additional analysis" appears designed to support the government's position reflected in its Trial Brief (but not the FPAAs), which purports to rely on the "comparative liquidation method" to support its position under section 704(b). <u>See</u> Exhibit C (Lacey additional analysis positing "hypothetical" allocations under columns captioned "CLM"). The problem is that Mr. Lacey's "hypothetical allocations" unquestionably contemplate expert opinions within the meaning of Fed. R. Evid. 702 and 703, and that these opinions were not in any way referred to or disclosed until months after the Court-ordered August 15, 2003 expert disclosure deadline.

**B.    Mr. Lacey's Additional Analysis is a New Opinion Point Designed to Support the Government's New Legal Theory**

Mr. Lacey's August 15 Report says nothing about the regulatory "comparative liquidation method" and makes no hypothetical reallocation of Castle Harbour's income. As it relates to Castle Harbour's income allocations, Mr. Lacey's August 15 Report posits only the unremarkable opinion that "Castle Harbour allocated almost all of its taxable income to ING and Rabo . . . ." Exhibit A, at 5. Accordingly, Mr. Lacey's August 15 Report unquestionably differs

from the opinion testimony that the government now says it anticipates eliciting from Mr. Lacey at trial regarding Castle Harbour's income allocations.

In the Joint Trial Memorandum filed with the Court on July 8, 2004, the government adds two entirely new opinion points for Mr. Lacey in describing his anticipated testimony:

> 7. Castle Harbour allocated 98% of its taxable income to the Dutch banks to avoid GE having to pay $62 million in federal income taxes;
>
> 9. The allocation of 98% of Castle Harbour's taxable income to the Dutch banks benefited the Dutch banks and GE, which would not have been the result if the allocations followed ownership interests.[3]

Joint Trial Memorandum at 13-14.

The newly proffered seventh opinion point purports to opine as to the motive for Castle Harbour's allocation of taxable income to ING and Rabo, notably omitting any reference to the IRS regulation that mandated the allocation. This opinion point bears no resemblance to any opinion described in Mr. Lacey's August 15, 2003 Report. Moreover, it is entirely improper for him to opine on the subjective intent of "Castle Harbour" or any other individual or entity on income allocations or any other topic in this case. See, e.g., Lippe v. Bairnco Corp., 288 B.R. 678, 688-89 (S.D.N.Y. 2003) (expert witness' testimony as to defendant's "business purpose" improper and irrelevant); Taylor v. Evans, 1997 WL 154010, at *2 (S.D.N.Y. April 1, 1997) ("[M]usings as to defendant's motivations would not be admissible by any given witness--lay or expert.").

Mr. Lacey's newly proffered ninth opinion point, which appears designed to include the "hypothetical" comparative liquidation method allocations contained in the "additional analysis"

---

[3] Mr. Lacey's original opinion point number 7 is renumbered opinion point No. 8 in the Joint Trial Memorandum.

first disclosed on June 10, 2004, is similarly unrelated to anything described in the August 15 Report, which makes no reference to hypothetical or alternative allocations of income.

Finally, neither the August 15 Report, Mr. Lacey's deposition, nor any other disclosure made by the government to Plaintiff prior to the June 10, 2004 letter refers to either of Mr. Lacey's new opinion points. Not only are these opinion points new, but they are inconsistent with the government's prior disclosures in this case. The IRS's explanation of the FPAA adjustments in its audit report (IRS Form 886) explicitly respects Castle Harbour's allocation of book income to its partners' capital accounts and does not propose any changes to the partners' capital accounts. When asked in discovery about its contentions regarding assignment of income, the government limited its response to "the determinations of the Internal Revenue Service . . . found in the administrative files of the Internal Revenue Service pertaining to the examination of Castle Harbour." Government Response to Plaintiff's Interrogatory No. 14 (attached as Exhibit F). The government's interrogatory response makes no reference to hypothetical capital account allocations and contains no other indication or suggestion that the government intended to walk away from the approach taken by the IRS in the FPAAS, which respected Castle Harbour's book income allocations as valid.

    C.    **Mr. Lacey's "Hypothetical Capital Account" Calculations are Impermissible New Opinion Points and Should Be Excluded Pursuant to Fed. R. Evid. 37**

The government erroneously contends that Mr. Lacey's additional analysis, and anticipated testimony regarding that analysis, is permitted under Fed. R. Civ. P. 26(e)(1). That rule provides, in relevant part that:

> A party is under a duty to supplement at appropriate intervals its [initial disclosures] . . . if the party learns that in some material respect the information [previously] disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to other parties during the discovery process or in writing. With respect to testimony of an expert from

> whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e)(1) (emphasis added); see also Advisory Committee Notes to 1993 Amendment to Rule 26(e) (noting that the rule applies to "corrective" information and "changes" in an expert's report). As indicated, this rule permits a party to supplement its prior expert disclosure only if that disclosure is "incomplete or incorrect." Rule 26(e) does not allow an expert witness to supplement his or her report with an entirely new opinion point, as the government is attempting to do here. See McEacheron v. Glans, 1999 WL 33597331 at *2 (N.D.N.Y. Feb. 24, 1999) ("A supplemental report may not, however, address new issues not contained in the original report."); Keener v. United States, 181 F.R.D. 639, 641 (D. Mont. 1998) (characterizing defendant's "supplement" to an expert report as "disingenuous"; "[w]hat is set forth in the second report is the information, reasoning and opinions that Rule 26 requires be disclosed in the critical initial disclosure"); see also 6 Moore et al., Moore's Federal Practice ¶ 26.131[2] (3d ed. 2004) ("The purpose of Rule 26(a) is to prevent an ambush resulting in surprise or prejudice, of undisclosed or late disclosed evidence."); Equant Integrations Services, Inc. v. United Rentals (North America), Inc., 217 F.R.D. 113, 117 (D. Conn. 2003) (barring testimony disclosed though an untimely rebuttal report). Notably, the government does not (and, indeed, cannot) make any argument that Mr. Lacey's "supplemental analysis" relates in any way to a prior "incomplete" or "incorrect" opinion. To the contrary, Mr. Lacey's prior statement (opinion point number seven in the August 15 Report) that Castle Harbour allocated almost all of its taxable income to ING and Rabo is repeated verbatim in the government's summary of his anticipated testimony in the Joint Trial Memorandum; the government makes no assertion that this prior opinion point is "incomplete" or "incorrect" in any way.

The government has known of its "substantial economic effect" theory and the comparative liquidation method that purports to relate to it since at least January 19, 2001, when the IRS issued its audit report on Castle Harbour. Two and a half years later, after the completion of extensive discovery in this case, the government provided Plaintiff with the August 15 Report, which made no mention whatsoever of the comparative liquidation method or of hypothetical allocations of Castle Harbour's income. Mr. Lacey subsequently made clear in his deposition that he is not an expert in the substantial economic effect rules of Treas. Reg. § 1.704-1(b). Given this history, there is no basis for relief from this Court's Scheduling Order to permit Mr. Lacey to testify at trial regarding the additional analysis.

## III. CONCLUSION

The government's proffer of Mr. Lacey's "supplemental analysis" less than two months before trial is a transparent attempt to introduce new opinion points into this case months after the close of discovery and without leave of Court to modify the prior agreed-upon expert disclosure timeline.[4] Any testimony regarding the supplemental analysis would violate this Court's scheduling orders and would vitiate the rules governing orderly disclosure of expert testimony. Such testimony should be excluded from the trial of this matter. See Softel Inc. v.

---

[4] In the Joint Trial Memorandum, the government makes the bold assertion that "[t]here may not have been a duty to inform the plaintiff at all about Mr. Lacey's supplemental analysis as it concerns plaintiff's own financial information and tax returns . . . ." This assertion is disingenuous at best. Every federal tax case involves the "plaintiff's own financial information and tax returns," but this does not mean - as the government appears to believe - that the government is somehow exempt from the expert disclosure rules of Fed. R. Civ. P. 26(a)(2).

Dragon Medical & Scientific Comm., Inc., 118 F.3d 955, 962 (2d Cir. 1997) (factors court should consider in determining whether to preclude expert testimony that was not properly disclosed).

Dated this 12th day of July, 2004.

                                  Respectfully submitted,

                                  */s/*

                                  William F. Nelson, ct22883
                                  David J. Curtin, ct22881
                                  Michael J. Desmond, ct23186
                                  John A. Galotto, ct22882
                                  MCKEE NELSON LLP
                                  1919 M Street, N.W., Suite 800
                                  Washington, D.C.  20036
                                  Telephone:  (202) 775-1880
                                  Facsimile:  (202) 775-8586
                                  wnelson@mckeenelson.com
                                  dcurtin@mckeenelson.com
                                  mdesmond@mckeenelson.com
                                  jgalotto@mckeenelson.com

                                  David S. Hardy, ct20904
                                  CARMODY & TORRANCE LLP
                                  195 Church Street, P.O. Box 1950
                                  New Haven, CT  06509-1950
                                  Telephone:  (203) 777-5501
                                  Facsimile:  (203) 784-3199
                                  e-mail:  dhardy@carmodylaw.com

## CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing Plaintiff's Motion In Limine To Exclude Testimony From John Lacey Regarding "Additional Analysis" Performed After August 15, 2003 and Plaintiff's Memorandum In Support Of Motion In Limine To Exclude Testimony From John Lacey Regarding "Additional Analysis" Performed After August 15, 2003 has been made today, July 12, 2004, by sending true and correct copies thereof via overnight mail, postage pre-paid, to the following:

>Robert J. Higgins
>Barry E. Reiferson
>Trial Attorneys Tax Division
>U.S. Department of Justice
>P.O. Box 26
>Ben Franklin Station
>Washington, D.C.  20044

and by facsimile to:        (202) 514-9440


and by regular mail, postage prepaid to:

>John B. Hughes
>Assistant U.S. Attorney
>Chief, Civil Division
>157 Church Street
>New Haven, CT  06508


>_____
>David S. Hardy, (ct20904)
>CARMODY & TORRANCE LLP
>195 Church Street, P.O. Box 1950
>New Haven, Connecticut  06509-1950
>Telephone:  (203) 777-5501
>Facsimile:  (203) 784-3199
>e-mail:  dhardy@carmodylaw.com

{N0719863}10