IN THE UNITED STATES DISTRICT COURT **FILED**
DISTRICT OF CONNECTICUT

2004 JUL 23 P 2: 20

U.S. DISTRICT COURT
BRIDGEPORT, CONN

TIFD III-E INC., the Tax Matters Partner of )
CASTLE HARBOUR-I LIMITED-LIABILITY )
COMPANY, )
)
       Plaintiff, ) Case Nos.: 3:01-CV-01839 (SRU) (lead case)
)               3:01-CV-01840 (SRU)
   v. )
)
UNITED STATES OF AMERICA, )
)
       Defendant. )
)

## PLAINTIFF'S MEMORANDUM REGARDING
## LEGEND IN OPERATING AGREEMENT

Plaintiff, TIFD III-E INC. ("Plaintiff") submits this memorandum to address the unsupported assertion in the government's Trial Brief that a legend placed on the Operating Agreement of Castle Harbour –I Limited-Liability Company ("Castle Harbour") (admitted into evidence as Joint Exhibit 1) was motivated by a "tax sheltering purpose." Specifically, the government's Trial Brief contains the following statement:

> The tax sheltering purpose is clear in the "Legends for All Investors" set forth on the second page of the agreement. It provides that:
>
> > NO INVESTOR MAY DIRECTLY OR INDIRECTLY, OFFER, SELL, RESELL, OR DELIVER LLC INTERESTS IN THE UNITED STATES OR TO OR FOR A U.S. PERSON.

Government Trial Brief at 23 (citing Joint Exhibit 1 at 0101386). The government attempts to explain the purpose of this statement by making the following assertion: "Sale of a Castle Harbour interest to a United States person could have the effect, inter alia, of subjecting income of that new owner to United States taxation and GECC to indemnify that owner for such United States taxes." Id.

114210v1

The government's contention that this boilerplate language reveals some tax motivation is completely off the mark. The cited language is related to federal securities laws requirements, and has nothing to do with tax. This bench memorandum is intended to assist the Court in summarily disposing with this argument.

The language quoted by the government in its brief is one sentence within a much longer legend designed to ensure that the issuance of the partnership interests to ING and Rabo complied with United States securities laws. The first three sentences of the legend (which is captioned "FOR ALL INVESTORS"), which culminate with the sentence quoted by the government, read as follows:

> THE CLASS A MEMBERS' INTERESTS IN CASTLE HARBOUR-I LIMITED-LIABILITY COMPANY (THE "*LLC INTERESTS*") HAVE NOT BEEN REGISTERED UNDER THE U.S. SECURITIES ACT OF 1993, AS AMENDED (THE "*SECURITIES ACT*"), OR ANY U.S. STATE "BLUE SKY" OR SECURITIES LAWS OR THE SECURITIES LAWS OR REGULATIONS OF ANY NON-U.S. JURISDICTION. NO SUCH LLC INTERESTS WILL BE OFFERED OR SOLD TO OR FOR THE ACCOUNT OR BENEFIT OF ANY U.S. PERSON. NO INVESTOR MAY DIRECTLY OR INDIRECTLY, OFFER, SELL, RESELL, OR DELIVER LLC INTERESTS IN THE UNITED STATES OR TO OR FOR A U.S. PERSON.

Operating Agreement (Joint Exhibit 001) at 0101386.

Regulation S of the Securities and Exchange Commission, promulgated under the Securities Act of 1933, as amended (the "1933 Act"), provides an exemption from the registration requirements of the 1933 Act for "sales that occur outside the United States." 17 C.F.R. § 230.901 (1993). As in effect in 1993,[1] Regulation S provided that, to qualify for the exemption, equity securities issued by a U.S. issuer (such as Castle Harbour, a Nevada limited liability company) were required to satisfy the following requirement:

> All offering materials and documents ... used in connection with offers and sales of securities prior to the expiration of the restricted period ... shall include statements to the effect that the securities have not been registered under the Act and may not be offered or sold in the United States or to U.S. persons ... unless

---

[1] Regulation S was revised in 1998.

