e) Whether the GE entities (TIFD, III-E, Inc. and TIFD, III-M, Inc.) are liable for the accuracy related penalties under IRC § 6662, due to either negligence or disregard of rules or regulations or due to a substantial understatement of tax.

9. VOIR DIRE QUESTIONS

Not applicable.

10. LIST OF WITNESSES

Plaintiff reserves the right to call the following individuals as witnesses at trial:

| Witness | Brief Statement of Anticipated Testimony |
|---|---|
| Daniel Brickman  7-21-04 | Mr. Brickman is affiliated with the investment banking firm of Babcock & Brown, Inc. ("Babcock & Brown"), and will testify regarding GECC's solicitation of investment ideas from Babcock & Brown in 1992 and 1993 to address problems in its aircraft leasing business. Mr. Brickman will also testify regarding the origin and structuring of the Castle Harbour transaction and will testify about steps taken by Babcock & Brown to locate equity investors for Castle Harbour. |
| Eric Dull  7-22-04 | Mr. Dull was the lead negotiator for GECC in its negotiations with ING and Rabo over their investments in Castle Harbour and will testify about those negotiations. Mr. Dull will also testify regarding the origin and structure of Castle Harbour and GECC's reasons for entering into the transaction. Mr. Dull was also an officer and director of TIFD III-M and will testify regarding the involvement and participation of TIFD III-M as an owner of Castle Harbour. |
| Niall Greene | Mr. Greene held a senior position with General Electric Capital Aviation Services, Ltd. ("GECAS, Ltd.") in the mid-1990s and will testify regarding aircraft remarketing generally, the state of the aircraft market in the 1990s, and remarketing work done by GECAS, Ltd. under contractual arrangements with Castle Harbour and other entities. |
| Dermot Hanly | Mr. Hanly worked for GECAS, Ltd. in the mid-1990s and performed financial, accounting and other administrative services for GECAS and for other third parties, including Castle Harbour, under contractual arrangements. Mr. Hanly will testify regarding administrative services he performed for with Castle Harbour, including processing expenses and distributions, preparation of financial statements and preparation of tax returns. |

| | |
|---|---|
| Diarmuid Hyde<br>**7-26-04** | Mr. Hyde was a manager of Castle Harbour resident in Bermuda from 1995 through 1997. Mr. Hyde will testify regarding his duties and responsibilities as a manager of Castle Harbour and will testify regarding the business and operations of Castle Harbour during this time period. |
| Richard Koffey<br>(likely by deposition) | Mr. Koffey is affiliated with Babcock & Brown and will testify regarding GECC's solicitation of ideas from Babcock & Brown in 1992 and 1993 to address problems in its aircraft leasing business. Mr. Koffey will also testify regarding the origin and structuring of the Castle Harbour transaction and will testify about steps taken by Babcock & Brown to locate equity investors for Castle Harbour. Mr. Koffey will testify regarding tax aspects of the Castle Harbour transaction. |
| Robert Lewis<br>**7-21-04** | In 1993, Mr. Lewis was the head of Transportation & Industrial Funding Corporation (T&I), a wholly owned subsidiary of GECC that held, as one of its businesses, GECC's commercial aircraft financing business. Mr. Lewis will testify regarding market conditions for the commercial aircraft financing business in the 1990s, the challenges facing GECC in that business, the reasons the company entered into the Castle Harbour transaction, and the internal approval process for that transaction. |
| Hem Mulders<br>(by deposition) | Mr. Mulders was the lead negotiator for Rabo on the Castle Harbour transaction and served as Rabo's representative for Castle Harbour during the five years in which Rabo was an investor. Mr. Mulders will testify by videotaped deposition regarding Rabo's reasons for investing in Castle Harbour, its negotiations with GECC over the transaction, the structure of Castle Harbour, Castle Harbour's operations, and Rabo's participation in the management of Castle Harbour. |
| Denis Nayden<br>**7-23-04** | Mr. Nayden was the Executive Vice President of GECC in 1993. Mr. Nayden will testify regarding market conditions for the commercial aircraft financing business in the 1990s, the challenges facing GECC in that business, the reasons the company entered into the Castle Harbour transaction, and the internal approval process for the transaction. Mr. Nayden will also testify about the capital structure of GECC and the process the company followed in the 1990s to raise funds for its operations. |
| Wilfred Nagel<br>(by deposition) | Mr. Nagel was the lead negotiator for ING on the Castle Harbour transaction. Mr. Nagel will testify by videotaped deposition regarding ING's reasons for investing in Castle Harbour, its negotiations with GECC, the structure of Castle Harbour, Castle Harbour's operations, and Rabo's participation in the management of Castle Harbour. |

