# McKee Nelson LLP

Correspondence from:
> NEW YORK, NY          WASHINGTON, DC

5 TIMES SQUARE, 35TH FLOOR          1919 M STREET, NW, SUITE 800
NEW YORK, NY 10036                  WASHINGTON, DC 20036
Telephone 917.777.4200              Telephone 202.775.1880
Facsimile 917.777.4299              Facsimile 202.775.8586

William F. Nelson
(202) 775-8582
WNELSON@mckeenelson.com

FILED

2004 SEP 20 P 1:53

U.S. DISTRICT COURT
BRIDGEPORT, CT

September 15, 2004

**VIA FACSIMILE & FEDERAL EXPRESS**

Honorable Stefan R. Underhill
United States District Court for the
District of Connecticut
915 Lafayette Boulevard
Bridgeport, CT 06604

    Re:    TIFD III-E INC. v. United States
             Case No.: 3:01CV1839 (SRU) (D. Conn.)

Dear Judge Underhill:

    The evidence in this case closed on July 28, 2004 and closing arguments were heard on August 5, 2004. On September 1, 2004, counsel for the government submitted a letter directing the Court's attention to the recent decision in Long-Term Capital Holdings v. United States, Case No. 3:01-CV-01290, 2004 WL 1924931 (JBA) (D. Conn. Aug. 27, 2004), and stating that the "case is broadly relevant to many aspects of the parties' briefs and arguments." In the same "spirit of Fed. R. App. P. 28(j)," I am writing to be clear that, contrary to the Government's assertion, Long-Term is at best only narrowly relevant to Castle Harbour and should have no effect on the outcome of this case.

    Specifically, the business purpose/economic substance standard articulated in Long-Term differs slightly from the formulation that Plaintiff advanced in its trial brief and at trial. In its Trial Brief, Plaintiff stated that "[a]lthough most of the Second Circuit decisions on the economic substance doctrine have focused on the objective economic effect of the transactions, there is also authority that a transaction that lacks objective economic effect cannot be disregarded unless it also lacks any subjective non-tax business purpose." Plaintiff's Trial Brief (Docket No. 52) at 43 (citing DeMartino v. Commissioner, 862 F.2d 400 (2d Cir. 1988) and Gilman v. Commissioner, 933 F.2d 143 (2d Cir. 1991)). While citing these same cases, the Court in Long-Term adopted a "flexible" standard that takes into account whether the transaction has (1) any business purpose other than tax avoidance (a subjective test), and (2) any economic effect other than the creation of tax benefits (an objective test). Long-Term, 2004 WL 1924931, at

*39. Under the "flexible" approach to the two-prong test, either factor may or may not be dispositive depending on the facts and circumstances. As stated in its closing argument, however, Plaintiff has no reason to oppose the "flexible" two-prong test. See August 5, 2004 Transcript at 1220. The Castle Harbour transaction fully satisfied the requirements of both prongs of the test. See id. at 1127-28.

In this case, five officers of General Electric Capital Corporation ("GECC") and its subsidiaries - who negotiated, approved and determined the public financial reporting of the Castle Harbour transaction, none of whom were directly responsible for tax matters - testified consistently about its non-tax business origins and purposes. Their testimony is consistent with voluminous contemporaneous documentary evidence and the testimony of third-party witnesses. The documents considered in approving Castle Harbour are not missing from the record and specify the business purposes underlying the transaction. Castle Harbour was part of GECC's core aircraft leasing business and the goal of monetizing aircraft assets was a component of the company's overall business strategy for managing its large aircraft portfolio and was well documented. Moreover, the consistent testimony of Messrs. Tewell and Hyde, again corroborated by volumes of documents, shows that Castle Harbour actually operated as an active business over a 5-year period and that the returns to ING and Rabo were a direct function of Castle Harbour's profitability. In addition, ING and Rabo, through the videotaped depositions of officers who had contemporaneous knowledge of the transaction, explained their independent non-tax purposes for entering into the transaction, the benefits they derived and the risks they accepted by investing in an operating aircraft leasing business. Moreover, while GECC readily admitted that it was both aware of and intended to derive tax benefits from the transaction, the record shows that Castle Harbour originated in response to GECC's non-tax business objectives and it allows no inference that the transaction was motivated solely by tax avoidance considerations. Finally, through Professor Myers, Plaintiff provided evidence that GECC actually made a pre-tax profit of at least 5.5% from Castle Harbour (taking into account all transaction costs), in addition to obtaining other material non-tax business benefits. Indeed, this pre-tax profit exceeds GECC's composite interest rate of 4.97% on borrowed funds in 1993, as set forth in the trial record. See Plaintiff's Exhibit 197 at 01000877.

In contrast, the Court in Long-Term found that "the majority of Long-Term's four testifying principals recalled little more . . . than that it represented a tax transaction," that some Long-Term principals had regarded it as purely a tax deal, that a Long-Term decision-maker recalled nothing about a missing approval document except that it discussed the tax benefit, and that Long-Term presented no contemporaneous documentary evidence of any business purpose for the transaction. See 2004 WL 1924931, at *50-*54. As a result, the Court concluded that Long-Term entered into the transaction without any business purpose other than tax avoidance. 2004 WL 1924931, at *54. In this regard, the Court stated that the transaction "was a one-time purchase of a tax product by Long Term and different in almost every way from Long Term's core investment business." 2004 WL 1924931, at *54 n.89. Finally, after taking into account

Hon. Stefan R. Underhill
September 15, 2004
Page 3

transaction costs, the Court found that Long-Term could not in fact expect to earn a pre-tax profit from the transaction. 2004 WL 1924931, at *41.

In sum, fine parsing of the business purpose/economic substance standard in the Second Circuit is unnecessary to resolve this case; thus, Long Term is not "broadly" relevant here.

Sincerely,

William F. Nelson

cc:     Robert J. Higgins, Esq.
        Barry E. Reiferson, Esq.