3:01CV01839(SRU)
3:01CV01840(SRU)
(Judge Underhill)

---

---

## *IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT*

---

TIFD III-E INC., THE TAX MATTERS PARTNER OF
CASTLE HARBOUR-1 LIMITED-LIABILITY COMPANY,

Plaintiff

v.

THE UNITED STATES OF AMERICA,

Defendant

---

UNITED STATES'
INITIAL BRIEF ON REMAND

---

KEVIN J.O'CONNOR
    United States Attorney
JOHN B. HUGHES
    Chief, Civil Division
ROBERT J. HIGGINS
    Trial Attorney
    United States Department of Justice (Tax)
    Washington, D.C. 20044

---

---

Page

# TABLE OF CONTENTS

United States' Initial Brief on Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Accuracy-Related Penalties for 1997 and 1998 . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.    Penalty Determinations for 1997 and 1998 . . . . . . . . . . . . . . . . . . . . . . . 3

C.    Plaintiff's Trial Argument and Evidence o Penalties . . . . . . . . . . . . . . . 5

D.    The Penalty for a Substantial Understatement of Income Tax . . . . . . . . 7

E.    The Negligence Penalty Is Also Applicable . . . . . . . . . . . . . . . . . . . . . . 13

F.    The Reasonable Cause Exception of § 6664(c) Does Not Apply . . . . . . 17

1.    Plaintiff Cannot Demonstrate a § 6664(c) Reasonable
      Cause Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

2.    Plaintiff cannot satisfy the reasonable cause and good faith
      standard for tax shelters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

II.   Form of Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Appendix A (Separately Bound):**

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.), 1998 Ed:

§ 6653 *(Repealed)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1

§ 6661 *(Repealed)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A3

§ 6662 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A5

§ 6664 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A8

i

Page

**Appendix A (Continuation):**

Treasury Regulations (26 C.F.R.), 2001 Ed.

§ 1.6661-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A9

§1.6661-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A9

§1.6661-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A14

§1.6661-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A15

§1.6661-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A17

§1.6661-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A19

Treasury Regulations (26 C.F.R.), 1998 Ed:

§ 1.6662-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A22

§ 1.6662-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A22

§ 1.6662-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A23

§ 1.6662-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A25

§ 1.6664-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A34

**Appendix B (Separately Bound):**

Exhibit    Description

1.    Notice of Final Partnership Administrative Adjustment
      For Tax Years Ending 1999 and 1998 . . . . . . . . . . . . . . . . . . . . . . . . . . . . B1

2.    Joint Exhibit Sixteen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B17

3.    Excerpts from Trial Transcript of July 21, 2004, pp. 107-111 . . . . . . . . . . . B21

ii

Page

**Appendix A (Continuation):**

4.    Plaintiff's Privilege Log, February 6, 2007, Nos. 906 and 907 . . . . . . . . . . . .  B26

5.    Proposed Judgment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  B27

6.    Excerpts from Trial Testimony of Dennis Nayden, Diarmud Hyde,
      Chris Tewell, Eric Dull, and  Robert O'Reilly  . . . . . . . . . . . . . . . . . . . . . . . .  B29

## AUTHORITIES

**Cases:**

*Allen v. Commissioner*, 925 F.2d 348 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Atlantic Mutual Insurance Co. v. Commissioner*, 523 U.S. 382 (1998)  . . . . . . . . . . . . . . 9

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S.
      837 (1984)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Chimblo v. Commissioner*, 177 F.3d 119 (2d. Cir. 1999)
      *cert.denied*, 528 U.S. 1154 (2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Commissioner v. Culbertson*, 337 U.S. 733 (1949) . . . . . . . . . . . . . . . . . . . . . 3, 10, 17, 19

*Gilbert v. Commissioner*, 248 F.2d 399 (2d Cir. 1957) . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

*Goldman v. Commissioner*, 39 F.3d 402 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . .  14, l5

*Hillsborough Holdings Corp. v. United States*, 346 B.R. 877
      (Bankr. M.D. Fla. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*John Kelley Co. v. Commissioner*, 326 U.S. 521 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . .3

*Kluener v. Commissioner*, 154 F.3d 630 (6th Cir.1998)  . . . . . . . . . . . . . . . . . . . . . 10, 11

*Long-Term Capital Holdings v. United States*, 330 F. Supp. 2d 122, *aff'd*
      150 Fed. Appx. 40 (2d. Cir. 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 9, 10

*Neonatology Associate v. Commissioner*, 299 F.3d 221 (3d Cir. 2002) . . . . . . . . . . . . . 16

*Nicole Rose Corp. v. Commissioner*, 117 T.C. 328 (2001),
      *aff'd*, 320 F.3d 282 (2nd Cir., 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

iii

Page

**Cases(Continuation):**

    *O'Hare v. Commissioner*, 641 F.2d 83 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    *Osteen v. Commissioner*, 62 F.3d 356 (11th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . 10, 11

    *Pahl v. Commissioner*, 150 F.3d 1124 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    *Pasternak v. Commissioner*, 990 F.2d 893 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 15

