paragraph (d)(2)(iv) of § 1.6661-2), disclosure is adequate with respect to the item only if it is made on the return for the taxable year in which the item arises or in a statement attached thereto. In such a case, disclosure, with respect to the item is not required on the return for the taxable year in which the carryover or carryback attributable to the item is taken into account.

**(e) Pass-through entities.** In the case of items attributable to a pass-through entity ("pass-through items"), disclosure regarding the tax treatment of such items should be made on the return of the entity or on an attachment thereto. For this purpose, a pass-through entity is a partnership, an S corporation (as defined in section 1361(a)(1)), an estate, a trust, a regulated investment company (as defined in section 851(a)), or a real estate investment trust (as defined in section 856(a)). A taxpayer (partner, shareholder, or beneficiary) also may make adequate disclosure with respect to a pass-through item, however, if the taxpayer files a separate statement in duplicate, one copy attached to and filed with the taxpayer's return and the other copy filed with the Internal Revenue Service Center with which the return of the entity is required to be filed. Each statement filed shall relate to the pass-through items of only one entity and shall include the following:

**(1)** An identification of the taxpayer and the entity by name, address, and taxpayer identification number.

**(2)** The taxable year of the entity to which the disclosure relates.

**(3)** An identification of the items with respect to which the taxpayer has made disclosure under this paragraph.

**(4)** Such additional information as would be required for adequate disclosure with respect to the items under paragraphs (a), (b), and (d) of this section.

**(5)** A notation to the effect that the statement is to be associated with the return of the entity.


**§ 1.6661-5** Items relating to tax shelters.

**(a) In general. (1)** Tax shelter items (as defined in paragraph (c) of this section) are treated as if such items were shown properly on the return for the taxable year in computing the amount of tax shown on the return if--

**(i)** There is or was substantial authority for the tax treatment of the items  (as provided in § **1.6661**-3); and

**(ii)** The taxpayer reasonably believes at the time the return is filed that the tax treatment claimed is more likely than not the proper tax treatment of the items (see paragraph (d) of this section).

Thus, for purposes of section 6661, the tax attributable to such items is not included in the

understatement for the year. (See paragraph (d)(2) of § 1.6661-2.)

**(2)** Disclosure (whether or not adequate under § 1.6661-4) with respect to tax shelter items (as defined in paragraph (c) of this section) does not affect the amount of the understatement.

**(b) Tax shelter--(1) In general.** For purposes of section 6661, the term "tax shelter" means--

**(i)** A partnership or other entity (such as a corporation or trust),

**(ii)** An investment plan or arrangement, or

**(iii)** Any other plan or arrangement, if the principal purpose of the entity, plan, or arrangement, based on objective evidence, is the avoidance or evasion of Federal income tax. The principal purpose of an entity, plan or arrangement is the avoidance or evasion of Federal income tax if that purpose exceeds any other purpose. See § 1.269-3(a). Typical of tax shelters are transactions structured with little or no motive for the realization of economic gain, and transactions that utilize the mismatching of income and deductions, overvalued assets or assets with values subject to substantial uncertainty, nonrecourse financing, financing techniques which do not conform to standard commercial business practices, or the mischaracterization of the substance of the transaction. The existence of economic substance does not of itself establish that a transaction is not a tax shelter if the transaction includes other characteristics that indicate it is a tax shelter.

**(2) Principal purpose.** The principal purpose of an entity, plan or arrangement is not the avoidance or evasion of Federal income tax if the entity, plan or arrangement has as its purpose the claiming of exclusions from income, accelerated deductions or other tax benefits in a manner consistent with the statute and Congressional purpose. For example, an entity, plan or arrangement will not be considered to have as its principal purpose the avoidance or evasion of Federal income tax merely as a result of the following uses of tax benefits provided by the Internal Revenue Code: The claiming of the investment credit under section 38; the purchase or holding of an obligation bearing interest which is excluded from gross income under section 103; entering into a safe-harbor lease transaction under section 168(f)(8); taking an accelerated cost recovery system (ACRS) allowance under section 168; taking the percentage depletion allowance under section 613 or section 613A; deducting intangible drilling and development costs as expenses under section 263(c); establishing a qualified retirement plan under the provisions of sections 401-409A, claiming the possession tax credit under section 936; or claiming tax benefits available by reason of an election under section 992 to be taxed as a domestic international sales corporation (DISC), under section 927(f)(1) to be taxed as a foreign sales corporation (FSC), or under section 1362 to be taxed as an S corporation.

**(c) Tax shelter item.** An item of income, gain, loss, deduction or credit will be considered a "tax shelter item" if the item is directly or indirectly attributable to the principal purpose of a tax shelter to avoid or evade Federal income tax. Thus, if a partnership is established for the principal purposes of the avoidance or evasion of Federal income tax by acquiring and overvaluing property for the purpose of claiming the investment credit under section 38, the investment credit with respect to the

property would be a tax shelter item. However, a deduction claimed in connection with a separate transaction carried on by the same partnership is not a tax shelter item if the transaction does not constitute a plan or arrangement the principal purpose of which is the avoidance or evasion of tax.

**(d) Reasonable belief.** For purposes of section 6661, a taxpayer will be considered reasonably to believe that the tax treatment of an item is more likely than not the proper tax treatment if--

**(1)** The taxpayer analyzes the pertinent facts and authorities in the manner described in § **1.6661**-3(b)(3) and, in reliance upon that analysis, reasonably concludes that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld in litigation if the claimed treatment is challenged by the Internal Revenue Service; or

**(2)** The taxpayer in good faith relies on the opinion of a professional tax advisor, if the opinion is based on the tax advisor's analysis of the pertinent facts and authorities in the manner described in § **1.6661**-3(b)(3) and unambiguously states that the tax advisor concludes that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld in litigation if the claimed tax treatment is challenged by the Internal Revenue Service.

**(e) Pass-through entities.** In the case of tax shelter items (as defined in paragraph (e) of this section) attributable to a pass-through entity (as defined in § 1.6661-4(e)), the actions described in paragraphs (d)(1) and (2) of this section, if taken by the entity, will be deemed to have been taken by the taxpayer and will be considered in determining whether the taxpayer reasonably believes that the tax treatment of an item is more likely than not the proper tax treatment.

§ **1.6661-6** Waiver of penalty.

**(a) In general.** The Commissioner may waive all or part of the penalty imposed by section 6661 on a showing by the taxpayer that there was reasonable cause for the understatement (or part thereof) and that the taxpayer acted in good faith. The circumstances taken into account in determining whether to waive the penalty are described in paragraph (b) of this section. In addition, paragraph (c) of this section describes circumstances in which the penalty will always be waived.

**(b) Reasonable cause and good faith.** In making a determination regarding waiver of the penalty under section 6661, the most important factor in all cases not described in paragraph (c) of this section will be the extent of the taxpayer's effort to assess the taxpayer's proper tax liability under the law. For example, reliance on a position contained in a proposed regulation would ordinarily constitute reasonable cause and good faith. In addition, circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer. Moreover, a computational or transcriptional error would, in general, indicate reasonable cause and good faith. Reliance on an information return or on the advice of a professional (such as an appraiser, an attorney, or an accountant) would not necessarily constitute a showing of reasonable cause and good faith. Similarly, reliance on facts that, unknown to the taxpayer, are incorrect would not necessarily

A19

constitute a showing of reasonable cause and good faith. Reliance on an information return, professional advice, or other facts, however, would constitute a showing of reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. For example, reliance on erroneous information (such as an error relating to the cost of property, the date property was placed in service, or the amount of opening or closing inventory) inadvertently included in data compiled by the various divisions of a multidivisional corporation or in financial books and records prepared by those divisions would, in general, indicate reasonable cause and good faith, provided the corporation had internal controls and procedures, reasonable under the circumstances, that were designed to identify factual errors. Accordingly, waiver of the section 6661 penalty attributable to an understatement caused by such an error would be appropriate. Similarly, a taxpayer's reliance on erroneous information reported on a Form 1099 would indicate reasonable cause and good faith, and waiver would be appropriate, if the taxpayer did not know or have reason to know that the information was incorrect. Generally, a taxpayer would know or have reason to know that the information on a Form 1099 is incorrect only if such information is inconsistent with other information reported to the taxpayer or is inconsistent with the taxpayer's knowledge concerning the amount and rate of return of the payor's obligation. In the case of an understatement that is related to an item on the return of a pass-through entity (as defined in § 1.6661-4(e)), the good faith or lack of good faith of the entity generally will be imputed to the taxpayer that has the understatement. Any good faith imputed to the taxpayer under the preceding sentence, however, may be refuted by other factors indicating lack of good faith on the part of the taxpayer.

