3:01CV01839 (SRU)
3:01CV01840 (SRU)

*IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT*

TIFD III-E INC.,THE TAX MATTERS PARTNER OF
CASTLE HARBOUR-I LIMITED-LIABILITY COMPANY,

Plaintiff

v.

UNITED STATES OF AMERICA,

Defendant

**UNITED STATES' RESPONSE BRIEF
REGARDING SECTION 704(e)**

KEVIN J. O'CONNOR
    United States Attorney
JOHN B. HUGHES
    Chief, Civil Division
ROBERT J. HIGGINS
    Trial Attorney
    United States Department of Justice (Tax)
    Washington, D.C. 20044

2271696.1

Page

## TABLE OF CONTENTS

United States' Response Brief Regarding Section 704(e) ............................................................. 1

Statement ................................................................................................................................ 2

Argument:

    A.    <u>The Banks Did Not "Own a Capital Interest" as Required By § 704(E)</u> ............... 7

        1.    <u>§ 704(e)</u> ........................................................................................ .7

        2.    <u>The Dutch Banks Did Not "Own A Capital Interest"</u> ................................ 9

    B.    <u>GECC'S Logic Is Faulty</u> ....................................................................... 12

Conclusion ........................................................................................................................ 18
Appendix C:

Description:

Internal Revenue Code of 1986 (26 U.S.C.):

    § 704 ....................................................................................................... 19

Treasury Regulations (26 C.F.R.):

    § 1.704-1(e) ................................................................................................ 20

Revenue Act of 1951, § 340, ch. 521, 65 Stat. 452, 511 ................................................. 27

H.R. Rep. 82-586 No. 586, 82nd Cong. 1st Sess. 1951, 1951 ........................................... 28

S. Rep. 82-781, S. Sep. No. 781, 82nd Cong., 1st Sess. 1951, 1951 ................................... 31

S. Rep. No. 781, Part 2, 82nd Cong., 1st Sess. Calendar No. 7371 ................................... 34

H. Conf. R. No. 82-1213 (1951), *reprinted in* 1951-2 C.B. 622, 633-34 ........................ 35

2271696.1

Page

## TABLE OF AUTHORITIES

**Cases:**

*Atlas v. United States*, 555 F. Supp. 110 (N.D. Ill. 1982) .................................................. 9

*Cirelli v. Commissioner*, 82 T.C. 335 (1984) .................................................. 12

*Commissioner v. Culbertson*, 337 U.S. 733 (1949) .................................................. 2, 8, 9

*Commissioner v. O.P.P. Holding Corp.*, 76 F.2d 11 (2d Cir.1935) ........................... 16, 17

*Commissioner v. Tower*, 327 U.S. 280 (1946) .................................................. 8

*Evans v. Commissioner*, 447 F.2d 547 (7th Cir. 1971) .................................................. 12

*Field v. United States*, 381 F.3d 109 (2d. Cir. 2004) .................................................. 9

*United States v. Quintieri*, 306 F.3d 1217 (2d. Cir. 2002) .................................... 9, 10, 11

*Gilbert v. Commissioner*, 248 F.2d 399 (2nd Cir. 1957) .................................................. 13

*Hambuechen v. Commissioner*, 43 T.C. 90 (1964) .................................................. 13, 14

*Helvering v. Clifford*, 309 U.S. 331 (1940) .................................................. 8, 15

*I.N.S. v. St. Cyr*, 553 U.S. 289 (2001) .................................................. 7

*Jewel Tea Co. v. United States*, 90 F.2d 451 (2d Cir.1937) .................................................. 16

*Pflugradt v. United States*, 310 F.2d 412 (7th Cir. 1962) (1954 Code) ........................ 11

*TIFD III-E, Inc. v. United States*, 459 F.3d 220 (2d Cir. 2006), *rev'g and
   remanding*, 342 F.Supp. 2d .................................................. 1, 15

2271696.1

**Page**

**Statutes:**

26 U.S.C., § 704 ...................................................................................... *Passim*

Revenue Act of 1951, Pub. L. No. 183, § 340, ch. 521, 65 Stat. 452 at 511 ..................... 7

**Miscellaneous:**

H.R. Rep. No. 586, 82d Cong., 1st Sess. 32 (1951) .................................................. 7, 9,15

S. Rep. No. 781, 82d Cong., 1st Sess. 38, 39 (1951) ............................................. 7, 9,15

Treas. Reg. § 1.704-1(e)(2)(i) .................................................................. *Passim*

