

# GE Capital

# Presentation to McManus & Miles

## May 14, 1992



0097278

## GE CAPITAL PORTFOLIO SECURITIZATION   OVERVIEW

# GE Capital Objectives:

- Access liquidity in marketplace to meet industry's growing demand

- Tap into wider pool of investor capital

- Achieve off-balance financing for a portion of current portfolio

0097279

## GE CAPITAL PORTFOLIO SECURITIZATION — OVERVIEW

# Options for Consideration:

- Securitize pool of aircraft lease rental streams

- Seek partner to contribute cash and/or aircraft to partnership leveraged by securitized debt

- Other alternatives as you may suggest

## GE CAPITAL PORTFOLIO SECURITIZATION — OVERVIEW

# Proposal Specifications:

- Structures and benefits achieved
- Equity and debt sources
- Credit enhancement requirements
- Your organization:
    - role
    - pertinent experience
    - assigned team members
- Timetable: June 3, 1992



GE Capital

May 14, 1992

Dear Mr.

GE Capital is hereby inviting your participation in an important project in the commercial aviation industry.

Over $480 Billion of capital is needed for the industry in the next 10 years, of which only $250 Billion is identified. Since no investor in this industry today can realistically expect to meet the need, new investors are clearly needed.

Accordingly, we seek to find new investors by re-packaging about $2 Billion of our investments and selling them to new investors over a 1-2 year period. The resulting liquidity would in turn enhance our ability to provide additional financing to the industry.

## Process

We believe others can help us accomplish this objective in ways that are detailed below. In addition to yourselves, we have selected a few others around the world to make suggestions on how best to accomplish this objective.

We are requesting your thoughts by June 3, 1992 in any format you choose. By mid-June, we hope to have narrowed the field of possible advisors/participants to 1 or 2, before implementing the recommendations made.

0097282

## Options Being Considered

We are considering essentially two courses of action, both involving securitization of debt:

1. Sale of securitized pool of aircraft lease streams.

2. Sale to a partnership, leveraged by the sale of securitized debt instruments, of 15-20 single investor leases.

We seek a sale of assets at the higher of book or fair market value. Our book values will be included in the "Information Package".

This project is being undertaken jointly by the Transportation and Industrial Funding Corporation and Polaris Aircraft Leasing Corporation. As such, the assets in question include loans, operating leases, and full-payout (single investor) leases.

We have assembled a team of aviation, syndication, securitization, leasing, and legal experts to address this project.

## Confidentiality

As you gather thoughts and prepare your suggestions, we recognize that you may wish to speak to others outside your organization. Please do not do so until we talk. If each possible advisor/participant began soliciting potential investors and discussing the matter with rating agencies at this preliminary stage, the program could be jeopardized.

Once you have signed and returned the enclosed confidentiality letter, we will send you the "Information Package" which details the transactions (through 3/31/92) that we consider appropriate for this project. It is our hope that such information will help you in making more useful recommendations.

## Recommendations

There are several issues that confront us as we attempt to accomplish our objective. We would invite your comments on as many of these as possible:

- Structure

    - One of the above structures, or an alternative
    - If you suggest an alternative, let's discuss why
    - Repeated use of recommended structure:
        a. In a pooled arrangement, or,
        b. As each subsequent investment is made.

- Equity Sources

    - Types (tax vs cash-on-cash; financial vs. industrial)
    - Contribution of assets or cash (and if assets, how to minimize the issues with valuation of those assets).

- Extent, if any, to which enhancement of credit quality will be needed, and how that enhancement should be structured.

- Your experience in:
    a. Securitizing aviation assets
    b. Placing such assets worldwide,
    c. Securing equity, if applicable

- Identify experiences of individuals assigned to work with us.

We want to be sure to understand the role that you would propose for yourself. We recognize that it may range from advisor to equity investor. Whatever the case, please be explicit on your fee expectations. We would prefer fees contingent on success. As to costs incurred during preparation of the proposal, we expect you to cover your own as we have ours.