2

the securities are registered under the Act, or an exemption from the registration requirements of the Act is available.

17 C.F.R. § 230.902(h)(2)(1993), made applicable by 17 C.F.R. § 230.903(c)(3)(i)(1993).

When the language cited by the government is placed in the context of the entire legend, it is clear that the purpose of the language cited by the government was to ensure compliance with Regulation S. Specifically, the legend placed ING and Rabo—and any other potential purchaser of a Class A membership interest in Castle Harbour—on notice that the Operating Agreement contained transfer restrictions intended to ensure compliance with U.S. securities laws.[2]

Not only does the government fail to read the sentence in the context of the entire legend, but it fails to read the legend in the context of the Operating Agreement. The legend itself is not a substantive provision; rather, it places prospective purchasers on notice that the provisions of the Operating Agreement contain restrictions on transfers. Section 10 of the Operating Agreement provides comprehensive rules regulating the transfer of interests in Castle Harbour. Section 10.2 provides that if a transfer of an interest "occurs on or before the first anniversary of the Effective Date, the transferee shall not be a 'U.S. Person' within the meaning of Regulation S promulgated under the U.S. Securities Act of 1933, as amended." See Joint Exhibit 1 at 0101482. For purposes of Regulation S, the "restricted period" applicable to the Class A Interests was one year, which is consistent with the Operating Agreement's prohibition on transfers to U.S. persons on or before the first anniversary of the issuances of the Class A Interests. See 17 C.F.R. § 230.903(c)(3)(iii)(A) (1993).[3]

---

[2] The page following this legend contains a second legend that makes it even more obvious that the legend cited by the government was intended to address securities law compliance issues rather than tax planning objectives. The second legend is captioned "FOR INVESTORS RESIDENT IN THE NETHERLANDS ONLY" and refers to Dutch securities laws. See Operating Agreement at Bates page 0101387 (marked as Joint Exhibit J001).

[3] There is also no basis for the suggestion in the government's trial brief that a transfer of a Class A interest to a U.S. person would have subjected GECC to an obligation to indemnify the new owner from any U.S. taxes incurred. See Government Trial Brief at 23. This assertion is simply incorrect. Under the tax indemnity agreements with ING and Rabo, the rights to indemnification would not run to a U.S. assignee of

3

Dated this 23rd day of July, 2004.

        Respectfully submitted,

_____
William F. Nelson, ct22883
David J. Curtin, ct22881
Michael J. Desmond, ct23186
John A. Galotto, ct22882
MCKEE NELSON LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586
wnelson@mckeenelson.com
dcurtin@mckeenelson.com
mdesmond@mckeenelson.com
jgalotto@mckeenelson.com

Anthony M. Fitzgerald, ct04167
CARMODY & TORRANCE LLP
195 Church Street, P.O. Box 1950
New Haven, CT 06509-1950
Telephone: (203) 777-5501
Facsimile: (203) 784-3199
e-mail: afitzgerald@carmodylaw.com

---

the Class A interest. See ING Tax Indemnification Agreement, Sections 5 and 11, at Bates pages 0099439-44, 59 (admitted into evidence as Joint Exhibit J004); Rabo Tax Indemnification Agreement, Sections 5 and 11, at Bates pages 0099479-83, 99 (admitted into evidence as Joint Exhibit J005).

114210v1

## CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing **PLAINTIFF'S MEMORANDUM REGARDING LEGEND IN OPERATING AGREEMENT** has been made today, July 23, 2004, by delivering true and correct copies thereof by hand to the following:

>Robert J. Higgins
>Barry E. Reiferson
>Trial Attorneys, Tax Division
>U.S. Department of Justice
>c/o Ann Nevis, Assistant United States Attorney
>U.S. Attorney's Office
>915 Lafayette Blvd.
>Bridgeport, CT 06604

and by facsimile to    (203) 378-4958
    (202) 514-9440

*[signature]*
Michael J. Desmond, ct23186
MCKEE NELSON LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586
mdesmond@mckeenelson.com

Dated this 23rd day of July, 2004.

114210v1