11

| | |
|---|---|
| Robert O'Reilly<br>7.21.04 | In 1993, Mr. O'Reilly was the head of the Transportation Financing division of GECC's T&I subsidiary, which held, as one of its businesses, GECC's commercial aircraft financing business. Mr. O'Reilly will testify regarding market conditions for the commercial aircraft financing business in the 1990s, the challenges facing GECC in that business, the reasons the company entered into the Castle Harbour transaction, and the internal approval process for the transaction. |
| Charles Oleson | Mr. Oleson was the General Manager of Castle Harbour in 1998 and was also the manager resident in Bermuda in 1997 and 1998. Mr. Oleson will testify regarding the activities and operations of Castle Harbour and will testify regarding the 1998 buy-out by subsidiaries of GECC of Rabo and ING's interests in Castle Harbour. |
| James Parke<br>7.22.04 | Mr. Parke is the Chief Financial Office of GECC, a position he held in 1993. Mr. Parke will testify regarding market conditions for the commercial aircraft financing business in the 1990s, the challenges facing GECC in that business, the reasons the company entered into the Castle Harbour transaction, and the approval process for that transaction. Mr. Parke will also testify about the capital structure of GECC, the process the company follows to raise funds for its operations, and the treatment and reporting of items on the company's financial statements. |
| Chris Tewell | Mr. Tewell was the General Manager of Castle Harbour from 1993 through 1997. Mr. Tewell will testify regarding the activities and operations of Castle Harbour during that time period. |
| Professor Stewart Myers<br>7.27.04 | Professor Myers will be offered by Plaintiff as an expert witness in the area of financial economics and corporate finance. Professor Myers will opine that GECC made a material, positive return on its investment in Castle Harbour, and will opine that, from a corporate finance perspective, ING and Rabo were partners in, rather than lenders to, Castle Harbour. |

Plaintiff reserves the right to call any witness listed by Defendant and reserves the right to call other witnesses for purposes of rebuttal and impeachment, including but not limited to its designated rebuttal expert, Professor Norman Strauss.

Defendant reserves the right to call the following witnesses at trial:

1) Daniel Brickman:     2 Soundview Drive, Greenwich, CT 06830

    Anticipated Testimony:     Mr. Brickman will testify regarding his work with Babcock & Brown regarding the formation of Castle Harbour, its structure, and predicted financial operations.

12

2) John B. Fahy:                    32 Twin Pond Road Lane, New Canaan, CT 06840

*7-27-04*

    Anticipated Testimony:        Mr. Fahy will testify regarding the formation of Castle Harbour, particularly the various financial information schedules prepared for potential foreign investors and for the GE entities and the Dutch banks during the negotiations leading to the Castle Harbour agreement on October 6, 1993.

*Expert Witness*

3) GECC/TIFD III-E:                201 High Ridge Road, Stamford, CT 06927

    Anticipated Testimony:        The corporate plaintiff will designate a knowledgeable person to testify regarding the preparation of all financial records produced by it during discovery, including but not limited to the federal income tax returns of Castle Harbour-I Limited Liability Company, Castle Harbour Leasing, Inc., and the Financial Statements prepared for these same entities, for the years 1993 through 1998.

                                            The corporate plaintiff will designate a person knowledgeable to testify regarding all aspects of the Amended and Restated Operating Agreement signed on October 6, 1993 and the Operating Manual for Castle Harbour.

4) Dr. John Lacey                   7 Poppy Trail, Rolling Hills, CA 90274
                                    310-541-5913

    Anticipated Testimony:        Dr. Lacey is an expert in the fields of accounting, economics, and quantitative business analysis. His review of Castle Harbour's financial and operational records support his conclusions that 1) the money contributed by the Dutch banks to Castle Harbour was not used or needed by Castle Harbour; 2) the use of the Dutch banks' contributions was restricted by the agreement among the GE entities and the Dutch banks; 3) GECC's contribution of $296 million to Castle Harbour was used to offset a negative capital account and circulated back to GECC through the purchase of GECC commercial paper; 4) the Dutch banks did not obtain the risks and rewards of ownership through their contribution to Castle Harbour; 5) the Dutch banks' cash contributions to Castle Harbour had characteristics of debt; 6) the only business purpose for including the Dutch banks in Castle Harbour was the avoidance of paying federal income taxes by GE; 7) Castle

13

|  |  |
|---|---|
|  | Harbour allocated 98% of its taxable income to the Dutch banks to avoid GE having to pay $62 million in federal income taxes; 8) the cash paid to the Dutch banks was a small percentage of the taxable income allocated to them by Castle Harbour; 9) the allocation of 98% of Castle Harbour's taxable income to the Dutch banks benefited the Dutch banks and GE, which would not have been the result if the allocations followed ownership interests. |
| 5) Dr. Herbert T. Spiro | 17516 Lemarsh, Northridge, CA 91325<br>818-349-9458 |
| Anticipated Testimony: | Dr. Spiro is a financial economist specializing in economic feasibility assessments and financial analysis. His review of Castle Harbour's financial and operational records, and the initial report prepared by Stewart Myers, support his conclusions that the nature of the Dutch banks' transaction with Castle Harbour was that of a term loan. |

Defendant reserves the right to call any witness listed by plaintiff and reserves the right to call other witnesses for purposes of rebuttal and impeachment.

11. **EXHIBITS**

Attached as Appendix A is a list of the parties' Joint Exhibits. Attached as Appendix B is a list of Plaintiff's exhibits, together with Defendant's objections thereto. Attached as Appendix C is a list of Defendant's Exhibits, together with Plaintiff's objections thereto. The parties have reserved all objections as to relevance for all exhibits other than Joint Exhibits.

12. **DEPOSITION TESTIMONY**

The parties have designated and cross-designated deposition testimony from Richard Koffey, Hem Mulders and Wilfred Nagel. Although Plaintiff anticipates that they will testify at trial, in the event that they do not, Defendant has reserved the right to present at trial the disposition testimony of Diarmuid Hyde and Dermot Hanly. The parties' deposition designations and counter-designations are included on Appendix D. Plaintiff has objected to certain portions of Defendant's designations from the depositions of Messrs. Hanly, Mulders and Nagel, as noted