    *Schrum v. Commissioner*, 33 F.3d 426 (4th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . 16

    *Streber v. Commissioner*, 138 F.3d 216 (5th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . 10, 11

    *TIFD III-E, Inc. v. United States*, 223 F.R.D. 47 (D. Conn. 2004) . . . . . . . . . 7, 12, 14, 17

    *TIFD III-E, Inc. v. United States*, 459 F.3d 220 (2d Cir. 2006), *rev'g and remanding*, 342 F. Supp. 2d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 8, 15, 17

**Statutes**:

    Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, 96 Stat.324, 648 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Internal Revenue Code of 1986 (26 U.S.C.):

        §§ 6221-6234 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        § 6626 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18

        § 6662 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 8, 13, 14, 19

        § 6664 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17

        §§ 6662-6664 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        § 7491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        § 7805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Page

**Miscellaneous:**

*General Explanation of Tax Legislation Enacted in 1997,* Staff of the Joint Comm. on
Taxation, 105th Cong.,  at 377, *reprinted in* 1997-3 C.B. 87, 487 . . . . . . . . . . . . . . . . .  4

Treasury Regulations (26 C.F.R.):

§ 1.6662-3  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16

§ 1.6662-4  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8. 9, 10, 18

§ 1.6664-4  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

§ 301.6221  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIFD III-E INC.,THE TAX MATTERS PARTNER OF CASTLE HARBOUR-I LIMITED-LIABILITY COMPANY, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NOS. 3:01CV01839(SRU) |
| | ) | 3.01CV01840(SRU) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' INITIAL BRIEF ON REMAND

Pursuant to the Court's November 15, 2006 Memorandum of Conference, the United

States files this brief to demonstrate why Castle Harbour (sometimes referred to here as GECC,

the parent company) is liable for accuracy-related penalties as set forth in the Final Notice of

Partnership Adjustment (FPAA). In addition, the United States addresses the form of the Final

Judgment after remand in this TEFRA Partnership Level Proceeding, a proceeding which does

not determine precisely the tax liability of the taxable partners. The judgment must reflect that

the decision of the court is to uphold the determination of the IRS in the FPAAs issued to the tax

matter partner, "determining all partnership items . . . , the proper allocation of such items among

the partners, and [with respect to the years 1997 and 1998] the applicability of any penalty,

addition to tax or additional amount which relates to an adjustment to a partnership item."

§ 6226(f).[1]

---

[1] All references to "§" or "§§" are to sections of the Internal Revenue Code and Treasury
Regulations in force during the years at issue, unless otherwise stated. The pertinent statutes and
regulations are set forth in Appendix A to this brief.

-1-

I.      Accuracy-Related Penalties for 1997 and 1998

      A.      Introduction

This matter is a consolidation of two petitions challenging the IRS's determinations set

forth in two FPAAs with respect to the tax return report by Castle Harbour for the years 1993-

1996 and 1997 and 1998.[2]  In all respects, save one, the issues presented by the petitions are the

same.  The one area of disjunction is this Court's jurisdiction to determine penalties in a

partnership level proceeding such as this one.  Penalties are not partnership items. § 6221 *et seq.*[3]

For tax years prior to 1997, penalties, therefore, could not be adjudicated in a partnership-level

proceeding; rather, the adjudication of penalties was left to a separate partner-level proceeding.

Congress has provided, however, for tax years 1997 and later, that penalties should be

adjudicated in the partnership-level proceeding.  § 6626(f).  Accordingly, this Court can and

must adjudicate penalties with respect to the FPAA covering the years 1997 and 1998.

      The accuracy-related penalties at issue are calculated as a percentage of the tax

understatement which relate to the adjustments in the FPAAs.  While the United States addressed

penalties in its earlier briefings in this Court, this Court, having concluded Castle Harbour

correctly reported, for tax purposes, the transaction with the Dutch banks, did not reach the

determination of penalties since there would be no resulting tax understatement.  In our brief on

---

   [2]  The FPAAs at issue is part of the record in this case as an exhibit to each complaint.
For the Court's convenience, we have reproduced the 1997-1998 FPAA in  Appendix ("App.")
B, Ex. 1.

   [3]  A partnership-level proceeding is commenced pursuant to §§ 6221-6234, enacted as
part of the Tax Equity and Fiscal Responsibility Act of 1982 and commonly referred to as
"TEFRA", Pub. L. No. 97-248, 96 Stat.324, 648.  In general, under TEFRA, one proceeding
resolves the various tax adjustments associated with the partnership and binds all partners to the
result.  § 6226(a), (c).  Penalties are not partnership items, but rather "affected items", which are
imposed against individual partners upon the conclusion of the partnership-level proceeding.