(c) **Automatic waiver; qualified amended returns--(1) In general.** If the taxpayer shows an additional amount of tax or makes adequate disclosure with respect to an item in the manner prescribed in § 1.6661-4 on a qualified amended return, the Commissioner will waive any penalty that would not have been imposed if the additional amount of tax had been shown or the adequate disclosure had been made on the return of the taxpayer. Thus, the entire penalty will be waived if there would not have been a substantial understatement (as defined in paragraph (b) of § 1.6661-2) had the taxpayer shown the additional amount of tax or made the adequate disclosure on the taxpayer's original return.

(2) **Qualified amended return.** For purposes of this paragraph, a "qualified amended return" is an amended return, so-called, or a timely request for an administrative adjustment under section 6227, filed after the due date of the return and before the earlier of--

(i) The time the taxpayer is first contacted by the Internal Revenue Service concerning an examination of the return; or

(ii) The time any person described in section 6700(a) (relating to the penalty for promoting abusive tax shelters) is first contacted by the Internal Revenue Service concerning an examination of an activity described in section 6700(a) with respect to which the taxpayer claimed any tax benefit on the return directly or indirectly through the entity, plan, or arrangement described in section 6700(a)(1)(A).

**(3) Pass-through entities.** For purposes of paragraph (c)(1) of this section, no account is taken of an additional amount of tax shown or disclosure made with respect to an item attributable to a pass-through entity (as defined in § 1.6661-4(e)), unless the qualified amended return is filed by the taxpayer before the date such pass-through entity is first contacted by the Internal Revenue Service concerning an examination of the return of which the item is attributable.

**(4) Special rule.** The Commissioner may by revenue procedure prescribe the manner in which this section may apply to particular classes of taxpayers.

\*\*\*\*\*

**Internal Revenue Service, Treasury**                    **§ 1.6662–2**

(2) Relationship to other standards.

[T.D. 8381, 56 FR 67497, Dec. 31, 1991; T.D. 8381, 57 FR 6165, Feb. 20, 1992, as amended by T.D. 8519, 59 FR 4794, Feb. 2, 1994; T.D. 8533, 59 FR 12548, Mar. 17, 1994; T.D. 8551, 59 FR 35031, July 8, 1994; T.D. 8617, 60 FR 45663, Sept. 1, 1995; T.D. 8656, 61 FR 4879, Feb. 9, 1996; T.D. 8656, 61 FR 14248, Apr. 1, 1996]

### § 1.6662–1  Overview of the accuracy-related penalty.

Section 6662 imposes an accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return that is attributable to one or more of the following:

(a) Negligence or disregard of rules or regulations;

(b) Any substantial understatement of income tax;

(c) Any substantial valuation misstatement under chapter 1;

(d) Any substantial overstatement of pension liabilities; or

(e) Any substantial estate or gift tax valuation understatement.

Sections 1.6662–1 through 1.6662–5 address only the first three components of the accuracy-related penalty, i.e., the penalties for negligence or disregard of rules or regulations, substantial understatements of income tax, and substantial (or gross) valuation misstatements under chapter 1. The penalties for disregard of rules or regulations and for a substantial understatement of income tax may be avoided by adequately disclosing certain information as provided in § 1.6662–3(c) and §§ 1.6662–4(e) and (f), respectively. The penalties for negligence and for a substantial (or gross) valuation misstatement under chapter 1 may not be avoided by disclosure. No accuracy-related penalty may be imposed on any portion of an underpayment if there was reasonable cause for, and the taxpayer acted in good faith with respect to, such portion. The reasonable cause and good faith exception to the accuracy-related penalty is set forth in § 1.6664–4.

[T.D. 8381, 56 FR 67498, Dec. 31, 1991, as amended by T.D. 8617, 60 FR 45664, Sept. 1, 1995]

### § 1.6662–2  Accuracy-related penalty.

(a) *In general.* Section 6662(a) imposes an accuracy-related penalty on any portion of an underpayment of tax (as defined in section 6664(a) and § 1.6664–2) required to be shown on a return if such portion is attributable to one or more of the following types of misconduct:

(1) Negligence or disregard of rules or regulations (see § 1.6662–3);

(2) Any substantial understatement of income tax (see § 1.6662–4); or

(3) Any substantial (or gross) valuation misstatement under chapter 1 ("substantial valuation misstatement" or "gross valuation misstatement"), provided the applicable dollar limitation set forth in section 6662(e)(2) is satisfied (see § 1.6662–5).

The accuracy-related penalty applies only in cases in which a return that is filed, except that the penalty does not apply in the case of a return prepared by the Secretary under the authority of section 6020(b). The accuracy-related penalty under section 6662 and the penalty under section 6651 for failure to timely file a return of tax may both be imposed on the same portion of an underpayment if a return is filed, but is filed late. The fact that a return is filed late, however, is not taken into account in determining whether an accuracy-related penalty should be imposed. No accuracy-related penalty may be imposed on any portion of an underpayment of tax on which the fraud penalty set forth in section 6663 is imposed.

(b) *Amount of penalty*—(1) *In general.* The amount of the accuracy-related penalty is 20 percent of the portion of an underpayment of tax required to be shown on a return that is attributable to any of the types of misconduct listed in paragraphs (a)(1) through (a)(3) of this section, except as provided in paragraph (b)(2) of this section.

(2) *Increase in penalty for gross valuation misstatement.* In the case of a gross valuation misstatement, as defined in section 6662(h)(2) and § 1.6662–5(e)(2), the amount of the accuracy-related penalty is 40 percent of the portion of an underpayment of tax required to be shown on a return that is attributable to the gross valuation misstatement, provided the applicable dollar limitation set forth in section 6662(e)(2) is satisfied.

[935]

A22

(c) *No stacking of accuracy-related penalty components.* The maximum accuracy-related penalty imposed on a portion of an underpayment may not exceed 20 percent of such portion (40 percent of the portion attributable to a gross valuation misstatement), notwithstanding that such portion is attributable to more than one of the types of misconduct described in paragraph (a) of this section. For example, if a portion of an underpayment of tax required to be shown on a return is attributable both to negligence and a substantial understatement of income tax, the maximum accuracy-related penalty is 20 percent of such portion. Similarly, the maximum accuracy-related penalty imposed on any portion of an underpayment that is attributable both to negligence and a gross valuation misstatement is 40 percent of such portion.

(d) *Effective dates*—(1) *Returns before January 1, 1994.* Section 1.6662–3(c) and §§ 1.6662–4 (e) and (f) (relating to methods of making adequate disclosure) (as contained in 26 CFR part 1 revised April 1, 1995) apply to returns the due date of which (determined without regard to extensions of time for filing) is after December 31, 1991, but before January 1, 1994. Except as provided in the preceding sentence and in paragraphs (d)(2) and (3) of this section, §§ 1.6662–1 through 1.6662–5 apply to returns the due date of which (determined without regard to extensions of time for filing) is after December 31, 1989, but before January 1, 1994. To the extent the provisions of these regulations were not reflected in the statute as amended by the Omnibus Budget Reconciliation Act of 1989 (OBRA 1989), in Notice 90–20, 1990–1 C.B. 328, or in rules and regulations in effect prior to March 4, 1991 (to the extent not inconsistent with the statute as amended by OBRA 1989), these regulations will not be adversely applied to a taxpayer who took a position based upon such prior rules on a return filed before January 1, 1992.