2271696.1

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TIFD III-E INC.,THE TAX MATTERS PARTNER OF CASTLE HARBOUR-I LIMITED-LIABILITY COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> CASE NOS. 3:01CV01839(SRU) <br> 3.01CV01840(SRU) |

## UNITED STATES' RESPONSE BRIEF
## REGARDING SECTION 704(e)

Pursuant to the Court's November 15, 2006 Memorandum of Conference, the United

States files this brief opposing Castle Harbour's (also referred to as "GECC") contention that it is

entitled to treatment as a "Family Partnership" pursuant to § 704(e), App. C,  and, therefore, the

roughly $62 million transaction related tax savings claimed by GECC are in any event allowable

under § 704(e), even though the Second Circuit sustained the grounds for disallowance set forth

in the FPAAs. *TIFD III-E, Inc. v. United States*, 459 F.3d 220, 241 n. 19 (2d Cir. 2006), *rev'g*

*and remanding*, 342 F.Supp. 2d. 94 (D.Conn. 2004).[1]  Because the Second Circuit, reviewing the

totality of the facts and circumstances, *id.,* 459 F. 3d at 240,  held "that the Dutch banks' interest

was, for tax purposes, not a bona fide equity participation," *id.* 459 F. 3d at 241, there is no merit

to plaintiff's contention that the "family partnership" provisions of § 704(e) otherwise qualify the

---

[1]  All references to "§" or "§§" are to sections of the Internal Revenue Code and Treasury
Regulations in force during the years at issue, unless otherwise stated.  The pertinent statutes
legislative history and regulations are set forth in Appendix C to this brief. Appendices A and B
accompanied the government's Initial Brief on Remand filed January 31, 2007.

-1-

2270182.11

Dutch banks (ING and Rabo) as partners of Castle Harbour for federal income tax purposes
during the period 1993 through 1998.

The Second Circuit did not remand the case for new findings of fact.

> The question remains whether we should remand for new findings
> or undertake ourselves to answer in the first instance the question
> of bona fide equity participation. We conclude that consideration
> of this question under *Culbertson's* mandate to appraise the totality
> of the circumstances compels the conclusion that, for tax purposes,
> the banks were not bona fide equity partners in Castle Harbour.
> Accordingly, there is no reason to remand for new findings.

*Id.* Despite this clear statement, GECC argues that the facts of record support a conclusion that
the banks owned a capital interest in Castle Harbour.  GECC attempts to diminish the Second
Circuit's holding with the suggestion that, because the Second Circuit did not conclude that the
banks' interest "was debt," the banks' interest must be equity.  The error in GECC's logic is that
the Second Circuit has already held that the banks' interest was not equity.  Consideration of the
question on remand, whether Castle Harbour qualifies as a partnership under § 704(e) and
therefore can obtain the claimed tax benefits disallowed by the FPAAs, must account for the
Second Circuit's affirmative holding – that the banks' interest was not equity, and not merely
the absence of a conclusion that the interest was debt.

STATEMENT

The family partnership provisions of § 704(e) do not support GECC's claim that the
Dutch banks must be deemed partners of Castle Harbour for tax purposes, allowing the allocation
of approximately $310 million of income, otherwise taxable to GECC, to the banks (entities
indifferent to U.S. tax).  First, § 704(e)(1) requires the putative partner to "own[] a capital
interest." § 704(e)(1).  The Second Circuits' holding that the Dutch banks' interest was not bona

-2-

fide equity precludes a holding, on the same factual record, that the Dutch banks own a capital interest.

Second, mere mechanical application of § 704(e) does not, as GECC contends, override the application of a "totality of facts and circumstances" analysis which lead the Second Circuit to conclude that the partnership should not be recognized for tax purposes. *Id.* at 241. The Treasury Regulations guiding application of § 704(e) recognize that the basic test of ownership "must be ascertained from all the facts and circumstances of the particular case. Isolated facts are not determinative. . ." Treas. Regs. § 1.704-1(e)(2)(i).[2]  Again, the Second Circuit has already concluded that the totality of the facts of record in this case do not support a conclusion that the banks were partners in Castle Harbour. The conclusion of the Court of Appeals, *id.* at 224, is quite clear:

> The facts of the allocation of partnership resources, as set forth in the partnership documents (and as found by the district court) compel the conclusion that the IRS correctly determined that the Dutch banks were not bona fide equity participants in the partnership.