Should you have any questions or comments about this letter, the enclosed confidentiality letter or the proposed program, please call either one of us at the numbers below. We look forward to hearing from you

Sincerely,

W. E. Barker
Executive Vice President
Transportation & Industrial Funding
GE Capital Corporation

Howard L. Feinsand
Senior Vice President
Polaris Aircraft Leasing Corp.

0097285

# TRANSFER RESTRICTIONS SUMMARY – TIFC PORTFOLIO

| Airline | Structure | Number of A/C | A/C Type | Year of Mfg | Lease Start | Lease End | Tail Numbers |
|---|---|---|---|---|---|---|---|
| AEROMEXICO | OPLSE | 1 | MD-82 | 1984 | 1991 | 1999 | XA-ADF |
| | OPLSE | 1 | MD-82 | 1985 | 1991 | 1999 | XA-AMQ |

**Transfer Restrictions**
- Transferee is bank/financial institution with net worth of at least $25mm and A/C leasing experience
- Lessee has right of first refusal on any sale
- Lessee has 1999 FMV purchase option
- Qualified Mexican legal opinion (US judgments might not be enforceable in Mexico)
- QECC absorbs the tax on gross-up for withholding tax

| AMERICAN | SL/DD | 3 | A300B4-605R | 1988 | 1988 | 2008 | N7055A, N80057, N14061 |
| | SL/DD | 3 | A300B4-605R | 1989 | 1989 | 2009 | N18066, N25071, N70073 |
| | SL | | SP Eng | | | | |
| | SL | | Sp Eng | | | | |

**Transfer Restrictions**
- American has 30 day termination option for first 10 years if fee paid or delivery of A300/A340 accepted
- Sublease to AUR not assignable without American's consent unless GE remains primary obligor/sublessor
- Headlease not assignable without French lessor consent
- $100mm net worth requirement for sublease transfer

| AMERICAN | SL/DD | 3 | B767-323ER | 1988 | 1988 | 2008 | N355AA, N358AA, N363AA |

**Transfer Restrictions**
- No liens other than Japanese lease
- Need consent of Japanese lessor for transfer of GE interest
- Japanese lessor has termination option in the event of Japanese tax law change

| US AIR | SL | 11 | B737-400 | 1990 | 1990/91 | 2011 | N441US, N443US, N770AU, N777AU, N778AU, N780AU, N775AU, N449AU, N445AU |

**Transfer Restrictions**

General
- Transferee assumes obligations in writing
- Transferee is bank/financial institution with net worth of at least $75mm (may be met by parent guarantee)
- Transfer would not violate securities laws of ERISA
- Transferee is not affiliate or member of controlled group with more than 10% in airline revenues
- Transferee is US citizen for AA purposes
- Only 1 owner participant after transfer unless among affiliates or unless the transferee is QECC
- No more than 3 transfers unless among affiliates or unless the transferee is QECC
- QECC may transfer less than all its interest to a US citizen where its net worth alone and which does not meet the $75mm test if QECC remains obligated

0097286

| Lessee | Number of A/C | A/C Type | Year of Mfgr | Lease Start | Lease End | Tail Numbers |
|---|---|---|---|---|---|---|
| US AIR | 15 | B737-300 | 1989 | 1991/92 | 2005 | N300AU, N374US, N375US, N376US, N383US, N393US, N394US, N395US, N396US, N392US, N384US, N381US, N372US, N397US, N371US |

**Transfer Restrictions**
General
- Transferee assumes obligations in writing
- Transferee is bank/financial institution with net worth of at least $75mm (may be met by parent guarantee)
- Transfer would not violate securities laws or ERISA
- Transferee is not airline or member of consolidated group with more than 10% of gross revenues
- Transferee is US citizen for FAA purposes
- Only 1 owner participant after transfer unless all other terms complied with or unless GECC is transferor
- No more than 3 transfers unless among affiliates or unless the transferor is GECC

- GECC may transfer lease then all its interest to a US citizen which is not an airline and which does not meet the $75mm test if GECC remains obligated

Indemnities
- General indemnities are extended to transferee except:
  - If limited partners is airline, non-US citizen, or unable to meet $75mm test
  - Indemnitee "unable to" a voluntary transfer
  - Indemnities associated with transaction costs of the transfer