153.1

appeal, the United States asked that, in the event the Second Circuit reversed, the case be

remanded for a determination of penalties. The Court of Appeals reversed on the grounds that

"the Dutch banks should not be treated as equity partners in the Castle Harbour partnership

because they had no meaningful stake in the success or failure of the partnership." *TIFD III-E,*

*Inc. v. United States,* 459 F.3d 220, 224 (2d Cir. 2006), *rev'g and remanding,* 342 F.Supp. 2d. 94

(D.Conn. 2004). Applying well established law to the facts of this case,[4] the Court concluded

that the Dutch banks' interest "was in the nature of a secured loan, with an insignificant equity

kicker" and that "the facts and circumstances presented, considered in their totality, compel the

conclusion that the Dutch banks' interest was, for tax purposes, not a bona fide equity

participation." *Id.* at 241. The Second Circuit upheld the FPAA adjustments and remanded for

further proceedings "consistent with this opinion." *Id.* at 241. Notably, the remand does not

extend to additional findings on the nature of the Dutch banks' interest. *Id.* at 240.

      B.    <u>Penalty Determinations for 1997 and 1998</u>

      As explained above, in this TEFRA partnership-level proceeding, the Court should now

resolve the "applicability of any penalty . . . which relates to an adjustment to a partnership

item," with respect to the FPAA issued for 1997-1998. As set forth in that FPAA, the IRS

determined that any resulting underpayments of tax are subject to the accuracy-related penalty,

*i.e.,* for negligence and for a substantial understatement of tax. §§ 6662(b)(1) and (2). These

penalties, however, are not compounded – that is the penalty amount of 20% of the resulting

underpayment of tax is collected only once, even when more than one could apply. In this

---

    [4] *Commissioner v. Culbertson,* 337 US 733 (1949); *John Kelley Co. v. Commissioner,*
326 U.S. 521, 524-24 (1946); *O'Hare v. Commissioner,* 641 F. 2d 83, 86-87 (2d Cir. 1981);
*Gilbert v. Commissioner,* 248 F.2d 399, 406 (2d Cir. 1957).

153.1

partnership-level proceeding, the Court determines "all the legal and factual determinations that underlie the determination of any penalty." Treas. Reg. § 301.6221-1(c); *see also General Explanation of Tax Legislation Enacted in 1997,* Staff of the Joint Comm. on Taxation, 105th Cong., at 377, *reprinted in* 1997-3 C.B. 87, 487. Calculation of the specific dollar 20% penalty amount occurs at the partner-level based on the increase in tax owed by the partner, in this case GECC.

The relevant accuracy-related penalty provisions are codified in §§ 6662-6664. The basic provision, § 6662(a), provides that there "shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies." Section 6662(b) then provides that § 6662 penalties apply to certain categories of underpayments[5], two of which are at issue here, § 6662(b)(1) and (2):

> (1) Negligence or disregard of rules or regulations; and

> (2) Any substantial understatement of income tax.

These penalties may be excused when the taxpayer can establish "reasonable cause" under § 6664( c), which provides-

> No penalty shall be imposed under Section 6662 . . . with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.

---

[5] An "underpayment" is the difference between the amount of tax reported on a return and the amount of tax determined after an audit or judicial review.  *See* §§ 6662(d)(2)(A), 6664(a).

-4-

153.1

GECC bears the burden of proof to establish that a) neither the negligence nor the substantial understatement of tax penalty applies and b) that it had reasonable cause for the underpayment of tax resulting from the FPAA adjustments and that it acted in good faith.[6]

C.    Plaintiff's Trial Arguments and Evidence on Penalties

The plaintiff addressed in its trial brief the FPAA's determination that the accuracy-related penalty for negligence and substantial understatement of income tax applied. Docket No. 82. It first argued that its return position was correct. If not correct, the plaintiff argued further that the negligence penalty was not applicable because it, *id.* at 83:

> (i) had a clear basis under the tax law for its positions, (ii) made every attempt to comply with the provisions of the internal revenue laws, and (iii) exercised ordinary and reasonable care in the preparation of its 1997 and 1998 partnership tax returns.

Likewise, plaintiff argued that the penalty for a substantial understatement should not apply because it had "substantial authority" for the positions taken on its tax returns, noting that the "overwhelming weight of legal authority" supported its position and that "no contrary legal authorities existed." *Id.* As we noted above, the Second Circuit opinion is to the contrary, concluding that the well-established legal authority "compelled [the Court] to look not so much at the labels used by the partnership but at true facts and circumstances." 459 F.3d at 241. And those fact and circumstances, "considered in their totality, compel the conclusion that the Dutch banks' interest was, for tax purposes, not a bona fide equity participation." *Id.*

---

[6] In this case, the penalized taxpayer is a corporation, GECC. Consequently, the provisions of § 7491(c), shifting of the burden of production with respect to penalties to the United States when the taxpayer is an individual do not apply. *See generally, Pahl v. Commissioner*, 150 F.3d 1124, 1131 (9th Cir. 1998); *Long-Term Capital Holdings v. United States*, 330 F. Supp. 2d 122, 196-99. (D. Conn. 2004), *aff'd*, 150 Fed. Appx. 40, (2d Cir. 2005).