(2) *Returns due after December 31, 1993.* Except as provided in paragraph (d)(3) and the last sentence of this paragraph (d)(2), the provisions of §§ 1.6662–1 through 1.6662–4 and § 1.6662–7 (as revised to reflect the changes made to

the accuracy-related penalty by the Omnibus Budget Reconciliation Act of 1993) and of § 1.6662–5 apply to returns the due date of which (determined without regard to extensions of time for filing) is after December 31, 1993. These changes include raising the disclosure standard for the penalties for disregarding rules or regulations and for a substantial understatement of income tax from not frivolous to reasonable basis, eliminating the disclosure exception for the negligence penalty, and providing guidance on the meaning of reasonable basis. The Omnibus Budget Reconciliation Act of 1993 changes relating to the penalties for negligence or disregard of rules or regulations will not apply to returns (including qualified amended returns) that are filed on or before March 14, 1994, but the provisions of §§ 1.6662–1 through 1.6662–3 (as contained in 26 CFR part 1 revised April 1, 1995) relating to those penalties will apply to such returns.

(3) *Special rules for tax shelter items.* Sections 1.6662–4(g)(1) and 1.6662–4(g)(4) apply to returns the due date of which (determined without regard to extensions of time for filing) is after September 1, 1995. Except as provided in the last sentence of this paragraph (d)(3), §§ 1.6662–4(g)(1) and 1.6662–4(g)(4) (as contained in 26 CFR part 1 revised April 1, 1995) apply to returns the due date of which (determined without regard to extensions of time for filing) is on or before September 1, 1995 and after December 31, 1989. For transactions occurring after December 8, 1994, §§ 1.6662–4(g)(1) and 1.6662–4(g)(2) (as contained in 26 CFR part 1 revised April 1, 1995) are applied taking into account the changes made to section 6662(d)(2)(C) (relating to the substantial understatement penalty for tax shelter items of corporations) by section 744 of Title VII of the Uruguay Round Agreements Act, Pub. L. 103–465 (108 Stat. 4809).

[T.D. 8381, 56 FR 67498, Dec. 31, 1991, as amended by T.D. 8617, 60 FR 45664, Sept. 1, 1995]

§ **1.6662–3  Negligence or disregard of rules or regulations.**

(a) *In general.* If any portion of an underpayment, as defined in section 6664(a) and § 1.6664–2, of any income tax imposed under subtitle A of the Code

**Internal Revenue Service, Treasury**                              **§ 1.6662–3**

that is required to be shown on a return is attributable to negligence or disregard of rules or regulations, there is added to the tax an amount equal to 20 percent of such portion. The penalty for disregarding rules or regulations does not apply, however, if the requirements of § 1.6662–3(c)(1) are satisfied and the position in question is adequately disclosed as provided in § 1.6662–3(c)(2), or to the extent that the reasonable cause and good faith exception to this penalty set forth in § 1.6664–4 applies. In addition, if a position with respect to an item is contrary to a revenue ruling or notice (other than a notice of proposed rulemaking) issued by the Internal Revenue Service and published in the Internal Revenue Bulletin, this penalty does not apply if the position has a realistic possibility of being sustained on its merits. See § 1.6694–2(b) of the preparer penalty regulations for a description of the realistic possibility standard.

(b) *Definitions and rules*—(1) *Negligence.* The term *negligence* includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. "Negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. A position with respect to an item is attributable to negligence if it lacks a reasonable basis. Negligence is strongly indicated where—

(i) A taxpayer fails to include on an income tax return an amount of income shown on an information return, as defined in section 6724(d)(1);

(ii) A taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return which would seem to a reasonable and prudent person to be "too good to be true" under the circumstances;

(iii) A partner fails to comply with the requirements of section 6222, which requires that a partner treat partnership items on its return in a manner that is consistent with the treatment of such items on the partnership return (or notify the Secretary of the inconsistency); or

(iv) A shareholder fails to comply with the requirements of section 6242, which requires that an S corporation shareholder treat subchapter S items on its return in a manner that is consistent with the treatment of such items on the corporation's return (or notify the Secretary of the inconsistency).

(2) *Disregard of rules or regulations.* The term *disregard* includes any careless, reckless or intentional disregard of rules or regulations. The term "rules or regulations" includes the provisions of the Internal Revenue Code, temporary or final Treasury regulations issued under the Code, and revenue rulings or notices (other than notices of proposed rulemaking) issued by the Internal Revenue Service and published in the Internal Revenue Bulletin. A disregard of rules or regulations is "careless" if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. A disregard is "reckless" if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe. A disregard is "intentional" if the taxpayer knows of the rule or regulation that is disregarded. Nevertheless, a taxpayer who takes a position contrary to a revenue ruling or a notice has not disregarded the ruling or notice if the contrary position has a realistic possibility of being sustained on its merits.

(3) *Reasonable basis*—(i) *In general.* [Reserved]

(ii) *Relationship to other standards.* The reasonable basis standard is significantly higher than the not frivolous standard applicable to preparers under section 6694 and defined in § 1.6694–2(c)(2).

(c) *Exception for adequate disclosure*—(1) *In general.* No penalty under section 6662(b)(1) may be imposed on any portion of an underpayment that is attributable to a position contrary to a rule or regulation if the position is disclosed in accordance with the rules of paragraph (c)(2) of this section and, in case of a position contrary to a regulation, the position represents a good

937

A24

faith challenge to the validity of the regulation. This disclosure exception does not apply, however, in the case of a position that does not have a reasonable basis or where the taxpayer fails to keep adequate books and records or to substantiate items properly.

(2) *Method of disclosure.* Disclosure is adequate for purposes of the penalty for disregarding rules or regulations if made in accordance with the provisions of §§ 1.6662–4(f)(1), (3), (4), and (5), which permit disclosure on a properly completed and filed Form 8275 or 8275–R, as appropriate. In addition, the statutory or regulatory provision or ruling in question must be adequately identified on the Form 8275 or 8275–R, as appropriate. The provisions of § 1.6662–4(f)(2), which permit disclosure in accordance with an annual revenue procedure for purposes of the substantial understatement penalty, do not apply for purposes of this section.

(d) *Special rules in the case of carrybacks and carryovers*—(1) *In general.* The penalty for negligence or disregard of rules or regulations applies to any portion of an underpayment for a year to which a loss, deduction or credit is carried, which portion is attributable to negligence or disregard of rules or regulations in the year in which the carryback or carryover of the loss, deduction or credit arises (the "loss or credit year").

(2) *Transition rule for carrybacks to pre-1990 years.* A 20 percent penalty under section 6662(b)(1) is imposed on any portion of an underpayment for a carryback year, the return for which is due (without regard to extensions) before January 1, 1990, if—

(i) That portion is attributable to negligence or disregard of rules or regulations in a loss or credit year; and

(ii) The return for the loss or credit year is due (without regard to extensions) after December 31, 1989.

(3) *Example.* The following example illustrates the provisions of paragraph (d) of this section. This example does not take into account the reasonable cause exception under § 1.6664–4.

*Example.* Corporation M is a C corporation. In 1990, M had a loss of $200,000 before taking into account a deduction of $350,000 that M claimed as an expense in careless disregard of the capitalization requirements of section 263 of the Code. M failed to make adequate disclosure of the item for 1990. M reported a $550,000 loss for 1990 and carried back the loss to 1987 and 1988. M had reported taxable income of $400,000 for 1987 and $200,000 for 1988, before application of the carryback. The carryback eliminated all of M's taxable income for 1987 and $150,000 of taxable income for 1988. After disallowance of the $350,000 expense deduction and allowance of a $35,000 depreciation deduction with respect to the capitalized amount, the correct loss for 1990 was determined to be $235,000. Because there is no underpayment for 1990, the penalty for negligence or disregard of rules or regulations does not apply for 1990. However, as a result of the 1990 adjustments, the loss carried back to 1987 is reduced from $550,000 to $235,000. After application of the $235,000 carryback, M has taxable income of $165,000 for 1987 and $200,000 for 1988. This adjustment results in underpayments for 1987 and 1988 that are attributable to the disregard of rules or regulations on the 1990 return. Therefore, the 20 percent penalty rate applies to the 1987 and 1988 underpayments attributable to the disallowed carryback.