Third, even if this Court were to conclude that the banks were partners in Castle Harbour by operation of § 704(e), the allocations of 98% of taxable income to the banks should not stand under § 704(b) or § 704(e). The Second Circuit did not reach the United States' appeal on the issue of whether allocation of 98% of the taxable income to the banks violated § 704(b) and

---

[2] The regulation applies a totality of circumstances test to determine whether the "a partner who is a donee of a capital interest in a partnership is the real owner of such capital interest. . ." Treas. Reg. § 1.704-1(e)(2)(i). While no one is contending that the Dutch banks are donees, the analysis prescribed by the regulation is still instructive here. Furthermore, the regulations, written to address the "donee" partner, illustrate that § 704(e) was intended to address the issues raised when family members create a partnership and some family members donate the necessary capital to other family members to invest. *See* Treas. Regs. § 1.704-1(e)(1)(ii)("Recognition of donee as partner.").

2270182.11

Treasury Regulation § 1.704–1(b)(2).  459 F.3d 224, n.1.  The United States continues to maintain that even if the banks are recognized as partners, the allocation of 98% of taxable income to the banks cannot stand after application of § 704(b).[3]  Nothing in § 704(e) or the corresponding regulations requires or allows the allocation of 98% of the taxable income to the banks.  And, nothing in those provisions makes § 704(b) and its corresponding regulations inoperable.[4]

GECC's contention, *inter alia,* that because the Second Circuit did not conclude that the banks' interest "was debt," this Court must (or may) conclude that the banks' interest "was equity" is, at best, disingenuous in light of the Second Circuit's opinion.  The Second Circuit reviewed the partnership arrangement as reflected in the operative documents, *id.* at 227-29, and concluded that the banks' interests "were designed to have a superficial appearance of equity participation, but in the end (in all but a negligible part) to function in the manner of a repayment of a secured loan."  *Id.* at 227.  The Court repeated this conclusion more than once:

> [T]he facts of the partnership agreement, as properly found by the
> district court, generally conceded by the taxpayer, and
> unquestionably established by the partnership documents, compel
> the conclusion that the Internal Revenue Service was on sound
> ground in rejecting the partnership's purported characterization of
> the Dutch banks' interest as bona fide equity participation.  In sum,
> the Dutch banks' interest was overwhelmingly in the nature of a
> secured lender's interest, which would neither be harmed by poor
> performance of the partnership, nor significantly enhanced by

---

[3]  As the parties' positions on the application to § 704(b) have been fully briefed both before this Court and the Court of Appeals, we will not repeat those arguments here.  Since the Court of Appeals did not reach this issue, the United States reserves the right to present this argument again to the Court of Appeals should this Court conclude that the banks are partners of Castle Harbour under operation of  § 704(e).

[4]  The regulations  provide rules fo the allocation of partnership income when a partner's interest is created by gift.  Treas. Regs. 1.704-1(e)(3).  That is not the case here.

> extraordinary profits. The banks had no meaningful stake in the
> success or failure of Castle Harbour.

*Id.* at 231.

> On different facts a difficult question would arise whether an
> investor's right to a share of profits was sufficient to make its
> interest a bona fide equity participation for tax purposes
> notwithstanding the secured guaranty of the return of its principal
> plus interest. This is not such a case. Here the banks were accorded
> the appearance of a meaningful interest in the potential profits of
> the partnership, which was effectively nullified by the taxpayer's
> ability to limit their participation in such profits to an insignificant
> amount.

*Id.* at 241.

The facts examined by the Second Circuit included:

- Exhibit E of the Operating Agreement . This document set forth a schedule of annual payments to the Dutch banks calculated to reimburse the banks' $117.5 million investment plus an annual rate of return at the agreed Applicable Rate of 9.03587%. *Id.* at 226. The schedule was not dependent on profits or losses of Castle Harbour. The Court recognized that although the payments were not "ostensibly" required by the Operating Agreement between GECC and the Dutch banks, if the payments were not made the Dutch banks could force the liquidation of Castle Harbour and ultimately receive the reimbursement of the $117.5 million investment plus interest at the Applicable Rate, subject to the possibility of a small adjustment. *Id.* at 227.