Leveraging
- Owner Trustee may issue debt rated at least AA by S&P or as by Moody's if FMV of USAir aircraft is less than 25% of the debt securing the debt
- GECC may transfer to a partnership with 5 or less general partners if general restrictions are met
- Limited partners are not subject to the financial or citizen requirements but cannot be an airline

| Lessee | Number of A/C | A/C Type | Year of Mfgr | Lease Start | Lease End | Tail Numbers |
|---|---|---|---|---|---|---|
| US AIR | 10 | B737-225 | 1983 | 1991 | 2006 | N502EA, N503EA, N504EA, N506EA, N509EA, N511EA, N512EA, N513EA, N514EA, N515EA |

**Transfer Restrictions**
Same as above for: General, Indemnities and Leverage

TBT:
- GECC remains liable for loss by TBT lessor of tax benefits due to a "disqualifying event"
- Transfer of GECC's interest can trigger TBT tax indemnities particularly if no CC requirements are not met
- USAir indemnified GECC for USAir's actions/omissions which trigger GECC TBT tax indemnity obligations

Leverage.
- TBT lease do not permit encumbrance of the TBT lessor's rights in the aircraft

09:07 AM

PMC EQUITY PLACEMENT

| Operator | Aircraft Model | Manu Date | Regis. Num. | S/N | Engine Type | Exp. Date/ Renewal Term | Restrictions/ Comments |
|---|---|---|---|---|---|---|---|
| Aerovias | DC-10-30 | 1974 | XA-AMR | 46931 | CF6-50C2 | 10/01/96/ 10/01/99 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Mexican registration; VAT ax/Renewal option of one three year period |
| Aerovias | DC-10-30 Spare Engine | 1974 | N417DG | 46938 | CF6-50C | 04/16/94/ 04/16/99 | Right of 1st refusal on purchase/Renewal option of not less than one or more than five years. |
| Aerovias | DC-10-30 Spare Engine | 1974 | N8228P | 46937 | CF6-50C2 | 05/15/94/ 05/15/99 | FMV Purchase option at end of 5-year renewal term only/Renewal option of one five-year period. |
| Aerovias | MD-88 Spare engine | 1990 | XA-AMS | 49926 | JT8D-219 | 05/31/00/ 05/31/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Mexican registration/Renewal option of one three year or one five year period. |
| Aerovias | MD-88 Spare engine | 1990 | XA-AMT | 49927 | JT8D-219 | 05/31/00/ 05/31/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Mexican registration/Renewal option of one three year or one five year period. |
| Aerovias | MD-88 | 1990 | XA-AMU | 49928 | JT8D-219 | 08/01/00/ 08/01/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Mexican registration/Renewal option of one three year or one five year period. |
| Aerovias | MD-88 | 1990 | XA-AMV | 49929 | JT8D-219 | 09/01/00/ 09/01/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Mexican registration/Renewal option of one three year or one five year period. |
| Aerovias | MD-88 | 1991 | N168PL | 53174 | JT8D-219 | 06/01/01/ 06/01/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Renewal option of one three year or five year period. |
| Aerovias | MD-88 | 1991 | N169PL | 53175 | JT8D-219 | 06/30/01/ 06/30/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Renewal option of one three year or five year period. |
| Continental | MD-82 | 1982 | N13691 | 49102 | JT8D-217 | 02/03/01/ | Lessee may enter into a wet-sublease or ordinary sublease. |
| Continental | MD-82 | 1982 | N14890 | 49114 | JT8D-217 | 02/03/01/ | Lessee may enter into a wet-sublease or ordinary sublease. |
| Continental | DC-10-30 | 1982 | HB-IHN | 48292 | CF6-50C2B | 10/01/92/ 10/01/95 | Month to month lease, renewable at Continental's option for 36 months. Monthly lease designed to hedge bankruptcy risks Lease affirmed by bankruptcy court. |