153.1

Moreover, at trial, the plaintiff failed to match its evidence to its arguments and failed to sustain its burden. For instance, the largely self-serving testimony of its three corporate-officer witnesses (O'Reilly, Lewis, and Nayden), while attempting to buttress the incorrect return position that the Dutch banks' contribution was equity, revealed that these corporate officers were not familiar with the transactional documents, essentially relying on other corporate employees for their understanding of the transaction. TR 111 (O"Reilly); TR 170-71 (Lewis); TR 454-55 (Nayden), App. B., Ex. 6. No evidence was offered to establish the exercise of ordinary and reasonable care in the preparation of the 1997 and 1998 tax returns. Indeed, the Chief Financial Officer for GECC, Parke, could not explain at trial the tax implications of the transaction. TR 396. The "deal team leader," Dull, acknowledged tax support from tax counsel, but did not attempt to explain what tax advice was received and whether all the relevant facts and law were considered in giving that advice. TR 424. *id.*

The plaintiff's witnesses did not claim tax expertise or responsibility for the preparation of the plaintiff's federal tax returns that allocated the income at issue to the Dutch banks. *id.* O'Reilly testified that he was not aware of Castle Harbour's income tax return preparation. TR 113-14. Lewis stated that he was not a "tax expert." TR 189. Dull, who also served as president of TIFD III-M, testified that he did not prepare or review tax returns. TR 407-08. Another witness for the plaintiff, Chris Tewell, the general manager of Castle Harbour from 1993 until August 1996, reviewed tax returns but was neither an accountant nor a "tax person." TR 660. Tewell only testified that unidentified "others" reviewed the tax returns. TR 660. He was not with Castle Harbour during the years at issue here and no other general managers testified. The resident manager in Bermuda during 1995 through 1997, Diarmuid Hyde, an Irish citizen, reviewed tax returns but testified that he was not an expert on United States taxation. TR 540-41.

-6-

Rather than introduce evidence to support the contentions in its trial brief, the plaintiff made a conscious decision to exclude from the trial record legal advice on the merits of the Castle Harbour transaction. For example, Joint Exhibit 16 is the "pitch" document that describes the transaction. App. B, Ex. 2. It is signed by corporate counsel, among other corporate officers. The plaintiff redacted the portion of the document that apparently contained legal advice, over the government's protests. TR at 107-111, App. B., Ex. 3; *See TIFD III-E, Inc. v. United States*, 223 F.R.D. 47 (D. Conn. 2004). The plaintiff cannot meets its burden to demonstrate that the penalties do not apply by relying on the redacted information, whatever it is.

The plaintiff also withheld from the government during discovery many documents on grounds of attorney client privilege. Among these were two letters from the law firm King & Spalding to GECC and TIFD III-E (the tax matters partner here), which (based on Plaintiff's description on its Privilege Log) "reflected the legal opinion of outside counsel concerning federal income tax." App. B, Ex. 4. The court declined to order the plaintiff to produce these documents, holding, *inter alia*, that the plaintiff "has not argued that it acted on the advice of counsel." 223 F.R.D. at 49. The plaintiff cannot now point to advice of counsel in general, or to the withheld materials, to meet its burden with regard to penalties.

D.    The Penalty for a Substantial Understatement of Income Tax

A 20% penalty is imposed on any underpayment of tax attributable to "any substantial understatement of income tax." § 6662(b)(2); Treas. Reg. § 1.6662-4; *Long Term Capital Holdings*, 330 F. Supp. 2d at 199. An "understatement" means the excess of the amount of tax required to be shown on the return over the amount actually shown on the return.

153.1

§ 6662(d)(2)(A); *Long Term Capital Holdings*, *id.*  For corporate taxpayers, the understatement is substantial if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return or $10,000. §6662(d)(1)(B).[7]

The regulations provide particular treatment for items relating to tax shelters, such as Castle Harbour. Treas. Reg. § 1.6662-4(g)(2) and (3). For the purposes of § 6662(d), a "tax shelter" includes a partnership that has as its principal purpose the avoidance or evasion of federal income taxes. Treas. Reg. § 1.6662-4(g)(i)(A). "Principal purpose" of an entity is "to avoid or evade Federal income tax if that purpose exceeds any other purpose." *id.*  The Second Circuit noted that this Court "essentially acknowledged that the creation of the partnership was largely tax-motivated." 459 F. 3d at 224. The regulation states further that the "existence of economic substance does not of itself establish that a transaction is not a tax shelter." *id.*  With respect to this Court's holding regarding economic substance, the Second Circuit noted that the "our disposition makes it unnecessary for us to reconsider whether the district court correctly determined that the characterization of the banks' interest as equity was not a sham." *Id.* at 231 n11. The definition of "tax shelter item" includes income, the item that the FPAAs determine was improperly allocated to the Dutch banks during the life of Castle Harbour. Treas. Reg. § 1.6662-4(g)(i)(3).

There are two tests that the plaintiff must satisfy to sustain its burden of proving that the accuracy-related penalty for substantial understatement of income tax does not apply to the tax

---

[7] For purposes of this action, the Court should assume the threshold amount is satisfied. GECC may challenge that determination in a separate partner-level refund suit. Treas. Reg. § 301.6221-1(d).