[T.D. 8381, 56 FR 67498, Dec. 31, 1991, as amended by T.D. 8617, 60 FR 45664, Sept. 1, 1995]

§ 1.6662–4 **Substantial understatement of income tax.**

(a) *In general.* If any portion of an underpayment, as defined in section 6664(a) and § 1.6664–2, of any income tax imposed under subtitle A of the Code that is required to be shown on a return is attributable to a substantial understatement of such income tax, there is added to the tax an amount equal to 20 percent of such portion. Except in the case of any item attributable to a tax shelter (as defined in paragraph (g)(2) of this section), an understatement is reduced by that portion of the understatement that is attributable to the tax treatment of an item for which there is substantial authority, or with respect to which there is adequate disclosure. General rules for determining the amount of an understatement are set forth in paragraph (b) of this section and more specific rules in the case of carrybacks and carryovers are set forth in paragraph (c) of this section. The rules for determining when substantial authority exists are set forth in § 1.6662–4(d). The rules for determining when there is adequate disclosure are set forth in § 1.6662–4 (e) and (f). This penalty does

**Internal Revenue Service, Treasury** §1.6662–4

not apply to the extent that the reasonable cause and good faith exception to this penalty set forth in §1.6664–4 applies.

(b) *Definitions and computational rules*—(1) *Substantial.* An understatement (as defined in paragraph (b)(2) of this section) is ''substantial'' if it exceeds the greater of—

(i) 10 percent of the tax required to be shown on the return for the taxable year (as defined in paragraph (b)(3) of this section); or

(ii) $5,000 ($10,000 in the case of a corporation other than an S corporation (as defined in section 1361(a)(1)) or a personal holding company (as defined in section 542)).

(2) *Understatement.* Except as provided in paragraph (c)(2) of this section (relating to special rules for carrybacks), the term ''understatement'' means the excess of—

(i) The amount of the tax required to be shown on the return for the taxable year (as defined in paragraph (b)(3) of this section), over

(ii) The amount of the tax imposed which is shown on the return for the taxable year (as defined in paragraph (b)(4) of this section), reduced by any rebate (as defined in paragraph (b)(5) of this section).

The definition of understatement also may be expressed as—

Understatement = X − (Y − Z)

where $X$ = the amount of the tax required to be shown on the return; $Y$ = the amount of the tax imposed which is shown on the return; and $Z$ = any rebate.

(3) *Amount of the tax required to be shown on the return.* The ''amount of the tax required to be shown on the return'' for the taxable year has the same meaning as the ''amount of income tax imposed'' as defined in §1.6664–2(b).

(4) *Amount of the tax imposed which is shown on the return.* The ''amount of the tax imposed which is shown on the return'' for the taxable year has the same meaning as the ''amount shown as the tax by the taxpayer on his return,'' as defined in §1.6664–2(c), except that—

(i) There is no reduction for the excess of the amount described in §1.6664–2(c)(1)(i) over the amount described in §1.6664–2(c)(1)(ii), and

(ii) The tax liability shown by the taxpayer on his return is recomputed as if the following items had been reported properly:

(A) Items (other than tax shelter items as defined in §1.6662–4(g)(3)) for which there is substantial authority for the treatment claimed (as provided in §1.6662–4(d)).

(B) Items (other than tax shelter items as defined in §1.6662–4(g)(3)) with respect to which there is adequate disclosure (as provided in §1.6662–4 (e) and (f)).

(C) Tax shelter items (as defined in §1.6662–4(g)(3)) for which there is substantial authority for the treatment claimed (as provided in §1.6662–4(d)), and with respect to which the taxpayer reasonably believed that the tax treatment of the items was more likely than not the proper tax treatment (as provided in §1.6662–4(g)(4)).

(5) *Rebate.* The term *rebate* has the meaning set forth in §1.6664–2(e), except that—

(i) ''Amounts not so shown previously assessed (or collected without assessment)'' includes only amounts not so shown previously assessed (or collected without assessment) as a deficiency, and

(ii) The amount of the rebate is determined as if any items to which the rebate is attributable that are described in paragraph (b)(4) of this section had received the proper tax treatment.

(6) *Examples.* The following examples illustrate the provisions of paragraph (b) of this section. These examples do not take into account the reasonable cause exception under §1.6664–4:

*Example 1.* In 1990, Individual A, a calendar year taxpayer, files a return for 1989, which shows taxable income of $18,200 and tax liability of $2,734. Subsequent adjustments on audit for 1989 increase taxable income to $51,500 and tax liability to $12,339. There was substantial authority for an item resulting in an adjustment that increases taxable income by $5,300. The item is not a tax shelter item. In computing the amount of the understatement, the amount of tax shown on A's return is determined as if the item for which there was substantial authority had been given the proper tax treatment. Thus, the amount of tax that is treated as shown on A's return is $4,176, i.e., the tax on $23,500 ($18,200 taxable income actually shown on

┌─ 939 ─┐

A's return plus $5,300, the amount of the adjustment for which there was substantial authority). The amount of the understatement is $8,163, i.e., $12,339 (the amount of tax required to be shown) less $4,176 (the amount of tax treated as shown on A's return after adjustment for the item for which there was substantial authority). Because the $8,163 understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the year, i.e., $1,234 ($12,339 × .10) or $5,000, A has a substantial understatement of income tax for the year.

*Example 2.* Individual B, a calendar year taxpayer, files a return for 1990 that fails to include income reported on an information return, Form 1099, that was furnished to B. The Service detects this omission through its document matching program and assesses $3,000 in unreported tax liability. B's return is later examined and as a result of the examination the Service makes an adjustment to B's return of $4,000 in additional tax liability. Assuming there was neither substantial authority nor adequate disclosure with respect to the items adjusted, there is an understatement of $7,000 with respect to B's return. There is also an underpayment of $7,000. (See § 1.6664–2.) The amount of the understatement is not reduced by imposition of a negligence penalty on the $3,000 portion of the underpayment that is attributable to the unreported income. However, if the Services does impose the negligence penalty on this $3,000 portion, the Service may only impose the substantial understatement penalty on the remaining $4,000 portion of the underpayment. (See § 1.6662–2(c), which prohibits stacking of accuracy-related penalty components.)

(c) *Special rules in the case of carrybacks and carryovers*—(1) *In general.* The penalty for a substantial understatement of income tax applies to any portion of an underpayment for a year to which a loss, deduction or credit is carried that is attributable to a "tainted item" for the year in which the carryback or carryover of the loss, deduction or credit arises (the "loss or credit year"). The determination of whether an understatement is substantial for a carryback or carryover year is made with respect to the return of the carryback or carryover year. "Tainted items" are taken into account with items arising in a carryback or carryover year to determine whether the understatement is substantial for that year.

(2) *Understatements for carryback years not reduced by amount of carrybacks.* The amount of an understatement for a

carryback year is not reduced on account of a carryback of a loss, deduction or credit to that year.

(3) *Tainted items defined*—(i) *In general.* Except in the case of a tax shelter item (as defined in paragraph (g)(3) of this section), a "tainted item" is any item for which there is neither substantial authority nor adequate disclosure with respect to the loss or credit year.

(ii) *Tax shelter items.* In the case of a tax shelter item (as defined in paragraph (g)(3) of this section), a "tainted item" is any item for which there is not, with respect to the loss or credit year, both substantial authority and a reasonable belief that the tax treatment is more likely than not the proper treatment.

(4) *Transition rule for carrybacks to pre-1990 years.* A 20 percent penalty under section 6662(b)(2) is imposed on any portion of an underpayment for a carryback year, the return for which is due (without regard to extensions) before January 1, 1990, if—

(i) That portion is attributable to one or more "tainted items" (as defined in paragraph (c)(3) of this section) arising in a loss or credit year; and

(ii) The return for the loss or credit year is due (without regard to extensions) after December 31, 1989.

The preceding sentence applies only if the understatement in the carryback year is substantial. See *Example 2* in paragraph (c)(5) of this section.

(5) *Examples.* The following examples illustrate the rules of paragraph (c) of this section regarding carrybacks and carryovers. These examples do not take into account the reasonable cause exception under § 1.6664–4.

*Example 1.* (i) Corporation N, a calendar year taxpayer, is a C corporation. N was formed on January 1, 1987, and timely filed the following income tax returns:

[In dollars]

|  | Tax Year | | | |
|---|---|---|---|---|
|  | 1987 | 1988 | 1989 | 1990 (before NOLCO) |
| Taxable income | 30,000 | 100,000 | (300,000) | 50,000 |
| Tax liability | 4,575 | 22,250 | ................. | 7,500 |



(ii) During 1990, N files Form 1139, Corporation Application for Tentative Refund, to carry back the NOL generated in 1989 (NOLCB). N received refunds of $4,575 for 1987 and $22,250 for 1988.