- Investment Account for each Dutch bank. *Id.* at 227-28. These accounts "did not hold money but instead kept track of the minimum balance that the Dutch banks would receive upon dissolution." *Id.* at 227. Every year the balance was recalculated to reflect distributions according to Exhibit E and increased by the Applicable Rate. The Operating Agreement provided that at dissolution, if the Investment Account exceeded the capital account, each Dutch bank would receive a "Class A Guaranteed Payment" that was "virtually equal to the difference between these accounts." *Id.* at 228. Together, Exhibit E and the Investment Account provided for repayment to the Dutch banks of their cash investment plus interest at the Applicable Rate, "independent of the operating results of the partnership." *Id.*

- Protection for actual payment to the Dutch banks. *Id.* This included the requirement that Castle Harbour maintain Core Assets equal to 110% of the current value of the banks Investment Accounts, the obligation to maintain insurance protection in the amount of $300 million, and the guaranty issued by GECC that "effectively secured the partnership's obligations to the banks." *Id.*

2270182.11

- The Dutch banks' ability to earn in excess of the Applicable Rate. The banks' upside was "as a practical matter, capped at $2,854,493 (less than 2.5% of their investment) plus 1%." *Id.* at 229.

In reaching its conclusion, the Court of Appeals focused on the "practical realities" of the parties' arrangement, (Exhibit E, Investment Account, Core Financial Assets, casualty insurance, GECC guaranty) rather than "the fictions projected by the partnership agreement." *Id.* at 234-35. The Court was not bound to respect "window dressing designed to give ostensible support to the characterization of equity participation, which was essential to the dominant tax objective, than a meaningful stake in the profits of the venture." *Id.*[5] GECC's contention it can nevertheless allocate 98% of the taxable income of Castle Harbour to the Dutch banks because a mechanical application § 704(e) allows the banks to be treated as owners of a capital interest, and therefore, partners, is without merit.

---

[5] The Treasury Regulations guiding application of §704(e) similarly provide that the practical realities of the parties' arrangement, rather than window dressing, controls. *See* Treas. Reg. 1.704-1(e)(2).

ARGUMENT

A.    The Banks Did Not "Own a Capital Interest" as Required By § 704(e)

1. § 704(e).

Section 704(e), entitled "Family Partnerships,"[6] provides, in relevant part:

> (1) Recognition of Interest Created by Purchase or Gift. – A
> person shall be recognized as a partner for purposes of this subtitle
> if he owns a capital interest in a partnership in which capital is a
> material income-producing factor, whether or not such interest was
> derived by purchase or gift from any other person.

Congress adopted this provision in the Revenue Act of 1951, Pub. L. No. 183, § 340, ch. 521, 65

Stat. 452 at 511, amending the Internal Revenue Code of 1939.   App. C.   Section 340 of the

Revenue Act had a singular purpose, *i.e.*, to address concerns about the treatment of family

partnerships.   Congress added this provision,

> to harmonize the rules governing interests in the so-called family
> partnership with those generally applicable to other forms of
> property or business. Two principles governing attribution of
> income have long been accepted as basic: (1) income from
> property is attributable to the owner of the property; (2) income
> from personal services is attributable to the person rendering the
> services. There is no reason for applying different principles to
> partnership income.

S. Rep. No. 781, 82d Cong., 1st Sess. 38, 39 (1951); H.R. Rep. No. 586, 82d Cong., 1st Sess. 32

(1951).  App. C.  Congress made it clear that this new provision did not require the courts to

wear blinders to the totality of facts and circumstances.

> The amendment leaves the Commissioner and the courts free to
> inquire in any case whether the donee or purchaser actually owns

---

[6] The title of this subsection, "Family Partnerships," accurately reflects the purpose and intended scope of the statute.  Though the title of a statute "alone is not controlling" over the meaning of its text, *I.N.S. v. St. Cyr*, 553 U.S. 289, 308 (2001),  here there is consistency between the title of the statute, its text and legislative history.

2270182.11

the interest in the partnership which the transferor purports to have given or sold him. Cases will arise where the gift or sale is a mere sham. Other cases will arise where the transferor retains so many of the incidents of ownership that he will continue to be recognized as a substantial owner of the interest which he purports to have given away, as was held by the Supreme Court in an analogous trust situation involved in the case of Helvering v. Clifford, (309 U.S. 351) *sic* [309 U.S. 331 (1940)].