0097288

09:07 AM

## PHC EQUITY PLACEMENT

| Operator | Aircraft Model | Manu Date | Regis. Num. | S/N | Engine Type | Exp. Date/ Renewal Term | Restrictions/ Comments |
|---|---|---|---|---|---|---|---|
| Continental | DC-10-30 | 1982 | HB-IHO | 46293 | CF6-50C2B | 10/01/92/ 10/01/95 | Month to month lease, renewable at Continental's option for 36 months. Monthly lease designed to hedge bankruptcy risks. Lease affirmed by bankruptcy court. |
| Kuwait Airways | A310-300 | 1988 | A6-KUA | 447 | CF6-80C2A2 | 05/31/93 | Early term not sooner than 14 months after delivery subject to a backstop rent of $437,500/mo. beginning on the Early Termination Date to the Original Expiration Date or until Lessor re-leases the Aircraft, whichever date occurs first. |
| Kuwait Airways | A310-300 | 1988 | A6-KUB | 448 | CF6-80C2A2 | 05/31/93 | Early term not sooner than 14 months after delivery subject to a backstop rent of $437,500/mo. beginning on the Early Termination Date to the Original Expiration Date or until Lessor re-leases the Aircraft, whichever date occurs first. |
| Kuwait Airways | A310-300 | 1988 | A6-KUC | 472 | CF6-80C2A2 | 03/31/93 | Early term not sooner than 12 months after delivery subject to a backstop rent of $437,500/mo. beginning on the Early Termination Date to the Original Expiration Date or until Lessor re-leases the Aircraft, whichever date occurs first. |
| Kuwait Airways | A310-300 | 1988 | A6-KUD | 461 | CF6-80C2A2 | 05/31/93 | No early term. |
| Kuwait Airways | A310-300 | 1988 | A6-KUE | 475 | CF6-80C2A2 | 03/31/93 | No early term. |
| Midwest Exp | MD-88 | 1989 | N701ME | 49760 | JT8D-219 | 02/28/95/ 02/28/98 | Renewal option of one three year period. |
| Midwest Exp Midwest Exp | MD-88 Spare Engine | 1989 | N601ME | 49762 | JT8D-219 | 03/31/95/ 03/31/98 | Renewal option of one three year period. |
| Olympic | A300B4-103 | 1979 | SX-BEB | 46 | CF6-50C2 | 05/31/94/ 05/31/96 | Re-negotiations in process re timing of lessee's conversion of all A/C to A300B4-200s./Right of first refusal on sale. |
| Olympic | A300B4-103 | 1979 | SX-BEC | 56 | CF6-50C2 | 05/31/94/ 05/31/96 | Right of first refusal on sale. |
| Olympic | A300B4-103 | 1980 | SX-BED | 58 | CF6-50C2 | 05/31/95/ 05/31/97 | Right of first refusal on sale. |

0097289

12/2    09:07 AM

## PHC EQUITY PLACEMENT

| Operator | Aircraft Model | Manu Date | Regis. Num. | S/N | Engine Type | Exp. Date/ Renewal Term | Restrictions/ Comments |
|---|---|---|---|---|---|---|---|
| Olympic | A300B4-103 | 1980 | SX-BEE | 103 | CF6-50C2 | 05/31/96/ 05/31/98 | Right of first refusal on sale. |
| Philippine | DC-10-30 | 1980 | RP-C2114 | 47836 | CF6-50C2 | 01/31/98/ 01/31/00 | Early term possible upon or after 01/31/96 with Lessee paying Lessor an amount determined by multiplying Basic Rent by an Early Termination Factor ranging between 2.041 and 0.085 depending upon the termination date. |
|  |  |  |  |  |  | 11/31/98 |  |

e column following the rental rate, abbreviations are as follows:
= monthly rate, paid monthly
= monthly rate, paid quarterly
= monthly renewal rate, paid as shown on preceding line

ation date is shown on first line and ends with a "/"
atest possible renewal termination date is indicated on line beneath expiration date.