153.1

shelter item at issue, i.e. Castle Harbour's income for 1997 and 1998. Treas. Reg. §§ 1.6662-4(d),

1.6662-4(g)(1)(i) (A) and (B) and (ii). [8]  These are:

>  (A) There is substantial authority (as provided in
>  paragraph (d) of this section) for the tax treatment of
>  that item: **and**
>
>  (B) The taxpayer reasonably believed at the time the
>  return was filed that the tax treatment of that item
>  was more likely than not the proper treatment.

Treas. Reg. § 1.6662-4(g)(1)(i) (A) and (B) (emphasis added).

Thus the plaintiff must satisfy both these tests to avoid the substantial underpayment of

penalty. The plaintiff cannot satisfy either test.

(A)    Lack of Substantial Authority for Tax Treatment of Item

The determination of whether substantial authority exists is made as of the date the return

containing the item at issue is filed or the last day of the taxable year to which the return relates.

Treas. Reg. § 1.6662-4(d)(3)(iv)(C). The legal standard for determining whether substantial

authority exists is set forth in Treas. Reg. § 1.6662-4(d)[9]; *Long Term Capital, id.* at 201,

>  "The substantial authority standard is an objective standard
>  involving an analysis of the law and application of the law to

---

[8]  Section 6662(d)(2)(C)(ii) (Appendix A6-A7) provides generally that corporations engaged in tax shelter transactions cannot escape the substantial understatement penalty on the grounds of "substantial authority" and "reasonable belief." But the Treasury regulation provides a special transition rule for transactions that occurred before December 9, 1994. The transaction at issue here occurred in October 1993. In those limited circumstances such taxpayers may seek relief from the penalty upon a showing of both "substantial authority" and "reasonable belief." *See* Treas. Reg. § 1.6662-4(g)(1)(i); *See Long Term Capital*, 330 F. Supp. 2d at 201-05.

[9]  It is well-established that Treasury Regulations, authorized by § 7805(a), are entitled deference from the courts. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984); *Atlantic Mut. Ins. Co. v. Commissioner*, 523 U.S. 382, 390 (1998) (Commissioner's interpretation need not be the "best" interpretation, but merely a "reasonable one.")

153.1

relevant facts." Treas. Reg. § 1.6662-4(d)(2). It exists where "the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment." Treas. Reg. § 1.6662-4(d)(3)(i). Weight is determined in light of the particular facts and circumstances of the case at hand and the weight accorded any particular authority depends on its relevance and persuasiveness. *See* Treas. Reg. § 1.6662-4(d)(3)(i & ii). **The definition of what constitutes "authority" is explicitly limited to written determinations provided to the taxpayer and legal sources (including statutes, regulations, case law, legislative history, etc.).** *See* Treas. Reg. § 1.6662-4(d)(3)(iii & iv). (emphasis added).

The Second Circuit's reversal applied long-standing precedential case law which "compelled" sustaining the FPAA adjustments. Plaintiff can point to no contrary statutes, regulations, or rulings. A mere mechanical application of § 704, allowing certain allocations of income among partners, but ignoring controlling precedent such as *Culbertson,* is insufficient to carry plaintiff's burden, and the substantial understatement penalty is entirely appropriate. Treas. Reg. § 1.6662-4(d)(3).

We recognize that the courts disagree on the question whether evidence submitted at trial can constitute "substantial authority." *Compare, Long Term Capital,* 330 F. Supp. 2d at 201-204, *with Kluener v. Commissioner,* 154 F.3d 630, 637-41 (6th Cir.1998); *Streber v. Commissioner,* 138 F.3d 216, 222-23, 227-29 (5th Cir.1998); *Osteen v. Commissioner,* 62 F.3d 356, 358-60 (11th Cir.1995). For example, the district court in *Long Term Capital* held that only legal authorities, not trial evidence, can constitute "substantial authority" under the applicable regulations. Consideration of evidence such as a taxpayer's subjective belief that substantial authority existed for the tax treatment of a return item is specifically deemed not relevant by the regulation. Treas. Reg. § 1.6662-4(d)(3)(i). As the *Long Term Capital* court explained (*id.* at 203):

-10-

153.1

> In sum, the regulation permits a taxpayer to escape penalties where the taxpayer can cite legal sources that would hold for the taxpayer on the merits of identical or closely analogous facts if the same were found by the court, even if such legal authority was rejected during determination of the taxpayer's liability. It does not permit consideration as authority rejected evidence offered by the taxpayer, even in cases in which the merits of the taxpayer's tax liability and the threshold application of a substantial understatement penalty are decided jointly merely by making fact findings.

This Court need not resolve the question whether trial evidence can be used to defeat the substantial understatement penalty.[10] Even the courts that permit the examination of trial evidence do so when the court of appeals was called on to resolve a dispute with respect to contested facts. *See Osteen*, 62 F.3d at 359; *Streber*, 138 F.3d at 223; and *Kleuner*, 154 F.3d at 638. Here, the court of appeals relied on uncontested facts. Moreover, as we have described, the record contains no evidence regarding the nature or quality of legal authority relied on by the plaintiff.