(iii) For tax year 1990, N carries over $50,000 of the 1989 loss to offset $50,000 of income earned in 1990 and reduce taxable income to zero. N would have reported $7,500 of tax liability for 1990 if it were not for use of the net operating loss carryover (NOLCO). N assumes there is a remaining NOLCO of $120,000 to be applied for tax year 1991.

(iv) In June 1991, the Service completes its examination of the 1989 loss year return and makes the following adjustment:

| | |
|---|---:|
| Taxable income per 1989 return .. | ($300,000) |
| Adjustment: Unreported income | 310,000 |
| Corrected taxable income .......... | $10,000 |
| Corrected tax liability ............... | $1,500 |

(v) There was not substantial authority for N's treatment of the items comprising the 1989 adjustment and N did not make adequate disclosure.

(vi) As a result of the adjustment to the 1989 return, N had an understatement of $4,575 for tax year 1987; an understatement of $22,250 for tax year 1988; an understatement of $1,500 for tax year 1989; and an understatement of $7,500 for tax year 1990. Only the $22,250 understatement for 1988 is a substantial understatement, i.e., it exceeds the greater of (a) $2,225 (10 percent of the tax required to be shown on the return for the taxable year (.10 × $22,250)) or (b) $10,000. The underpayment for 1988 is subject to a penalty rate of 20 percent.

*Example 2.* The facts are the same as in *Example 1,* except that in addition to examining the 1989 return, the Service also examines the 1987 return and makes an adjustment that results in an understatement. (This adjustment is unrelated to the adjustment on the 1987 return for the disallowance of the NOLCB from 1989.) If the understatement resulting from the adjustment to the 1987 return, when combined with the understatement resulting from the disallowance of the NOLCB from 1989, exceeds the greater of (a) 10 percent of the tax required to be shown on the return for 1987 or (b) $10,000, the underpayment for 1987 will also be subject to a substantial understatement penalty. The portion of the underpayment attributable to the adjustment unrelated to the disallowance of the NOLCB will be subject to a penalty rate of 25 percent under former section 6661. The portion of the underpayment attributable to the disallowance of the NOLCB will be subject to a penalty rate of 20 percent under section 6662.

*Example 3.* Individual P, a calendar year single taxpayer, files his 1990 return reporting taxable income of $10,000 and a tax liabil-ity of $1,504. An examination of the 1990 return results in an adjustment for unreported income of $25,000. There was not substantial authority for P's failure to report the income, and P did not make adequate disclosure with respect to the unreported income. P's correct tax liability for 1990 is determined to be $7,279, resulting in an understatement of $5,775 (the difference between the amount of tax required to be shown on the return ($7,279) and the tax shown on the return ($1,504)). Because the understatement exceeds the greater of (a) $728 (10 percent of the tax required to be shown on the return (.10 × $7,279)) or (b) $5,000, the understatement is substantial. Subsequently, P files his 1993 return showing a net operating loss. The loss is carried back to his 1990 return, reducing his taxable income for 1990 to zero. However, the amount of the understatement for 1990 is not reduced on account of the NOLCB to that year. P is subject to the 20 percent penalty rate under section 6662 on the underpayment attributable to the substantial understatement for 1990, notwithstanding that the tax required to be shown on the return for that year, after application of the NOLCB, is zero.

(d) *Substantial authority*—(1) *Effect of having substantial authority.* If there is substantial authority for the tax treatment of an item, the item is treated as if it were shown properly on the return for the taxable year in computing the amount of the tax shown on the return. Thus, for purposes of section 6662(d), the tax attributable to the item is not included in the understatement for that year. (For special rules relating to tax shelter items see §1.6662–4(g).)

(2) *Substantial authority standard.* The substantial authority standard is an objective standard involving an analysis of the law and application of the law to relevant facts. The substantial authority standard is less stringent than the "more likely than not" standard (the standard that is met when there is a greater than 50-percent likelihood of the position being upheld), but more stringent than the reasonable basis standard (the standard which, if satisfied, generally will prevent imposition of the penalty under section 6662(b)(1) for negligence). The possibility that a return will not be audited or, if audited, that an item will not be raised on audit, is not relevant in determining whether the substantial authority standard (or the reasonable basis standard) is satisfied.

A28

(3) *Determination of whether substantial authority is present* —(i) *Evaluation of authorities.* There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatement is substantial in relation to the weight of authorities supporting contrary treatment. All authorities relevant to the tax treatment of an item, including the authorities contrary to the treatment, are taken into account in determining whether substantial authority exists. The weight of authorities is determined in light of the pertinent facts and circumstances in the manner prescribed by paragraph (d)(3)(ii) of this section. There may be substantial authority for more than one position with respect to the same item. Because the substantial authority standard is an objective standard, the taxpayer's belief that there is substantial authority for the tax treatment of an item is not relevant in determining whether there is substantial authority for that treatment.

(ii) *Nature of analysis.* The weight accorded an authority depends on its relevance and persuasiveness, and the type of document providing the authority. For example, a case or revenue ruling having some facts in common with the tax treatment at issue is not particularly relevant if the authority is materially distinguishable on its facts, or is otherwise inapplicable to the tax treatment at issue. An authority that merely states a conclusion ordinarily is less persuasive than one that reaches its conclusion by cogently relating the applicable law to pertinent facts. The weight of an authority from which information has been deleted, such as a private letter ruling, is diminished to the extent that the deleted information may have affected the authority's conclusions. The type of document also must be considered. For example, a revenue ruling is accorded greater weight than a private letter ruling addressing the same issue. An older private letter ruling, technical advice memorandum, general counsel memorandum or action on decision generally must be accorded less weight than a more recent one. Any document described in the preceding sentence that is more than 10 years old generally is

accorded very little weight. However, the persuasiveness and relevance of a document, viewed in light of subsequent developments, should be taken into account along with the age of the document. There may be substantial authority for the tax treatment of an item despite the absence of certain types of authority. Thus, a taxpayer may have substantial authority for a position that is supported only by a well-reasoned construction of the applicable statutory provision.

(iii) *Types of authority.* Except in cases described in paragraph (d)(3)(iv) of this section concerning written determinations, only the following are authority for purposes of determining whether there is substantial authority for the tax treatment of an item: Applicable provisions of the Internal Revenue Code and other statutory provisions; proposed, temporary and final regulations construing such statues; revenue rulings and revenue procedures; tax treaties and regulations thereunder, and Treasury Department and other official explanations of such treaties; court cases; congressional intent as reflected in committee reports, joint explanatory statements of managers included in conference committee reports, and floor statements made prior to enactment by one of a bill's managers; General Explanations of tax legislation prepared by the Joint Committee on Taxation (the Blue Book); private letter rulings and technical advice memoranda issued after October 31, 1976; actions on decisions and general counsel memoranda issued after March 12, 1981 (as well as general counsel memoranda published in pre-1955 volumes of the Cumulative Bulletin); Internal Revenue Service information or press releases; and notices, announcements and other administrative pronouncements published by the Service in the Internal Revenue Bulletin. Conclusions reached in treatises, legal periodicals, legal opinions or opinions rendered by tax professionals are not authority. The authorities underlying such expressions of opinion where applicable to the facts of a particular case, however, may give rise to substantial authority for the tax treatment of an item. Notwithstanding the

preceding list of authorities, an authority does not continue to be an authority to the extent it is overruled or modified, implicitly or explicitly, by a body with the power to overrule or modify the earlier authority. In the case of court decisions, for example, a district court opinion on an issue is not an authority if overruled or reversed by the United States Court of Appeals for such district. However, a Tax Court opinion is not considered to be overruled or modified by a court of appeals to which a taxpayer does not have a right of appeal, unless the Tax Court adopts the holding of the court of appeals. Similarly, a private letter ruling is not authority if revoked or if inconsistent with a subsequent proposed regulation, revenue ruling or other administrative pronouncement published in the Internal Revenue Bulletin.