H.R. Rep. No. 586, App. C at 29.[7]

---

[7] To the extent GECC implies (Pl. Br. 30.) that through the enactment of § 704(e) Congress intended to overrule or constrain the Supreme Court decisions *Commissioner v. Tower,* (327 U.S. 280) and *Commissioner v. Culbertson*, (337 U.S. 733), GECC's contention is not supported by the legislative history, which explains that Congress was concerned with confusion in the lower courts and at the IRS, not with the Supreme Court decisions themselves:

Although there is no basis under existing statutes for any different treatment of partnership interests, some decisions in this field have ignored the principle that income from property is to be taxed to the owner of the property. Many court decisions since the decision of the Supreme Court in Commissioner v. Culbertson, (337 U.S. 733) have held invalid for tax purposes family partnerships which arose by virtue of a gift of a partnership interest from one member of a family to another, where the donee performed no vital services for the partnership. Some of these cases apparently proceed upon the theory that a partnership cannot be valid for tax purposes unless the intrafamily gift of capital is motivated by a desire to benefit the partnership business. Others seem to assume that a gift of a partnership interest is not complete because the donor contemplates the continued participation in the business of the donated capital. However, the frequency with which the Tax Court, since the Culbertson decision, has held invalid family partnerships based upon donations of capital, would seem to indicate that, although the opinions often refer to 'intention,' 'business purpose,' 'reality,' and 'control,' they have in practical effect reached results which suggest that an intrafamily gift of a partnership interest, where the donee performs no substantial services, will not usually be the basis of a valid partnership for tax purposes. We are informed that the settlement of many cases in the field is being held up by the reliance of the field offices of the Bureau of Internal Revenue upon some such theory. Whether or not the opinion of the Supreme Court in Commissioner v. Tower, (327 U.S. 280) and the opinion of the Supreme Court in Commissioner v. Culbertson,

-8-

2. The Dutch Banks Did Not "Own A Capital Interest."

The Second Circuit, after considering the totality of the facts and circumstances, answered the question of whether the banks' interest was "bona fide equity participation." The Court answered the question with a clear and unequivocal "no."

> We conclude that consideration of this question under *Culbertson's* mandate to appraise the totality of the circumstances compels the conclusion that, for tax purposes, the banks were not bona fide equity partners in Castle Harbour.

459 F. 3d at 241.

GECC's attempt to recast the facts and draw different conclusions than those actually decided by the Second Circuit flies in the face of the Second Circuit's clear holding. *Field v. United States*, 381 F. 3d 109, 113-14 (2d. Cir. 2004) *quoting, United States v. Quintieri*, 306 F.3d 1217, 1229 (2d. Cir. 2002) ("The law of the case ordinarily forecloses relitigation of issues expressly or implicitly decided by the appellate court.") .

In this case, the Second Circuit's opinion included a detailed discussion of the material facts. *Id.* at 224-29. The Court endorsed, with a few exceptions, the trial courts "precise, thorough, and careful findings." *Id.* at 224-25. The import and analysis of the totality of the facts affecting the rights and obligations of the GECC entities and the banks, is a matter already litigated and already decided by the Court of Appeals. The Court of Appeals evaluated key aspects of the agreements that comprised the arrangement between GECC and the Dutch banks.

---

(337 U.S. 733), which attempted to explain the Tower decision, afford any justification for the confusion is not material-- the confusion exists.

S. Rep. No. 781, 82d Cong., 1ˢᵗ Sess. 38, 39 (1951); H.R. Rep. No. 586, 82d Cong., 1ˢᵗ Sess. 32 (1951). There is no doubt that *"Culbertson* is still good law." *Atlas v. United States,* 555 F. Supp. 110, 114 (N.D. Ill. 1982).

2270182.11

It focused on "those aspects of the agreements that compel the reversal of the judgment and the

conclusion that the banks were not bona fide equity participants in the partnership." *Id.* at 225.

The analysis that followed, in Parts I A. (Overview), I B. (Castle harbour's Division of Assets,

Revenues, and Losses), and I C. (Factors Affecting the Proper Characterization of Dutch Banks'

Interests), *id.* at 225-29, is complete and must be accepted in evaluating the possible application

of § 704(e). The Court of Appeals summarized its analysis, *id.* at 229:

> In summary, the Dutch banks' interest in the eight-year partnership
> was essentially as follows:  (1) They were promised the
> reimbursement, on a previously agreed schedule, of their initial
> $117.5 million investment at an agreed annual rate of return;  (2)
> their repayment at the agreed rate of return was secured by the
> personal guaranty of GECC;  (3) they were fully protected against
> risk of loss, except as to a tiny amount in highly unlikely
> circumstances;  and (4) their ability to earn in excess of the agreed
> annual rate by participation in unexpected gains was, as a practical
> matter, capped at $2,854,493 (less than 2.5% of their investment),
> plus 1%.