0097290



GE Capital

May 14, 1992

McManus & Miles
350 Park Avenue, 16th Floor
New York, NY  10022

Attn:   Mr. Linsay McManus

Re:   General Electric Capital Corporation - Aircraft Financing Joint
      Venture/Co-Investor Arrangement Confidentiality Agreement between
      General Electric Capital Corporation and McManus & Miles

Dear Mr. McManus:

   Reference is made to the above-referenced potential transaction (the "Potential Transaction") between General Electric Capital Corporation ("GE Capital") and certain potential investors. In connection with the Potential Transaction, ("Potential Advisor") may be retained as advisor to GE Capital and may participate as investor. Potential Advisor (or one or more of Potential Advisor's agents, employees or representatives) may from time to time receive or otherwise obtain access to oral and written information which may be non-public, proprietary or confidential in nature concerning the Potential Transaction or other transactions consisting of aircraft financings in which GE Capital and the potential investors may invest or participate pursuant to the Potential Transaction. Such information, together with any analyses, compilations, studies, notes or other materials prepared by Potential Advisor or GE Capital, or by any of the agents, employees or representatives of either of such parties, and together with the information referred to in paragraph 3 below, is hereinafter referred to as the "Confidential Information." (For purposes of this letter agreement, the terms "agents", "employees" and "representatives" include, without limitation, directors, officers, partners and affiliates, and financial, legal and other advisors.) Potential Advisor acknowledges that any unauthorized use or disclosure of any of the Confidential Information will cause substantial and irreparable damage to GE Capital and to the business and competitive position of GE Capital and that the Confidential Information is being provided to Potential Advisor in confidence and in accordance with the following terms and conditions:

0097291

1. Confidential Information is being provided to Potential Advisor and developed by Potential Advisor solely for the purpose of enabling Potential Advisor to develop a proposal to offer advisory services to GE Capital (it being understood and agreed by both parties hereto that the providing of such Confidential Information shall not constitute or be evidence of a retention of Potential Advisor to provide advisory services) and, as an investor, to evaluate and conduct due diligence, in connection with the Potential Transaction.

2. Potential Advisor agrees that the Confidential Information shall be kept confidential and shall not, without GE Capital's prior written consent or as expressly otherwise provided herein, be disclosed by Potential Advisor or any of its agents, employees or representatives, in any manner whatsoever, in whole or in part, and shall not be used by Potential Advisor or any of its agents, employees or representatives, other than for the purpose described in paragraph 1 above and in accordance with the terms of this letter agreement. Potential Advisor agrees to transmit the Confidential Information only to those of its agents, employees and representatives who need to know the Confidential Information for such purpose and who are informed by Potential Advisor of the Confidential nature of the Confidential Information and the terms of this letter agreement. Upon request, Potential Advisor shall inform GE Capital of each professional who is permitted to have access to any of the Confidential Information, and Potential Advisor shall be responsible to GE Capital for any breach of this letter agreement by any of Potential Advisor's agents, employees or representatives.

3. Potential Advisor further agrees not to disclose to any party (i) the fact that Potential Advisor has been approached to submit a proposal to provide advisory services in connection with the Potential Transaction, and has been provided with any Confidential Information, (ii) the fact that the Potential Transaction is being or may be considered, or (iii) any terms or conditions of, or other facts or information concerning, the Potential Transaction or the transactions included in the Confidential Information (all of the information referred to in this paragraph 3 being considered to be a part of the Confidential Information).

4. Potential Advisor's confidentiality obligations under this letter agreement shall not apply to any of the Confidential Information which Potential Advisor can clearly demonstrate falls within either of the following at the time of the disclosure thereof by Potential Advisor or any of its agents, employees or representatives:

    (a) Confidential Information which has come within the public domain through no fault of or action by Potential Advisor or any of its agents, employees or representatives; or

    (b) Confidential Information (other than the information referred to in paragraph 3 above) which is in Potential Advisor's possession on the date hereof or is obtained by Potential Advisor after the date hereof from any third party (for this

purpose a "third party" shall not include GE Capital or any of its agents, employees or representatives of any of the foregoing), provided that such Confidential Information was obtained by or provided to Potential Advisor lawfully and not in violation of any contractual, fiduciary or legal obligation of any person or entity to GE Capital or any other party.