(B)    Reasonable Belief That Tax Treatment More Likely Than Not Proper

In addition to demonstrating substantial authority for the tax treatment at issue to avoid the 20% substantial understatement penalty, the plaintiff must demonstrate, with respect to the tax shelter items at issue, that

> (B) The taxpayer reasonably believed at the time the return was filed that the tax treatment of that item was more likely than not the proper treatment.

---

[10] A bankruptcy court in Florida recently noted that, despite the differing approaches of the courts, "there is a general agreement that the courts will consider only legal authorities with similar fact patterns and accept as a defense that the taxpayer had substantial authority for the claim asserted." *Hillsborough Holdings Corp. v. United States*, 346 B.R. 877, 880 (Bankr. M.D. Fla. 2006). As was the case in *Hillsborough Holdings*, plaintiff in this case has not pointed to authorities with similar fact patterns.

-11-

Treas. Reg. § 1.6662-4(g)(1)(ii)(B). The regulations set forth the tests for evaluating whether or not a taxpayer has met the "reasonable belief" standard. Treas. Reg.§ 1.6662-4(g)(4). There are two tests, one that is met by the taxpayer analyzing the pertinent facts and legal authorities in the manner described in Treas. Reg. § 1.6662-4(d)(3)(ii) (substantial authority) and concluding in good faith that at the time the return was filed that there is a greater than 50% likelihood that the tax treatment of the item at issue will be upheld if challenged by the Internal Revenue Service. Treas. Reg. § 1.6662-4(g)(i)(A). There is no evidence in the trial record that the plaintiff conducted such an analysis, or if one was conducted, the results of such analysis. As noted above, the plaintiff invoked privileges to exclude evidence that might have revealed any such analysis and its results. Its trial witnesses, *i.e.* O'Reilly, Lewis, Nayden, Dull, Tewell, and Hyde, lacked familiarity with many of the details of the transaction and professed no specific knowledge of or expertise with respect to the tax treatment for the income at issue. *Supra*, p. 6.

The second test is whether the taxpayer relied in good faith on the opinion of a professional tax advisor, based on the analysis of pertinent facts and authorities and the tax advisor unambiguously concludes that at the time the return was filed there is a greater than 50% likelihood that the tax treatment will be upheld if challenged by the Internal Revenue Service. Treas. Reg. § 1.6662-4(g)(i)(B) and (ii). Again, the plaintiff cannot satisfy this requirement since no evidence with respect to reliance on a professional tax advisor was introduced at trial. To the contrary, the government sought such evidence in discovery, the plaintiff asserted privileges to withhold such evidence, and the court sustained plaintiff's claims of privilege. 223 F.R.D. 47 Moreover, Treas. Reg. § 1.6662-4(g)(ii) provides that a taxpayer cannot satisfy the good faith aspect of the reasonable belief requirement set forth in Treas. Reg. § 1.6662-4(g)(i) unless the requirements of Treas Reg. § 1. 6664-4(c)(1) are met. These requirements include that all facts

-12-

and circumstances must be taken into account in determining whether the taxpayer reasonably relied on the opinion of a professional tax advisor. Absent evidence of all the facts and circumstances, including admitted evidence regarding the opinion of a professional tax advisor, plaintiff cannot satisfy the requirements of Treas. Reg. § 1. 6664-4(c)(1) and cannot establish, as a matter of law, a reasonable belief that the tax treatment chosen was proper.

The regulations are clear that the plaintiff must establish both substantial authority for its treatment of the tax shelter items at issue <u>and</u> reasonable belief at the time the return was filed that the treatment was proper. Absent any attempt at trial to admit evidence regarding either its own analysis or an unambiguous opinion of a tax professional, the plaintiff cannot satisfy the reasonable belief requirement. The plaintiff therefore cannot sustain its burden of proof and the Internal Revenue Service's determination that a 20% accuracy-related penalty for substantial understatement of tax must be upheld.

E.    The Negligence Penalty Is Also Applicable

Section 6662 imposes a penalty of 20 percent on underpayments of tax attributable to "negligence or disregard of rules or regulations." § 6662(a), (b)(1); Treas. Reg. § 1.6662-3. For the purposes of this statute,

> 'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard.

§ 6662(c); *Nicole Rose Corp. v. Commissioner*, 117 T.C. 328, 341 (2001), *aff'd*, 320 F.3d 282, 284-85 (2d Cir., 2003). The Tax Court in *Nicole Rose* sustained the IRS's decision to apply the 20% negligence penalty on the grounds that "the facts and circumstances of this case reflect no reasonable cause and no good faith for petitioner's participation in the transaction before us." 117 T.C. at 341. If further held that "the participation of highly paid professionals provides petitioner

-13-                                                          153.1

no protection, excuse, justification, or immunity from the penalties in issue." *Id.* The Second Circuit affirmed and agreed with the Tax Court that "Rose's scheme was sufficiently blatant that the participation of experts cannot convert its actions into a 'reasonable attempt to comply with the provisions' of the tax code." 320 F.3d at 285 (citing § 6662(c)).