(iv) *Special rules*—(A) *Written determinations.* There is substantial authority for the tax treatment of an item by a taxpayer if the treatment is supported by the conclusion of a ruling or a determination letter (as defined in §301.6110–2 (d) and (e)) issued to the taxpayer, by the conclusion of a technical advice memorandum in which the taxpayer is named, or by an affirmative statement in a revenue agent's report with respect to a prior taxable year of the taxpayer ("written determinations"). The preceding sentence does not apply, however, if—

(*1*) There was a misstatement or omission of a material fact or the facts that subsequently develop are materially different from the facts on which the written determination was based, or

(*2*) The written determination was modified or revoked after the date of issuance by—

(*i*) A notice to the taxpayer to whom the written determination was issued,

(*ii*) The enactment of legislation or ratification of a tax treaty,

(*iii*) A decision of the United States Supreme Court,

(*iv*) The issuance of temporary or final regulations, or

(*v*) The issuance of a revenue ruling, revenue procedure, or other statement published in the Internal Revenue Bulletin.

Except in the case of a written determination that is modified or revoked on account of §1.6662–4(d)(3)(iv)(A)(*1*), a written determination that is modified or revoked as described in §1.6662–4(d)(3)(iv)(A)(*2*) ceases to be authority on the date, and to the extent, it is so modified or revoked. See section 6404(f) for rules which require the Secretary to abate a penalty that is attributable to erroneous written advice furnished to a taxpayer by an officer or employee of the Internal Revenue Service.

(B) *Taxpayer's jurisdiction.* The applicability of court cases to the taxpayer by reason of the taxpayer's residence in a particular jurisdiction is not taken into account in determining whether there is substantial authority for the tax treatment of an item. Notwithstanding the preceding sentence, there is substantial authority for the tax treatment of an item if the treatment is supported by controlling precedent of a United States Court of Appeals to which the taxpayer has a right of appeal with respect to the item.

(C) *When substantial authority determined.* There is substantial authority for the tax treatment of an item if there is substantial authority at the time the return containing the item is filed or there was substantial authority on the last day of the taxable year to which the return relates.

(v) *Substantial authority for tax returns due before January 1, 1990.* There is substantial authority for the tax treatment of an item on a return that is due (without regard to extensions) after December 31, 1982 and before January 1, 1990, if there is substantial authority for such treatment under either the provisions of paragraph (d)(3)(iii) of this section (which set forth an expanded list of authorities) or of §1.6661–3(b)(2) (which set forth a narrower list of authorities). Under either list of authorities, authorities both for and against the position must be taken into account.

(e) *Disclosure of certain information*—(1) *Effect of adequate disclosure.* Items for which there is adequate disclosure as provided in this paragraph (e) and in paragraph (f) of this section are treated as if such items were shown properly on the return for the taxable year in computing the amount of the tax

shown on the return. Thus, for purposes of section 6662(d), the tax attributable to such items is not included in the understatement for that year.

(2) *Circumstances where disclosure will not have an effect.* The rules of paragraph (e)(1) of this section do not apply where the item or position on the return—

(i) Does not have a reasonable basis (as defined in § 1.6662–3(b)(3));

(ii) Is attributable to a tax shelter (as defined in section 6662(d)(2)(C)(iii) and paragraph (g)(2) of this section); or

(iii) Is not properly substantiated, or the taxpayer failed to keep adequate books and records with respect to the item or position.

(f) *Method of making adequate disclosure*—(1) *Disclosure statement.* Disclosure is adequate with respect to an item (or group of similar items, such as amounts paid or incurred for supplies by a taxpayer engaged in business) or a position on a return if the disclosure is made on a properly completed form attached to the return or to a qualified amended return (as defined in § 1.6664–2(c)(3)) for the taxable year. In the case of an item or position other than one that is contrary to a regulation, disclosure must be made on Form 8275 (Disclosure Statement); in the case of a position contrary to a regulation, disclosure must be made on Form 8275–R (Regulation Disclosure Statement).

(2) *Disclosure on return.* The Commissioner may by annual revenue procedure (or otherwise) prescribe the circumstances under which disclosure of information on a return (or qualified amended return) in accordance with applicable forms and instructions is adequate. If the revenue procedure does not include an item, disclosure is adequate with respect to that item only if made on a properly completed Form 8275 or 8275–R, as appropriate, attached to the return for the year or to a qualified amended return.

(3) *Recurring item.* Disclosure with respect to a recurring item, such as the basis of recovery property, must be made for each taxable year in which the item is taken into account.

(4) *Carrybacks and carryovers.* Disclosure is adequate with respect to an item which is included in any loss, deduction or credit that is carried to an-

other year only if made in connection with the return (or qualified amended return) for the taxable year in which the carryback or carryover arises (the "loss or credit year"). Disclosure is not also required in connection with the return for the taxable year in which the carryback or carryover is taken into account.

(5) *Pass-through entities.* Disclosure in the case of items attributable to a pass-through entity (pass-through items) is made with respect to the return of the entity, except as provided in this paragraph (f)(5). Thus, disclosure in the case of pass-through items must be made on a Form 8275 or 8275–R, as appropriate, attached to the return (or qualified amended return) of the entity, or on the entity's return in accordance with the revenue procedure described in paragraph (f)(2) of this section, if applicable. A taxpayer (i.e., partner, shareholder, beneficiary, or holder of a residual interest in a REMIC) also may make adequate disclosure with respect to a pass-through item, however, if the taxpayer files a properly completed Form 8275 or 8275–R, as appropriate, in duplicate, one copy attached to the taxpayer's return (or qualified amended return) and the other copy filed with the Internal Revenue Service Center with which the return of the entity is required to be filed. Each Form 8275 or 8275–R, as appropriate, filed by the taxpayer should relate to the pass-through items of only one entity. For purposes of this paragraph (f)(5), a pass-through entity is a partnership, S corporation (as defined in section 1361(a)(1)), estate, trust, regulated investment company (as defined in section 851(a)), real estate investment trust (as defined in section 856(a)), or real estate mortgage investment conduit ("REMIC") (as defined in section 860D(a)).

(g) *Items relating to tax shelters*—(1) *In general*—(i) *Noncorporate taxpayers.* Tax shelter items (as defined in paragraph (g)(3) of this section) of a taxpayer other than a corporation are treated for purposes of this section as if such items were shown properly on the return for a taxable year in computing the amount of tax shown on the return, and thus the tax attributable to such

944

A31

items is not included in the understatement for the year, if—

(A) There is substantial authority (as provided in paragraph (d) of this section) for the tax treatment of that item; and

(B) The taxpayer reasonably believed at the time the return was filed that the tax treatment of that item was more likely than not the proper treatment.

(ii) *Corporate taxpayers*—(A) *In general.* Except as provided in paragraph (g)(1)(ii)(B) of this section, all tax shelter items (as defined in paragraph (g)(3) of this section) of a corporation are taken into account in computing the amount of any understatement.

(B) *Special rule for transactions occurring prior to December 9, 1994.* The tax shelter items of a corporation arising in connection with transactions occurring prior to December 9, 1994 are treated for purposes of this section as if such items were shown properly on the return if the requirements of paragraph (g)(1)(i) are satisfied with respect to such items.

(iii) *Disclosure irrelevant.* Disclosure made with respect to a tax shelter item of either a corporate or noncorporate taxpayer does not affect the amount of an understatement.

(iv) *Cross-reference.* See §1.6664–4(e) for certain rules regarding the availability of the reasonable cause and good faith exception to the substantial understatement penalty with respect to tax shelter items of corporations.

(2) *Tax shelter*—(i) *In general.* For purposes of section 6662(d), the term "tax shelter" means—

(A) A partnership or other entity (such as a corporation or trust),

(B) An investment plan or arrangement, or

(C) Any other plan or arrangement,

if the principal purpose of the entity, plan or arrangement, based on objective evidence, is to avoid or evade Federal income tax. The principal purpose of an entity, plan or arrangement is to avoid or evade Federal income tax if that purpose exceeds any other purpose. Typical of tax shelters are transactions structured with little or no motive for the realization of economic gain, and transactions that utilize the mismatching of income and deduc-

tions, overvalued assets or assets with values subject to substantial uncertainty, certain nonrecourse financing, financing techniques that do not conform to standard commercial business practices, or the mischaracterization of the substance of the transaction. The existence of economic substance does not of itself establish that a transaction is not a tax shelter if the transaction includes other characteristics that indicate it is a tax shelter.