The Court of Appeals, applying these facts, expressly decided, *id.* at 224, 231 (emphasis

added):

> The facts of the allocation of partnership resources, as set forth in
> the partnership documents (and as found by the district court)
> compel the conclusion that the IRS correctly determined that the
> Dutch banks were not bona fide equity participants in the
> partnership.
>
> * * * *        * * * *        * * * *
>
> [T]he facts of the partnership agreement, as properly found by the
> district court, generally conceded by the taxpayer, and
> unquestionably established by the partnership documents, compel
> the conclusion that the Internal Revenue Service was on sound
> ground in rejecting the partnership's purported characterization of
> the Dutch banks' interest as bona fide equity participation.  In sum,
> the Dutch banks' interest was overwhelmingly in the nature of a
> secured lender's interest, which would neither be harmed by poor
> performance of the partnership, nor significantly enhanced by

-10-

extraordinary profits. The banks had no meaningful stake in the
success or failure of Castle Harbour.

There is no merit to the suggestion implied by the re-analysis of the Castle Harbour

agreements and transaction in GECC's brief that, in remanding this case "for further proceedings

consistent with this opinion," *id.* at 241, this Court may reconsider the nature of the Dutch banks'

interest and reach a conclusion different from the Second Circuit's.

When the Second Circuit's analysis of the facts and its conclusion that the "Dutch banks

were not bona fide equity participants in the partnership" is laid side-by-side with the § 704(e)

requirement that the putative partner must "own a capital interest in the partnership," it is plain

that the banks' interest does not satisfy this requirement of § 704(e). [8]

---

[8] Taxpayer's brief (Pl. Br. 7) glosses over the requirement that capital be a material
income-producing factor in Castle Harbour. Taxpayer assumes that, since the income produced
by the partnership derives from the leasing of aircraft, which is undoubtedly capital, that it
automatically meets this requirement of § 704(e). But taxpayer fails to take the next step, and
link the Dutch banks to the partnership's income-producing capital. The record developed in this
case, and recognized by the Second Circuit, established that an amount equal to 110% of the
Dutch banks' purported contribution to the partnership was placed in and protected by CHLI, the
partnership's wholly-owned corporation. Plainly, the Dutch banks' money had nothing to do
with the capital that produced income for Castle Harbour. If the partnership had needed the
Dutch banks' money, they would not have structured the transaction to require 110% of that
money be safeguarded by CHLI. In other words, the partnership was worse off after the Dutch
banks became involved, because it lost the ability to use money equal to ten percent of the Dutch
banks' so-called contribution. Since the banks' investment was essentially without benefit to the
income-producing capacity of the partnership's airplane leasing business, it was immaterial as an
income producing factor. *See, e.g., Poggetto v. United States*, 302 F.2d 76, 79 (9th Cir. 1972)
(Taxpayers' daughter's "capital contribution was not made to meet the needs of or to benefit the
Sales Division, but was merely a part of appellants' efforts to have [daughter] considered a
member of the partnership for income tax purposes. *Cf. Sparks v. Commissioner*, 238 F.2d 845,
849 (7th Cir. 1956). Since her investment was without benefit to the income-producing capacity
of the Sales Division, it was immaterial as an income-producing factor.")

-11-

B. GECC'S Logic Is Faulty

GECC attempts to diminish the import of the Second Circuit's opinion by arguing, *inter alia*, that (A) the Second Circuit did not expressly state that the banks' interest was debt, (B) therefore the banks' interest must be equity which is an "interest in capital" under § 704(e), and accordingly, (C) the banks must be recognized as partners under § 704(e).

The first problem with GECC's logic is, as discussed above, that the Second Circuit's holding that the "Dutch banks were not bona fide equity participants int the partnership" leaves no room for the conclusion that the banks owned an interest in capital. Any room for argument was removed when the Second Circuit also concluded that the Dutch banks' interest was "in the nature of a secured loan, with an insignificant equity kicker." *Id.* at 241.