Moreover, Potential Advisor shall have the right to disclose Confidential Information which Potential Advisor is required to disclose by court order or pursuant to the published rules and regulations of a governmental agency or body, in either case having jurisdiction over Potential Advisor, to the extent so required by such court order or the published rules and regulations of such governmental agency or body; provided, however, that prior to any such disclosure Potential Advisor shall (i) notify GE Capital promptly in writing of any order, request or intention by Potential Advisor to make such disclosure and of the facts and circumstances surrounding such order, request or intention so that GE Capital may seek an appropriate protective order or otherwise take action to prevent such disclosure, (ii) consult with GE Capital with respect to the need for and the form of such disclosure, and (iii) cooperate with GE Capital in any proceeding to obtain an appropriate protective order or other action by GE Capital to prevent such disclosure.

5. Potential Advisor shall promptly provide GE Capital with notice of any actual or threatened breach of any of the terms of this letter agreement or unauthorized use or disclosure of any of the Confidential Information.

6. The Confidential Information, and all copies thereof or of any portion thereof, except for that portion of the Confidential Information which consists of analyses, compilations, studies, notes or other materials prepared by Potential Advisor or its agents, employees or representatives, shall be returned (without retaining any copies thereof) to GE Capital immediately upon its request. That portion of the Confidential Information which consists of analyses, compilations, studies, notes or other materials prepared by Potential Advisor or any of its agents, employees or representatives shall be held by Potential Advisor and kept confidential and subject to the terms of this letter agreement, or destroyed at GE Capital's request.

7. In the event that Potential Advisor breaches any of its agreements made in this letter agreement, Potential Advisor agrees that it would be extremely impracticable and difficult to measure the resulting damages; accordingly, in addition to any other rights and remedies GE Capital may have, Potential Advisor agrees that GE Capital may sue in equity for specific performance, and Potential Advisor expressly waives the defense that a remedy in damages will be adequate. Potential Advisor also agrees, in the event that GE Capital shall prevail in an action against Potential Advisor or any of its agents, employees or representatives for breach of this letter agreement in which it is determined in a final judgment by a court that GE Capital suffered or incurred losses or damages resulting primarily from a breach by Potential Advisor or any of its agents, employees or representatives, that Potential

Advisor will reimburse GE Capital for the reasonable attorney's fees and expenses incurred in connection with such action.

8. It is understood that this letter agreement does not obligate either party to enter into any further agreement. Potential Advisor will conduct its own independent review of the relevant documentation, information and legal, accounting and other issues. Potential Advisor will be given a reasonable opportunity to review such documentation, to receive such information and to conduct such other due diligence procedures, including asking questions of appropriate personnel at GE Capital, as Potential Advisor may reasonably request. GE Capital makes no representation or warranty as to the accuracy or completeness of any documentation or information provided or to be provided to Potential Advisor.

9. No failure or delay on GE Capital's part in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

10. This letter agreement shall be governed by and construed in accordance with the laws of the State of New York. Potential Advisor consents to the non-exclusive jurisdiction of the courts of the State of New York and of the United States District Court for the Southern District of New York in any action brought in connection with this letter agreement and acknowledges that venue is appropriate and convenient in any of such courts.

11. This letter agreement shall be binding on Potential Advisor and its agents, employees, representatives, successors and assigns and shall inure to the benefit of and be enforceable by GE Capital. Unless the Confidential Information becomes public (through no fault of or action by Potential Advisor or any of its agents, employees or representatives) at an earlier date, Potential Advisor's obligations hereunder and those of its agents, employees and representatives shall terminate three (3) years from the date of this letter agreement. Termination shall not release any party hereto from any liability which at the time thereof has already accrued or arisen.

0097294

Please sign, date and return the enclosed copy of this letter agreement in the place designated, if it accurately reflects our mutual understanding concerning Confidential Information.

Very truly yours,

GENERAL ELECTRIC
CAPITAL CORPORATION

By: /s/ W.E. Bowler

POLARIS AIRCRAFT LEASING

By: _____

Approved and Accepted

McManus & Miles

By: _____

Date: _____, 1992

0097295