Here, there is no evidence of any reasonable attempt to comply with the tax laws. There is nothing in the record to establish that independent professional tax advisors provided any guidance to the formation or execution of the Castle Harbour transaction. Plaintiff's trial witnesses, *i.e.* O'Reilly, Lewis, Nayden, Parke, Dull, Tewell, and Hyde, lacked familiarity with many of the details of the transaction and professed no specific knowledge or tax expertise with respect to the tax treatment for the income at issue. *Supra*, p. 6. Plaintiff chose to exclude any such guidance from the trial record by asserting claims of privilege in response to the government's discovery claims. App. B, Ex. 4; 223 F.R.D. 47. Furthermore, any internal legal or otherwise expert advise regarding tax treatment of the transaction was excluded from the trial record by redacting an internal document to exclude any legal or other advice regarding tax treatment of the transaction. App. B, Ex. 3. The government vigorously opposed these actions during discovery and at trial but to no avail. App. B, Ex. 3; 223 F.R.D. 47 . The plaintiff also cannot establish the reasonableness of its behavior by relying on the advice of its investment banker, Babcock and Brown, to whom it paid $9 million in the hopes of obtaining a tax benefit of $62 million. *See* 459 F.3d at 225; *Goldman v. Commissioner*, 39 F.3d 402, 408 (2d Cir. 1994) ("taxpayer cannot reasonably rely for professional advice on someone they know to be burdened with an inherent conflict of interest").

The regulations provide that negligence is "strongly indicated where . . . a deduction, credit or exclusion on a return which would seem to a reasonable and prudent person to be 'to

-14-                                                                                   153.1

good to be true' under the circumstances." Treas. Reg. § 1.6662-3(b)(1), (b)(1)(ii). The absence

of a record–by choice of the plaintiff here–of reliance on an expert opinion of outside counsel or

qualified corporate employees precludes the plaintiff from establishing that a "reasonable or

prudent person" would not have found this transaction–and its sought after tax benefits–"too good

to be true." *Chimblo v. Commissioner*, 177 F.3d 119, 126 (2d. Cir. 1999) ("too-good-to-be true"

offering was clear indication that partnership was created only to generate tax deductions");

*Goldman,* 39 F.3d at 408, citing *Pasternak v. Commissioner*, 990 F.2d 893, 903 (6th Cir. 1993)

(reasonably prudent persons should investigate claims when they are likely "too good to be true").

    Here, the "too good to be true" nature of Castle Harbour is clearly evident once the "maze

of partnership provisions" is pierced. 459 F.3d at 226. The proposal presented to GECC by

Babcock & Brown required the solicitation of only tax indifferent foreign banks to lend over $117

million to GECC under an agreement that essentially guaranteed a return of 9.03578% to the

Dutch banks. *Id.* The agreement allocated the Dutch banks 98% of the entity's income even

though its alleged "equity" stake was only 18%. However, the "income" purportedly allocated to

the Dutch banks was greatly reduced to magically deliver a return of the 9.03578% by taking

depreciation deductions, for the second time, with respect to the aircraft contributed by GECC.

*Id.* Thus, GECC sought to shelter $310 million of income by depreciating the same aircraft twice.

A reasonably prudent person would have considered this proposed outcome "too good to be

true." Not having so acted, the plaintiff here violated Treas. Reg. § 1.6662-3(b)(1), (b)(1)(ii) and

the 20% negligence penalty is applicable to Castle Harbour.

    The regulations also define "negligence" to include "any failure to make a reasonable

attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and

reasonable care in the preparation of a tax return." Treas. Reg. § 1.6662-3(b)(1). There can be no

153.1

doubt that the focus of the inquiry for purposes of the negligence penalty is objective: "Generally

speaking, the negligence standard as in the tort context is objective, requiring a finding of a lack

of due care or a failure to do what a reasonable and prudent person would do under analogous

circumstances." *Neonatology Assoc. v. Commissioner*, 299 F.3d 221, 233 (3d Cir. 2002) (*citing*

*Schrum v. Commissioner*, 33 F.3d 426, 437 (4th Cir.1994); *Allen v. Commissioner*, 925 F.2d

348, 353 (9th Cir. 1991) Thus, negligence turns on objective evaluation of the activities of the

taxpayer.

Treas. Reg. § 1.6662-3(b)(3) provides that a return position that has a "reasonable basis" is

not attributable to negligence. The regulation defines "reasonable basis" in part as follows—

> Reasonable basis is a relatively high standard of tax reporting, that is, significantly
> higher than not frivolous or not patently improper. The reasonable basis standard is
> not satisfied by a return position that is merely arguable or that is merely a
> colorable claim. If a return position is reasonably based on one or more of the
> authorities set forth in § 1.6662-4(d)(3)(iii) (taking into account the relevance and
> persuasiveness of the authorities, and subsequent developments), the return
> position will generally satisfy the reasonable basis standard even though it may not
> satisfy the substantial authority standard as defined in § 1.6662-4(d)(2).