(ii) *Principal purpose.* The principal purpose of an entity, plan or arrangement is not to avoid or evade Federal income tax if the entity, plan or arrangement has as its purpose the claiming of exclusions from income, accelerated deductions or other tax benefits in a manner consistent with the statute and Congressional purpose. For example, an entity, plan or arrangement does not have as its principal purpose the avoidance or evasion of Federal income tax solely as a result of the following uses of tax benefits provided by the Internal Revenue Code: the purchasing or holding of an obligation bearing interest that is excluded from gross income under section 103; taking an accelerated depreciation allowance under section 168; taking the percentage depletion allowance under section 613 or section 613A; deducting intangible drilling and development costs as expenses under section 263(c); establishing a qualified retirement plan under sections 401–409; claiming the possession tax credit under section 936; or claiming tax benefits available by reason of an election under 992 to be taxed as a domestic international sales corporation ("DISC"), under section 927(f)(1) to be taxed as a foreign sales corporation ("FSC"), or under section 1362 to be taxed as an S corporation.

(3) *Tax shelter item.* An item of income, gain, loss, deduction or credit is a "tax shelter item" if the item is directly or indirectly attributable to the principal purpose of a tax shelter to avoid or evade Federal income tax. Thus, if a partnership is established for the principal purpose of avoiding or evading Federal income tax by acquiring and overstating the basis of property for purposes of claiming accelerated depreciation, the depreciation with respect to the property is a tax

shelter item. However, a deduction claimed in connection with a separate transaction carried on by the same partnership is not a tax shelter item if the transaction does not constitute a plan or arrangement the principal purpose of which is to avoid or evade tax.

(4) *Reasonable belief*—(i) *In general.* For purposes of section 6662(d) and paragraph (g)(1)(i)(B) of this section (pertaining to tax shelter items of non-corporate taxpayers), a taxpayer is considered reasonably to believe that the tax treatment of an item is more likely than not the proper tax treatment if (without taking into account the possibility that a return will not be audited, that an issue will not be raised on audit, or that an issue will be settled)—

(A) The taxpayer analyzes the pertinent facts and authorities in the manner described in paragraph (d)(3)(ii) of this section, and in reliance upon that analysis, reasonably concludes in good faith that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service; or

(B) The taxpayer reasonably relies in good faith on the opinion of a professional tax advisor, if the opinion is based on the tax advisor's analysis of the pertinent facts and authorities in the manner described in paragraph (d)(3)(ii) of this section and unambiguously states that the tax advisor concludes that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service.

(ii) *Facts and circumstances; reliance on professional tax advisor.* All facts and circumstances must be taken into account in determining whether a taxpayer satisfies the requirements of paragraph (g)(4)(i) of this section. However, in no event will a taxpayer be considered to have reasonably relied in good faith on the opinion of a professional tax advisor for purposes of paragraph (g)(4)(i)(B) of this section unless the requirements of § 1.6664–4(c)(1) are met. The fact that the requirements of § 1.6664–4(c)(1) are satisfied will not necessarily establish that the taxpayer reasonably relied on the opinion in

good faith. For example, reliance may not be reasonable or in good faith if the taxpayer knew, or should have known, that the advisor lacked knowledge in the relevant aspects of Federal tax law.

(5) *Pass-through entities.* In the case of tax shelter items attributable to a pass-through entity, the actions described in paragraphs (g)(4)(i)(A) and (B) of this section, if taken by the entity, are deemed to have been taken by the taxpayer and are considered in determining whether the taxpayer reasonably believed that the tax treatment of an item was more likely than not the proper tax treatment.



**★★★★**



## §1.6664–4 Reasonable cause and good faith exception to section 6662 penalties.

(a) *In general.* No penalty may be imposed under section 6662 with respect to any portion of an underpayment upon a showing by the taxpayer that there was reasonable cause for, and the taxpayer acted in good faith with respect to, such portion. Rules for determining whether the reasonable cause and good faith exception applies are set forth in paragraphs (b) through (g) of this section.

(b) *Facts and circumstances taken into account*—(1) *In general.* The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. (See paragraph (e) of this section for certain rules relating to a substantial understatement penalty attributable to tax shelter items of corporations.) Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer. An isolated computational or transcriptional error generally is not inconsistent with reasonable cause and good faith. Reliance on an information return or on the advice of a professional tax advisor or an appraiser does not necessarily demonstrate reasonable cause and good faith. Similarly, reasonable cause and good faith is not necessarily indicated by reliance on facts that, unknown to the taxpayer, are incorrect. Reliance on an information return, professional advice, or other facts, however, constitutes reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. (See paragraph (c) of this section for certain rules relating to reliance on the advice of others.) For example, reliance on erroneous information (such as an error relating to the cost or adjusted basis of property, the date property was placed in service, or the amount of opening or closing inventory) inadvertently included in data compiled by the various divisions of a multidivisional corporation or in financial books and records prepared by those divisions generally indicates reasonable cause and good faith, provided the corporation employed internal controls and procedures, reasonable under the circumstances, that were designed to identify such factual errors. Reasonable cause and good faith ordinarily is not indicated by the mere fact that there is an appraisal of the value of property. Other factors to consider include the methodology and assumptions underlying the appraisal, the appraised value, the relationship between appraised value and purchase price, the circumstances under which the appraisal was obtained, and the appraiser's relationship to the taxpayer or to the activity in which the property is used. (See paragraph (g) of this section for certain rules relating to appraisals for charitable deduction property.) A taxpayer's reliance on erroneous information reported on a Form W–2, Form 1099, or other information return indicates reasonable cause and good faith, provided the taxpayer did not know or have reason to know that the information was incorrect. Generally, a taxpayer knows, or has reason to know, that the information on an information return is incorrect if such information is inconsistent with other information reported or otherwise furnished to the taxpayer, or with the taxpayer's knowledge of the transaction. This knowledge includes, for example, the taxpayer's knowledge of the terms of his employment relationship or of the rate of return on a payor's obligation.

(2) *Examples.* The following examples illustrate this paragraph (b). They do not involve tax shelter items. (See paragraph (e) of this section for certain rules relating to the substantial understatement penalty attributable to the tax shelter items of corporations.)

*Example 1.* A, an individual calendar year taxpayer, engages B, a professional tax advisor, to give A advice concerning the deductibility of certain state and local taxes. A provides B with full details concerning the taxes at issue. B advises A that the taxes are fully deductible. A, in preparing his own tax return, claims a deduction for the taxes. Absent other facts, and assuming the facts and circumstances surrounding B's advice and A's reliance on such advice satisfy the requirements of paragraph (c) of this section, A is considered to have demonstrated good faith by seeking the advice of a professional tax advisor, and to have shown reasonable cause for any underpayment attributable to the deduction claimed for the taxes. However, if A had sought advice from someone that A knew, or should have known, lacked knowledge in the relevant aspects of Federal tax law, or if other facts demonstrate that A

963

A34

**Internal Revenue Service, Treasury**

**§ 1.6664–4**

failed to act reasonably or in good faith, A would not be considered to have shown reasonable cause or to have acted in good faith.

*Example 2.* C, an individual, sought advice from D, a friend who was not a tax professional, as to how C might reduce his Federal tax obligations. D advised C that, for a nominal investment in Corporation X, D had received certain tax benefits which virtually eliminated D's Federal tax liability. D also named other investors who had received similar benefits. Without further inquiry, C invested in X and claimed the benefits that he had been assured by D were due him. In this case, C did not make any good faith attempt to ascertain the correctness of what D had advised him concerning his tax matters, and is not considered to have reasonable cause for the underpayment attributable to the benefits claimed.

*Example 3.* E, an individual, worked for Company X doing odd jobs and filling in for other employees when necessary. E worked irregular hours and was paid by the hour. The amount of E's pay check differed from week to week. The Form W–2 furnished to E reflected wages for 1990 in the amount of $29,729. It did not, however, include compensation of $1,467 paid for some hours E worked. Relying on the Form W–2, E filed a return reporting wages of $29,729. E had no reason to know that the amount reported on the Form W–2 was incorrect. Under the circumstances, E is considered to have acted in good faith in relying on the Form W–2 and to have reasonable cause for the underpayment attributable to the unreported wages.