The second problem with GECC's logic is that § 704(e) is not a mere mechanical test which allows courts to ignore other facts and circumstances. *Pflugradt v. United States*, 310 F.2d 412, 416 (7th Cir. 1962) ("To be recognized for tax purposes, a transfer of a partnership interest must vest dominion and control in the transferee. Whether or not the transferee has dominion and control is to be determined from all the surrounding facts and circumstances. Treas. Reg. § 1.704-1(e)(1)(iii) (1954 Code). [footnote omitted]"); *Cirelli v. Commissioner*, 82 T.C. 335, 343 (1984); *cf., Evans v. Commissioner*, 447 F.2d 547, 552 (7th Cir. 1971) ("Viewing the record as a whole we cannot say that the Tax Court's finding that Mr. Evans transferred his entire interest to the corporation was clearly erroneous.").

The Treasury Regulations require consideration of all the facts and circumstances in analyzing whether a purported partner is the "real owner of such capital interest." Treas. Reg. 1.704-1(e)(2) ("whether the donee has dominion and control over such interest, must be ascertained from all the facts and circumstances of the particular case. Isolated facts are not

-12-

2270182.11

determinative; the reality of the donee's ownership is to be determined in light of the transaction as a whole.")[9]  The Treasury Regulations provide non-exclusive examples of the facts which should be considered:

- Retained controls.
- Control of or restrictions on distributions.
- Limitation on the right to liquidate or sell an interest.
- Control of assets essential to business.
- Management powers.
- Indirect controls.
- Participation in management.
- Income distributions.
- Conduct of partnership business.

Treas. Reg. 1.704-1(e)(2)(ii).

The factors which the regulations identify as relevant to the determination of whether a person owns an interest in capital are similar to the Second Circuit's analysis of the facts in this case which compelled the conclusion that the banks' interest was not equity.  The Second Circuit analyzed six indicia relevant to the question whether the banks' interest was "more akin to debt than equity." These were: (a) The Banks' Share in the Upside Potential of the Partnership, (b) The Relevance of a "Sum Certain," (c) Whether the Banks' Interest was Subordinated to General Creditors of the Partnership, (d) Right to Enforce Payment of Principal and Interest, (e) Management Rights, and (f) Labels used by the Parties. *Id.* at 233-39.  Application of § 704(e) as explained in the regulations should compel the same conclusion – the banks' interest is not an ownership interest in capital.  The Second Circuit also considered the "fixed percentage in interest payable [to the creditor] regardless of the debtor's income or lack thereof," quoting

---

[9] While the regulations address the situation of a "donee partner" because § 704(e) was enacted primarily to deal with donee partners in family partnerships, the analysis is instructive here as well as it shows that all the facts and circumstances should be considered.

*Gilbert*, 248 F.2d at 402; "reasonable expectation of payment," quoting *Hambuechen v.*

*Commissioner*, 43 T.C. 90, 99 (1964); and the "use to which the [invested] funds were put" and

"whether payment [to the purported creditor] can only be paid out of future profits," quoting

*Hambuchen, id.*, 459 F.3d at 239-240. In addition, the Second Circuit considered, *id.* at 240:

> As explained above, features of the Castle Harbour agreements
> combined to provide the Dutch banks with not only a reasonable
> expectation, but an ironclad assurance that they would receive
> repayment of their principal at the Applicable Rate of return,
> regardless of the success of the Castle Harbour venture.  These
> features included (a) the Exhibit E payment schedules;  (b) the
> Investment Accounts;  (c) the Class A Guaranteed Payments;  (d)
> the requirement for the benefit of the Dutch banks that CHLI
> maintain Core Financial Assets of 110% of the obligation owed to
> the Dutch banks;  (e) the banks' ability to liquidate the partnership
> in certain circumstances and receive reimbursement at the
> Applicable Rate of return;  (f) the $300 million worth of
> casualty-loss insurance, which was obtained by Castle Harbour for
> the benefit of the Dutch banks;  and, most importantly, (g) GECC's
> personal guaranty of the obligations owed by the partnership to the
> Dutch banks.

Application of the regulations to the facts as understood by the Second Circuit, rather

than as recast now by GECC, compels the conclusion that the banks did not own a capital

interest in Castle Harbor.  For example, the Second Circuit explained that the banks' interest was

"in the nature of a secured loan, with an insignificant equity kicker." *id.* at 241, and that much of

the transaction was mere "window dressing" to create the appearance of an equity interest.