As this provision makes clear, the definition of "reasonable basis" is, like the definition of

negligence, objective. The entire definition is by reference to a legal evaluation of a position, to

determine whether it is better-founded legally than a position which is merely "not frivolous or

not patently improper," nor even "arguable" or "colorable," though it need not be as well-

supported as a position for which there is a "substantial authority." In other words, "reasonable

basis" is on a spectrum of support for a return position, significantly higher than some while

lower than others. Crucially, each of the positions on the spectrum involve an objective review by

the Court of the return position in light of the controlling law.

-16-

153.1

Here, the plaintiff's return position must be evaluated in the light of the Second Circuit's opinion. 459 F.3d 220. That decision decisively rejected plaintiff's contention that the Dutch banks' interest in Castle Harbour was not equity and that a partnership existed for tax purposes. Indeed, the facts in this case, when viewed in their totality, "compelled" the Second Circuit to conclude that the Dutch banks did not have a bona fide equity interest. 459 F.3d at 241. The return position of the plaintiff was objectively unreasonable in light of well-established legal authorities, among them the Supreme Court's decision in *Culbertson*, decided in 1949, and *Gilbert*, decided in 1957. As such, the 20% negligence is applicable to Castle Harbour.

F.   The Reasonable Cause Exception of § 6664(c) Does Not Apply

1. Plaintiff Cannot Demonstrate a § 6664(c) Reasonable Cause Defense

The plaintiff cannot establish "reasonable cause" or establish that it acted in "good faith" in reporting the allocation of approximately $100 million of income to the Dutch banks during 1997 and 1998. § 6664(c)(1); Treas. Reg. § 1.6664-4. The record contains no evidence to establish reasonable cause and good faith on the part of the taxpayer in the creation or execution of the Castle Harbour tax shelter.

The plaintiff cannot demonstrate reasonable cause and good faith due to reliance on advice. Treas. Reg. § 1.6664-4(c). Plaintiff did not introduce any evidence at trial concerning advice relied upon. Plaintiff successfully excluded such evidence from the record. App. B., Exs. 3 and 4. Witnesses and documents referenced "advice," but none of such alleged advice is present in the record. This Court concluded that plaintiff affirmatively disclaimed any reliance on the advice of counsel. 223 F.R.D. at 49. Plaintiff cannot satisfy the requirements of Treas. Reg. § 6664-4(c).

-17-

153.1

2. <u>Plaintiff cannot satisfy the reasonable cause and good faith standard for tax shelters</u>

The regulations provide special rules for establishing reasonable cause and good faith when the substantial underpayment penalty applies to tax shelters. Treas. Reg. §§ 1.6662-4(g)(1)(iv) and 1.6664-4(e). The plaintiff cannot satisfy the "reasonable cause based on legal justification" minimal requirements of Treas. Reg. § 1.6664-4(e)(2) since there is no substantial authority for the tax treatment of the Castle Harbour income allocated to the Dutch banks and there is nothing in the record that can establish that the plaintiff concluded in good faith that there was a greater than 50% likelihood that the tax treatment would be upheld if challenged by the IRS. Treas. Reg. § 1.6664-4(e)(2)(i). There is no opinion of a professional tax advisor in the record that could satisfy the requirement of Treas. Reg. § 1.6664-4(e)(2)(i)(B)(2); App. b. Exs. 2, 3, 4.

II.    <u>Form of Judgment</u>

The form of judgment is usually not a significant issue in tax litigation. In a TEFRA partnership proceeding such as this one, it is important that some detail is provided in the form of judgment entered in order that the Internal Revenue Service and the taxpayers concerned understand the precise nature of outcome of the partnership proceeding. The statutes provide that the scope of judicial review is "to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates." § 6226(f).

Here, the partnership item at issue was the allocation of the partnership's income. The Second Circuit upheld the Internal Revenue Service's determination that Castle Harbour was not a valid partnership for tax purposes and the income allocated to the Dutch banks should be reallocated to the GECC partners, TIFD III-E and TIFD III-M. App. B., Ex. 1 (FPAA for 1997

-18-

and 1998). The FPAA determination sustained by the Second Circuit was that no partnership existed for tax purposes pursuant to *Culbertson* as the nature of the Dutch banks' interest was akin to debt and not an equity interest. The final judgment should reflect that the partnership item adjustments made in the Final Notice of Partnership Adjustments dated June 29, 2001, with respect to the partnership taxable years 1993-1996 and 1997-1998 are sustained.

The final judgment should also reflect that, with respect to the Final Notice of Partnership Adjustments dated June 29, 2001, regarding the partnership taxable years 1997-1998, the accuracy-related penalty pursuant to §§6662(a), (b)(1) and (b)(2) applies.[11]

---

[11] The Internal Revenue Service will undertake the necessary administrative actions to apprise the partners of their increased liabilities for tax and penalties pursuant to the judgment.

A proposed judgment in these consolidated actions is set forth as Exhibit 5 to App. B.

KEVIN J. O'CONNOR
United States Attorney
JOHN B. HUGHES
Chief, Civil Division


 s/Robert J. Higgins
ROBERT J. HIGGINS (ct23378)
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C. 20044
Telephone:  (202) 307-6580
Facsimile:  (202) 514-5440

January 31, 2007

153.1