*Example 4.* H, an individual, did not enjoy preparing his tax returns and procrastinated in doing so until April 15th. On April 15th, H hurriedly gathered together his tax records and materials, prepared a return, and mailed it before midnight. The return contained numerous errors, some of which were in H's favor and some of which were not. The net result of all the adjustments, however, was an underpayment of tax by H. Under these circumstances, H is not considered to have reasonable cause for the underpayment or to have acted in good faith in attempting to file an accurate return.

(c) *Reliance on opinion or advice*—(1) *Facts and circumstances; minimum requirements.* All facts and circumstances must be taken into account in determining whether a taxpayer has reasonably relied in good faith on advice (including the opinion of a professional tax advisor) as to the treatment of the taxpayer (or any entity, plan, or arrangement) under Federal tax law. However, in no event will a taxpayer be considered to have reasonably relied in good faith on advice unless the require-

ments of this paragraph (c)(1) are satisfied. The fact that these requirements are satisfied will not necessarily establish that the taxpayer reasonably relied on the advice (including the opinion of a professional tax advisor) in good faith. For example, reliance may not be reasonable or in good faith if the taxpayer knew, or should have known, that the advisor lacked knowledge in the relevant aspects of Federal tax law.

(i) *All facts and circumstances considered.* The advice must be based upon all pertinent facts and circumstances and the law as it relates to those facts and circumstances. For example, the advice must take into account the taxpayer's purposes (and the relative weight of such purposes) for entering into a transaction and for structuring a transaction in a particular manner. In addition, the requirements of this paragraph (c)(1) are not satisfied if the taxpayer fails to disclose a fact that it knows, or should know, to be relevant to the proper tax treatment of an item.

(ii) *No unreasonable assumptions.* The advice must not be based on unreasonable factual or legal assumptions (including assumptions as to future events) and must not unreasonably rely on the representations, statements, findings, or agreements of the taxpayer or any other person. For example, the advice must not be based upon a representation or assumption which the taxpayer knows, or has reason to know, is unlikely to be true, such as an inaccurate representation or assumption as to the taxpayer's purposes for entering into a transaction or for structuring a transaction in a particular manner.

(2) *Advice defined.* Advice is any communication, including the opinion of a professional tax advisor, setting forth the analysis or conclusion of a person, other than the taxpayer, provided to (or for the benefit of) the taxpayer and on which the taxpayer relies, directly or indirectly, with respect to the imposition of the section 6662 accuracy-related penalty. Advice does not have to be in any particular form.

(3) *Cross-reference.* For rules applicable to advisors, see e.g., §§ 1.6694–1 through 1.6694–3 (regarding preparer

965

A35

penalties), 31 CFR 10.22 (regarding diligence as to accuracy), 31 CFR 10.33 (regarding tax shelter opinions), and 31 CFR 10.34 (regarding standards for advising with respect to tax return positions and for preparing or signing returns).

(d) *Pass-through items.* The determination of whether a taxpayer acted with reasonable cause and in good faith with respect to an underpayment that is related to an item reflected on the return of a pass-through entity is made on the basis of all pertinent facts and circumstances, including the taxpayer's own actions, as well as the actions of the pass-through entity.

(e) *Special rules for substantial understatement penalty attributable to tax shelter items of corporations*—(i) *In general; facts and circumstances.* The determination of whether a corporation acted with reasonable cause and in good faith in its treatment of a tax shelter item (as defined in § 1.6662–4(g)(3)) is based on all pertinent facts and circumstances. Paragraphs (e)(2), (3), and (4) of this section set forth rules that apply, in the case of a penalty attributable to a substantial understatement of income tax (within the meaning of section 6662(d)), in determining whether a corporation acted with reasonable cause and in good faith with respect to a tax shelter item.

(2) *Reasonable cause based on legal justification*—(i) *Minimum requirements.* A corporation's legal justification (as defined in paragraph (e)(2)(ii) of this section) may be taken into account, as appropriate, in establishing that the corporation acted with reasonable cause and in good faith in its treatment of a tax shelter item only if the authority requirement of paragraph (e)(2)(i)(A) of this section and the belief requirement of paragraph (e)(2)(i)(B) of this section are satisfied (the minimum requirements). Thus, a failure to satisfy the minimum requirements will preclude a finding of reasonable cause and good faith based (in whole or in part) on the corporation's legal justification.

(A) *Authority requirement.* The authority requirement is satisfied only if there is substantial authority (within the meaning of § 1.6662–4(d)) for the tax treatment of the item.

(B) *Belief requirement.* The belief requirement is satisfied only if, based on all facts and circumstances, the corporation reasonably believed, at the time the return was filed, that the tax treatment of the item was more likely than not the proper treatment. For purposes of the preceding sentence, a corporation is considered reasonably to believe that the tax treatment of an item is more likely than not the proper tax treatment if (without taking into account the possibility that a return will not be audited, that an issue will not be raised on audit, or that an issue will be settled)—

(*1*) The corporation analyzes the pertinent facts and authorities in the manner described in § 1.6662–4(d)(3)(ii), and in reliance upon that analysis, reasonably concludes in good faith that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service; or

(*2*) The corporation reasonably relies in good faith on the opinion of a professional tax advisor, if the opinion is based on the tax advisor's analysis of the pertinent facts and authorities in the manner described in § 1.6662–4(d)(3)(ii) and unambiguously states that the tax advisor concludes that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service. (For this purpose, the requirements of paragraph (c) of this section must be met with respect to the opinion of a professional tax advisor.)

(ii) *Legal justification defined.* For purposes of this paragraph (e), *legal justification* includes any justification relating to the treatment or characterization under the Federal tax law of the tax shelter item or of the entity, plan, or arrangement that gave rise to the item. Thus, a taxpayer's belief (whether independently formed or based on the advice of others) as to the merits of the taxpayer's underlying position is a legal justification.

(3) *Minimum requirements not dispositive.* Satisfaction of the minimum requirements of paragraph (e)(2) of this section is an important factor to be considered in determining whether a

corporate taxpayer acted with reasonable cause and in good faith, but is not necessarily dispositive. For example, depending on the circumstances, satisfaction of the minimum requirements may not be dispositive if the taxpayer's participation in the tax shelter lacked significant business purpose, if the taxpayer claimed tax benefits that are unreasonable in comparison to the taxpayer's investment in the tax shelter, or if the taxpayer agreed with the organizer or promoter of the tax shelter that the taxpayer would protect the confidentiality of the tax aspects of the structure of the tax shelter.

(4) *Other factors.* Facts and circumstances other than a corporation's legal justification may be taken into account, as appropriate, in determining whether the corporation acted with reasonable cause and in good faith with respect to a tax shelter item regardless of whether the minimum requirements of paragraph (e)(2) of this section are satisfied.

(f) *Tranactions between persons described in section 482 and net section 482 transfer price adjustments.* [Reserved]

(g) *Valuation misstatements of charitable deduction property*—(1) *In general.* There may be reasonable cause and good faith with respect to a portion of an underpayment that is attributable to a substantial (or gross) valuation misstatement of charitable deduction property (as defined in paragraph (e)(2)(i) of this section) only if—

(i) The claimed value of the property was based on a qualified appraisal (as defined in paragraph (e)(2)(ii) of this section) by a qualified appraiser (as defined in paragraph (e)(2)(iii) of this section), and

(ii) In addition to obtaining a qualified appraisal, the taxpayer made a good faith investigation of the value of the contributed property.

The rules of this paragraph (e) apply regardless of whether §1.170A–13 permits a taxpayer to claim a charitable contribution deduction for the property without obtaining a qualified appraisal. The rules of this paragraph (e) apply in addition to the generally applicable rules concerning reasonable cause and good faith.

(2) *Definitions*—(i) *Charitable deduction property.* For purposes of this paragraph (e), the term ''charitable deduction property'' means any property (other than money or publicly traded securities, as defined in §1.170A–13(c)(7)(xi)) contributed by the taxpayer in a contribution for which a deduction was claimed under section 170.

(ii) *Qualified appraisal.* For purposes of this paragraph (e), the term ''qualified appraisal'' means a qualified appraisal as defined in §1.170A–13(c)(3).

(iii) *Qualified appraiser.* For purposes of this paragraph (e), the term ''qualified appraiser'' means a qualified appraiser as defined in §1.170A–13(c)(5).

****

967

A37