Similarly, the regulations provide "To be recognized, a transfer must vest dominion and control

of the partnership interest in the transferee. The existence of such dominion and control in the

donee is to be determined from all the facts and circumstances. A transfer is not recognized if the

transferor retains such incidents of ownership that the transferee has not acquired full and

complete ownership of the partnership interest." Treas. Reg. § 1.704-1(e)(1)(iii), App. C.

-14-

Likewise, the record is clear that a connection ran between Exhibit E of the Operating

Agreement, the capital accounts, the Investment Accounts, and the Class A Guaranteed Payment,

the effect of which was to ensure that the Dutch Banks "would recover the reimbursement of

their initial investment at the Applicable Rate of return." *Id.* at 228.   The regulations similarly

provide that an ownership interest must be "an interest in the assets of the partnership, which is

distributable to the owner of the capital interest upon his withdrawal from the partnership or

upon liquidation of the partnership." Treas. Reg. § 1.704-1(e)(1)(v).

The legislative history of § 704(e) confirms that Congress intended the continued

application of a totality of facts and circumstances analysis.

> The amendment leaves the Commissioner and the courts free to
> inquire in any case whether the donee or purchaser actually owns
> the interest in the partnership which the transferor purports to have
> given or sold him. Cases will arise where the gift or sale is a mere
> sham. Other cases will arise where the transferor retains so many
> of the incidents of ownership that he will continue to be recognized
> as a substantial owner of the interest which he purports to have
> given away, as was held by the Supreme Court in an analogous
> trust situation involved in the case of Helvering v. Clifford, (309
> U.S. 351).

S. Rep. No. 781, 82d Cong., 1st Sess. 38, 39 (1951); H.R. Rep. No. 586, 82d Cong., 1st Sess. 32

(1951).  And, nothing in the statute or the regulations suggests that a person who is not bona fide

equity partner can, at the same time, "own a capital interest" within the meaning of §704(e).

Thus, contrary to GECC's conclusion, the totality of the facts and circumstances compels the

conclusion that the banks did not "own a capital interest" within the meaning of § 704(e).  The

discussion at pages 9 through 13 of plaintiff's brief is nothing but a rehash of its arguments to the

Second Circuit, which the Second Circuit rejected because they amount to nothing but "window

2270182.11

dressing."[10]  *Id.* at 236.  "The partnership interests of the Dutch banks were designed to have a superficial appearance of equity participation, but in the end (in all but a negligible part) to function in the manner of a repayment of a secured loan."  *Id.* at 227.[11]

There is no merit to plaintiff's contention that "established tax principles" support a finding that the Dutch banks' interest satisfies the statutory and regulatory requirements of § 704(e) and the regulations thereunder.  (Pl. Br. 39-46).  The Second Circuit's opinion in this case thoroughly considered established tax principles and reached conclusions adverse to GECC's current contentions regarding § 704(e).  Indeed, the Second Circuit cited the two cases initially relied upon by the plaintiff (Pl. Br. 39): *Jewel Tea Co. v. United States,* 90 F.2d 451, 453 (2d Cir.1937) (L. Hand, J.), *id.* at 239, and *Commissioner v. O.P.P. Holding Corp.*, 76 F.2d 11, 12 (2d Cir.1935), *id.* at 232.  Plaintiff cites no authority that considered facts similar to this case that supports its apparent contention that for purposes of § 704(e) an all facts and circumstances review would result in a determination other than that rendered by the Second Circuit.  Applying well established tax principles, the Second Circuit reached conclusions which also preclude the conclusion that the banks' "owned a capital interest" within the meaning of § 704(e).  For example, GECC contends that "[t]he Banks' yield was more dependent on the Partnership's operations than that of most preferred shareholders," (Pl. Br. 42)  but that assertion is directly

---

[10]  Plaintiff admits that its analysis is inconsistent with both a finding of this Court (Pl. Footnote 16) and the Second Circuit's opinion (Pl. Br. 13).

[11]  Contrary to the plaintiff's apparent contention, the Second Circuit's decision did not validate the determination that the plaintiff and the Dutch banks did not engage in a sham transaction.  459 F.3d. at 231, n11.  The Second Circuit stated that it was "unnecessary to consider whether the district court correctly determined that the characterization of the banks' interest as equity was not a sham."  *Id.*

2270182.11