

# GE Capital

# Presentation to
# Kidder Peabody & Company

## May 14, 1992


PLAINTIFF'S EXHIBIT

## _GE CAPITAL PORTFOLIO SECURITIZATION_      _OVERVIEW_

# GE Capital Objectives:

- **Access liquidity in marketplace to meet industry's growing demand**

- **Tap into wider pool of investor capital**

- **Achieve off-balance financing for a portion of current portfolio**

0097253

*GE CAPITAL PORTFOLIO SECURITIZATION*        *OVERVIEW*

# Options for Consideration:

- **Securitize pool of aircraft lease rental streams**

- **Seek partner to contribute cash and/or aircraft to partnership leveraged by securitized debt**

- **Other alternatives as you may suggest**

## GE CAPITAL PORTFOLIO SECURITIZATION    *OVERVIEW*

# Proposal Specifications:

- **Structures and benefits achieved**
- **Equity and debt sources**
- **Credit enhancement requirements**
- **Your organization:**
    - **role**
    - **pertinent experience**
    - **assigned team members**
- **Timetable:  June 3, 1992**

0097255



GE Capital

May 14, 1992

Kidder Peabody & Company
10 Hanover Square, 7th Floor
New York, NY  10005

Attn:  Mr. Douglas T. Tansill

Dear  Mr. Tansill:

GE Capital is hereby inviting your participation in an important project in
the commercial aviation industry.

Over $480 Billion of capital is needed for the industry in the next 10 years,
of which only $250 Billion is identified. Since no investor in this industry
today can realistically expect to meet the need, new investors are clearly
needed.

Accordingly, we seek to find new investors by re-packaging about $2 Billion
of our investments and selling them to new investors over a 1-2 year
period.  The resulting liquidity would in turn enhance our ability to provide
additional financing to the industry.

**Process**

We believe others can help us accomplish this objective in ways that are
detailed below.  In addition to yourselves, we have selected a few others
around the world to make suggestions on how best to accomplish this
objective.

We are requesting your thoughts by June 3, 1992 in any format you choose.
By mid-June, we hope to have narrowed the field of possible
advisors/participants to 1 or 2, before implementing the recommendations
made.

0097256

## Options Being Considered

We are considering essentially two courses of action, both involving securitization of debt:

1.    Sale of securitized pool of aircraft lease streams,

2.    Sale to a partnership, leveraged by the sale of securitized debt instruments, of 15-20 single investor leases.

We seek a sale of assets at the higher of book or fair market value.  Our book values will be included in the "Information Package".

This project is being undertaken jointly by the Transportation and Industrial Funding Corporation and Polaris Aircraft Leasing Corporation.  As such, the assets in question include loans, operating leases, and full-payout (single investor) leases.

We have assembled a team of aviation, syndication, securitization, leasing, and legal experts to address this project.

## Confidentiality

As you gather thoughts and prepare your suggestions, we recognize that you may wish to speak to others outside your organization.  Please do not do so until we talk.  If each possible advisor/participant began soliciting potential investors and discussing the matter with rating agencies at this preliminary stage, the program could be jeopardized.

Once you have signed and returned the enclosed confidentiality letter, we will send you the "Information Package" which details the transactions (through 3/31/92) that we consider appropriate for this project.  It is our hope that such information will help you in making more useful recommendations.

## Recommendations

There are several issues that confront us as we attempt to accomplish our objective.  We would invite your comments on as many of these as possible:

0097257

- Structure

    - One of the above structures, or an alternative
    - If you suggest an alternative, let's discuss why
    - Repeated use of recommended structure:
        a. In a pooled arrangement, or,
        b. As each subsequent investment is made.

- Equity Sources

    - Types (tax vs cash-on-cash; financial vs. industrial)
    - Contribution of assets or cash (and if assets, how to minimize the issues with valuation of those assets).

- Extent, if any, to which enhancement of credit quality will be needed, and how that enhancement should be structured.

- Your experience in:
    a. Securitizing aviation assets
    b. Placing such assets worldwide,
    c. Securing equity, if applicable

- Identify experiences of individuals assigned to work with us.

We want to be sure to understand the role that you would propose for yourself. We recognize that it may range from advisor to equity investor. Whatever the case, please be explicit on your fee expectations. We would prefer fees contingent on success. As to costs incurred during preparation of the proposal, we expect you to cover your own as we have ours.

Should you have any questions or comments about this letter, the enclosed confidentiality letter or the proposed program, please call either one of us at the numbers below.  We look forward to hearing from you

Sincerely,


W. E. Barker
Executive Vice President
Transportation & Industrial Funding
GE Capital Corporation

Howard L. Feinsand
Senior Vice President
Polaris Aircraft Leasing Corp.

0097259

# TRANSFER RESTRICTIONS SUMMARY - TFC PORTFOLIO

| Airline | Banking | Number AL/AC | A/C Type | Year of Mfg | Lease Start | Lease End | Tail Number |
|---|---|---|---|---|---|---|---|
| AEROMEXICO | OPLSE OPLSE | 1 | MD-82 MD-82 | 1991 1985 | 1991 1991 | XA-AMF XA-AMO | |
| AMERICAN | 8L/DO 8L/DO 8L 8L | 3 | A90004-009A A90004-009A | 1986 1986 | 1986 1986 | 2008 N7056A, N60057,N51001 2009 N10006, N71007, N70073 | |

**Transfer Restrictions**
- Transfers to Bank/financial lessees with net worth of at least $25mm and A/C leasing experience.
- Lessee has right of first refusal on any sale.
- Lessee has 1989 F&V purchase option.
- Lessee has 1989 F&V purchase option.
- Crossing Master/rogini option (US judgement only) arises exercisable in Mexico)
- OECC accepts me as on gross-up for withholding tax

| AMERICAN | 8L/DO 8L/DO 8L 8L | 3 | B767-323ER | 1988 | 1988 | 2006 N39504, N39504, N39504 | |

**Transfer Restrictions**
- American has 30 day exercise option for first 10 years if the pool at default of A330/A340 accepted
- Sublease to AMR and assignable without American's Consent unless OE remain primary obligor/sublessor.
- Purchases and assignable without France lessor consent.
- $100mm net worth requirement for sublease lessees.

**Transfer Restrictions**
No liens other than Japanese lease.
Need Consent of Japanese lessor for transfer of OE interest.
Japanese lessor has terminate option in the event of Japanese tax law change.

| | 8L | 11 | B737-400 | 1990 | 1990/91 | 2011 N143US, N411US, N431US, N777AU N778AU, N780AU, N774AU, N775AU, N440AU N440AU | |

**Transfer Restrictions**
General:
- Transfers assumes obligations in writing.
- Transfers to bank/financial institution with net worth of at least $75mm (may be entity parent guarantee).
- Transfer would not violate securities/laws of ERISA.
- Transfer or sublease to members of consolidated group with more than 10% in arms/exchange
- Transfer to US citizen for FAA purpose.
- Only 1 sublease permitted after transfer unless all other terms complied with or unless OECC is transferor.
- No more than 3 transfers unless among affiliate of the transferor is OECC.
- OECC may transfer less than all its interest in a US citizen which is not an airline and which does not meet the $75mm net / OECC remains obligated.

0097260

| Structure | Number BLAAC | AIC type | Years of Mfr | Lease Exec | Tail Lease Numbers |
|---|---|---|---|---|---|
| SL | 15 | 6737-300 | 1989 | 1991/92 | 2005 N200AU, N271US, N271US, N272US, N332US, N353US, N354US, N332US, N364US, N391US, N371US, N371US |
| 8L | 10 | 6737-225 | 1988 | 1991 | 2005 N605EA, N606EA, N606EA, N606EA, N514EA, N515EA, N515EA, N515EA, N515EA |

**Lessee Assurance**

General:
- Transferee assumes obligations in writing.
- Transferee is a non-financial lessor with net worth of at least $75mm (maybe met by parent guarantee).
- Transferee is not within securities laws of ERISA.
- Transfer would not violate securities laws of ERISA.
- Transferee is not a/an a/c or a member of consolidated group with more than 10% in above covenant.
- Transferee is US citizen for FAA purposes.
- Only 1 owner participant after transfer unless all other terms complied with or unless OECC is transferor.
- No more than 3 transfers unless among affiliates or unless the transferor is OECC.

- OECC may transfer lease when all its interest in a US citizen which is not an affiliate and which does not meet the $75mm test if OECC remains obligated.

Indemnities:
- General indemnities are obligated to transferee except:
  * if limited partner is unitary, see – US citizen, or unable to meet $75mm test.
  * indemnities "attributable" to voluntary transfer.
  * indemnities associated with transaction costs of the transfer.

Leverage:
- Owner Trustee may incur debt secured at least AA by S&P or at by Moody's if N/W of USRA aircraft has less than 25% of the assets securing the debt.
- OECC may transfer to a partnership with 6 or less general partners if general transferee are as met.
- Limited partner are not subject to financial or ERISA requirements but can met as an affiliate.

TBT:
- OECC remains liable for loss by TBT lessor at all benefits due to a "disqualifying event".
- Transfer of OECC's interest can trigger TBT indemnities publicity if notice requirements are not met.
- USRA indemnified OECC for USRA's circumstances which trigger OECC TBT indemnity obligations.

Leverage:
- TBT leases do not permit encumbrance of the TBT lessor's rights in the aircraft.

**Transfer Restrictions**
Same as above for: General, Indemnities and Leverage

0097261

12-MAY-92
09:07 AM

## PMC Equity Placement

| Operator | Aircraft Model | Manu Date | Regis. Num. | S/N | Engine Type | Exp. Date/Renewal Term** | Restrictions/Comments |
|---|---|---|---|---|---|---|---|
| erovias | DC-10-30 | 1974 | XA-AMR | 46931 | CF6-50C2 | 10/01/92 / 10/01/99 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Mexican registration; VAT/Renewal option of one three year period. |
| erovias | DC-10-30 | 1974 | N417DQ | 46838 | CF6-50C | 04/16/94 / 04/16/99 | Right of 1st refusal on purchase/Renewal option of not less than one or more than five years. |
| erovias | DC-10-30 Spare Engine | 1974 | N6228P | 48937 | CF6-50C2 | 06/15/94 / 06/15/99 | FMV Purchase option at end of 5-year renewal term only/Renewal option of one five-year period. |
| erovias | DC-10-30 Spare Engine | 1974 | | 46937 | CF6-50C2 | 05/15/94 / 05/15/99 | Early term possible on 5th anniversary of delivery/substitution option/Mexican registration/Renewal option of one three year or one five year period. |
| erovias | MD-88 | 1990 | XA-AMS | 49926 | JT8D-219 | 05/31/00 / 05/31/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Mexican registration/Renewal option of one three year or one five year period. |
| erovias | MD-88 Spare engine | 1990 | XA-AMT | 49927 | JT8D-219 | 05/31/00 / 05/31/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Mexican registration/Renewal option of one three year or one five year period. |
| erovias | MD-88 | 1990 | XA-AMU | 49928 | JT8D-219 | 06/01/00 / 08/01/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Renewal option of one three year or one five year period. |
| erovias | MD-88 Spare engine | 1990 | XA-AAV | 49929 | JT8D-219 | 09/01/00 / 09/01/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Renewal option of one three year or one five year period. |
| erovias | MD-88 | 1990 | N689PL | 53174 | JT8D-219 | 08/01/00 / 08/01/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Renewal option of one three year or one five year period. |
| erovias | MD-88 | 1991 | N689PL | 53175 | JT8D-219 | 06/01/01 / 06/01/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Renewal option of one three year or one five year period. |
| erovias | MD-88 | 1991 | N169PL | 53175 | JT8D-219 | 06/30/00 / 06/30/05 | Early term possible on 5th anniversary of delivery via aircraft substitution option/Renewal option of one three year or five year period. |
| continental | MD-82 | 1982 | N13991 | 49102 | JT8D-217 | 02/03/01 | Lessee may enter into a wet-sublease or ordinary sublease. |
| mineral | MD-82 | 1982 | N14090 | 49114 | JT8D-217 | 02/03/01 | Lessee may enter late a wet-sublease or ordinary sublease. |
| mineral | DC-10-30 | 1982 | H9-IHN | 48292 | CF6-50C2B | 10/01/92 / 10/01/95 | Month to month lease, renewable at Continental's option for 36 months. Monthly lease designed to hedge bankruptcy risks. Lease affirmed by bankruptcy court. |

0097262

T2-Mar-97
09:07 AM

## PHC EQUITY PLACEMENT

| Operator | Aircraft Model | Manu. Date | Regis. Num. | S/N | Engine Type | Exp. Date/ Renewal Term | Restrictions/ Comments |
|---|---|---|---|---|---|---|---|
| Continental | DC-10-30 | 1982 | HB-IHO | 48293 | CF6-50C2B | 10/01/92/ 10/01/95 | Month to month lease, renewable at Continental's option for 36 months. Monthly lease designed to hedge bankruptcy risks. Lease affirmed by bankruptcy court. |
| Kuwait Airways | A310-300 | 1986 | A6-KUA | 447 | CF6-80C2A2 | 05/31/93 | Early term not sooner than 14 months after delivery subject to a backstop rent of $437,500/mo. beginning on the Early Termination Date to the Original Expiration Date or until Lessor re-leases the Aircraft, whichever date occurs first. |
| Kuwait Airways | A310-300 | 1986 | A6-KUB | 446 | CF6-80C2A2 | 05/31/93 | Early term not sooner than 14 months after delivery subject to a backstop rent of $437,500/mo. beginning on the Early Termination Date to the Original Expiration Date or until Lessor re-leases the Aircraft, whichever date occurs first. |
| Kuwait Airways | A310-300 | 1986 | A6-KUC | 472 | CF6-80C2A2 | 03/31/93 | Early term not sooner than 12 months after delivery subject to a backstop rent of $437,500/mo. beginning on the Early Termination Date to the Original Expiration Date or until Lessor re-leases the Aircraft, whichever date occurs first. |
| Kuwait Airways | A310-300 | 1986 | A6-KUD | 461 | CF6-80C2A2 | 05/31/93 | No early term. |
| Kuwait Airways | A310-300 | 1988 | A6-KUE | 475 | CF6-80C2A2 | 03/31/93 | No early term. |
| Midwest Exp | MD-88 | 1989 | N701ME | 49760 | JT8D-219 | 02/28/94 | Renewal option of one three year period. |
| Midwest Exp Spare Engine | MD-88 | 1989 | N801ME | 49762 | JT8D-219 | 03/31/95/ 03/31/98 | Renewal option of one three year period. |
| Olympic | A300B4-103 | 1979 | SX-BEB | 45 | CF6-50C2 | 05/31/94/ 05/31/96 | Re-negotiations in process re timing of lessee's conversion of all A/C to A300B4-203s. Right of first refusal on sale. |
| Olympic | A300B4-103 | 1979 | SX-BEC | 66 | CF6-50C2 | 05/31/94/ 05/31/96 | Right of first refusal on sale. |
| Olympic | A300B4-103 | 1980 | SX-BED | 58 | CF6-50C2 | 05/31/96/ 05/31/97 | Right of first refusal on sale. |

0097263

12-May-92
09:07 AM

## PHC EQUITY PLACEMENT

| Operator | Aircraft Model | Manu Date | Regis. Num. | S/N | Engine Type | Exp. Date/ Renewal Term* | Restrictions/ Comments |
|---|---|---|---|---|---|---|---|
| Olympic | A300B4-103 | 1980 | SX-BEE | 103 | CF6-50C2 | 05/31/96/ 05/31/98 | Right of first refusal on sale. |
| Philippine | DC-10-30 | 1980 | RP-C2114 | 47836 | CF6-50C2 | 01/31/98/ 01/31/00 | Early term possible upon or after 01/31/96 with Lessee paying Lessor an amount determined by multiplying Base Rent by an Early Termination Factor ranging between 2.041 and 0.085 depending upon the termination date. |

11/31/99

column following the rental rate, abbreviations are as follows:
monthly rate, paid monthly
monthly rate, paid quarterly
monthly renewal rate, paid as shown on preceding line

ation date is shown on first line and ends with a "/"
est possible renewal termination date is indicated on line beneath expiration date.

0097264



May 14, 1992

Kidder Peabody & Company
10 Hanover Square, 7th Floor
New York, NY 10005

Attn:   Mr. Douglas T. Tansill

Re:    General Electric Capital Corporation - Aircraft Financing Joint
       Venture/Co-Investor Arrangement Confidentiality Agreement between
       General Electric Capital Corporation and Kidder Peabody & Company

Dear Mr. Tansill:

        Reference is made to the above-referenced potential transaction (the
"Potential Transaction") between General Electric Capital Corporation ("GE
Capital") and certain potential investors.  In connection with the Potential
Transaction, ("Potential Advisor") may be retained as advisor to GE Capital and
may participate as investor.  Potential Advisor (or one or more of Potential
Advisor's agents, employees or representatives) may from time to time receive
or otherwise obtain access to oral and written information which may be non-
public, proprietary or confidential in nature concerning the Potential Transaction
or other transactions consisting of aircraft financings in which GE Capital and
the potential investors may invest or participate pursuant to the Potential
Transaction.  Such information, together with any analyses, compilations,
studies, notes or other materials prepared by Potential Advisor or GE Capital, or
by any of the agents, employees or representatives of either of such parties, and
together with the information referred to in paragraph 3 below, is hereinafter
referred to as the "Confidential Information."  (For purposes of this letter
agreement, the terms "agents", "employees" and "representatives" include,
without limitation, directors, officers, partners and affiliates, and financial, legal
and other advisors.)  Potential Advisor acknowledges that any unauthorized use
or disclosure of any of the Confidential Information will cause substantial and
irreparable damage to GE Capital and to the business and competitive position
of GE Capital and that the Confidential Information is being provided to
Potential Advisor in confidence and in accordance with the following terms and
conditions:

0097265

1.    Confidential Information is being provided to Potential Advisor and developed by Potential Advisor solely for the purpose of enabling Potential Advisor to develop a proposal to offer advisory services to GE Capital (it being understood and agreed by both parties hereto that the providing of such Confidential Information shall not constitute or be evidence of a retention of Potential Advisor to provide advisory services) and, as an investor, to evaluate and conduct due diligence, in connection with the Potential Transaction.

2.    Potential Advisor agrees that the Confidential Information shall be kept confidential and shall not, without GE Capital's prior written consent or as expressly otherwise provided herein, be disclosed by Potential Advisor or any of its agents, employees or representatives, in any manner whatsoever, in whole or in part, and shall not be used by Potential Advisor or any of its agents, employees or representatives, other than for the purpose described in paragraph 1 above and in accordance with the terms of this letter agreement. Potential Advisor agrees to transmit the Confidential Information only to those of its agents, employees and representatives who need to know the Confidential Information for such purpose and who are informed by Potential Advisor of the Confidential nature of the Confidential Information and the terms of this letter agreement. Upon request, Potential Advisor shall inform GE Capital of each professional who is permitted to have access to any of the Confidential Information, and Potential Advisor shall be responsible to GE Capital for any breach of this letter agreement by any of Potential Advisor's agents, employees or representatives.

3.    Potential Advisor further agrees not to disclose to any party (i) the fact that Potential Advisor has been approached to submit a proposal to provide advisory services in connection with the Potential Transaction, and has been provided with any Confidential Information, (ii) the fact that the Potential Transaction is being or may be considered, or (iii) any terms or conditions of, or other facts or information concerning, the Potential Transaction or the transactions included in the Confidential Information (all of the information referred to in this paragraph 3 being considered to be a part of the Confidential Information).

4.    Potential Advisor's confidentiality obligations under this letter agreement shall not apply to any of the Confidential Information which Potential Advisor can clearly demonstrate falls within either of the following at the time of the disclosure thereof by Potential Advisor or any of its agents, employees or representatives:

(a)    Confidential Information which has come within the public domain through no fault of or action by Potential Advisor or any of its agents, employees or representatives; or

(b)    Confidential Information (other than the information referred to in paragraph 3 above) which is in Potential Advisor's possession on the date hereof or is obtained by Potential Advisor after the date hereof from any third party (for this

0097266

purpose a "third party" shall not include GE Capital or any of its agents, employees or representatives of any of the foregoing), provided that such Confidential Information was obtained by or provided to Potential Advisor lawfully and not in violation of any contractual, fiduciary or legal obligation of any person or entity to GE Capital or any other party.

Moreover, Potential Advisor shall have the right to disclose Confidential Information which Potential Advisor is required to disclose by court order or pursuant to the published rules and regulations of a governmental agency or body, in either case having jurisdiction over Potential Advisor, to the extent so required by such court order or the published rules and regulations of such governmental agency or body; provided, however, that prior to any such disclosure Potential Advisor shall (i) notify GE Capital promptly in writing of any order, request or intention by Potential Advisor to make such disclosure and of the facts and circumstances surrounding such order, request or intention so that GE Capital may seek an appropriate protective order or otherwise take action to prevent such disclosure, (ii) consult with GE Capital with respect to the need for and the form of such disclosure, and (iii) cooperate with GE Capital in any proceeding to obtain an appropriate protective order or other action by GE Capital to prevent such disclosure.

5.    Potential Advisor shall promptly provide GE Capital with notice of any actual or threatened breach of any of the terms of this letter agreement or unauthorized use or disclosure of any of the Confidential Information.

6.    The Confidential Information, and all copies thereof or of any portion thereof, except for that portion of the Confidential Information which consists of analyses, compilations, studies, notes or other materials prepared by Potential Advisor or its agents, employees or representatives, shall be returned (without retaining any copies thereof) to GE Capital immediately upon its request. That portion of the Confidential Information which consists of analyses, compilations, studies, notes or other materials prepared by Potential Advisor or any of its agents, employees or representatives shall be held by Potential Advisor and kept confidential and subject to the terms of this letter agreement, or destroyed at GE Capital's request.

7.    In the event that Potential Advisor breaches any of its agreements made in this letter agreement, Potential Advisor agrees that it would be extremely impracticable and difficult to measure the resulting damages; accordingly, in addition to any other rights and remedies GE Capital may have, Potential Advisor agrees that GE Capital may sue in equity for specific performance, and Potential Advisor expressly waives the defense that a remedy in damages will be adequate. Potential Advisor also agrees, in the event that GE Capital shall prevail in an action against Potential Advisor or any of its agents, employees or representatives for breach of this letter agreement in which it is determined in a final judgment by a court that GE Capital suffered or incurred losses or damages resulting primarily from a breach by Potential Advisor or any of its agents, employees or representatives, that Potential

0097267

Advisor will reimburse GE Capital for the reasonable attorney's fees and expenses incurred in connection with such action.

8.     It is understood that this letter agreement does not obligate either party to enter into any further agreement. Potential Advisor will conduct its own independent review of the relevant documentation, information and legal, accounting and other issues. Potential Advisor will be given a reasonable opportunity to review such documentation, to receive such information and to conduct such other due diligence procedures, including asking questions of appropriate personnel at GE Capital, as Potential Advisor may reasonably request. GE Capital makes no representation or warranty as to the accuracy or completeness of any documentation or information provided or to be provided to Potential Advisor.

9.     No failure or delay on GE Capital's part in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

10.     This letter agreement shall be governed by and construed in accordance with the laws of the State of New York. Potential Advisor consents to the non-exclusive jurisdiction of the courts of the State of New York and of the United States District Court for the Southern District of New York in any action brought in connection with this letter agreement and acknowledges that venue is appropriate and convenient in any of such courts.

11.     This letter agreement shall be binding on Potential Advisor and its agents, employees, representatives, successors and assigns and shall inure to the benefit of and be enforceable by GE Capital. Unless the Confidential Information becomes public (through no fault of or action by Potential Advisor or any of its agents, employees or representatives) at an earlier date, Potential Advisor's obligations hereunder and those of its agents, employees and representatives shall terminate three (3) years from the date of this letter agreement. Termination shall not release any party hereto from any liability which at the time thereof has already accrued or arisen.

Please sign, date and return the enclosed copy of this letter agreement in the place designated, if it accurately reflects our mutual understanding concerning Confidential Information.

Very truly yours,

GENERAL ELECTRIC
CAPITAL CORPORATION

By: _____

POLARIS AIRCRAFT LEASING

By: _____

Approved and Accepted

Kidder Peabody Company

By:_____

Date:_____, 1992

# INFORMATION PACKAGE

## Overview

This package contains financial and equipment information on selected leases from GE Capital's portfolio. Selected leases are either single investor or operating leases. All equipment is stage 3. There are a total of 72 planes in this package.

| | |
|---|---|
| Single Investor Leases | 45 |
| Operating Leases | 27 |
| | 72 |

## Format of Information

Information on all 72 planes is included here in the following format:

- Summary of equipment and lease information (1 page).
- Rent Information (up to several pages).
- Stipulated Loss Information (up to several pages).

## Additional Assets in Portfolio

Additional assets are available for consideration. They have been excluded from this package due to any one of the following characteristics.

- Ownership FSC
- Leveraged Lease Stucture
- Lease In Lease Out Structure
- Lessee is in Chapter 11
- Loan

### GE Capital Portfolio

| Stage 3 Single Investor or Operating Lease | information included in this package. |
|---|---|
| Ownership FSC Leveraged Lease Stucture Lease In Lease Out Structure Lessee is in Chapter 11 Loan | additional information is available upon request if a proposal allows usage of these assets. |

0097270

# CONFIDENTIAL
## GE Capital Air Portfolio

**Lessee:**            US Air

**Aircraft:**          B737−4B7

**Engines:**           2xCFM56−3B2

**Registration #:**    N449AU

**Serial Number:**     24893

**Manuf. Date:**            1990

**Book Value:**         $ 33.6 million as of March 31, 1992

**Structure:**          Single Investor Lease

**Purchase Option:**    Fair Market Value (FMV)

**Renewal Option:**     1, 2, 3, 4 or 5 years at FMV or at 80% of average basic rent for 5 years

**Termination Option:** None

**Maintenance Information:**
- to follow award of mandate

**Return Conditions:**
- to follow award of mandate

**Tranfer & Other Information:**
- transferee assumes obligation in writing
- transferee is bank/financial institution with net worth of at least $75 mill. (may be met by parent guarantee)
- transfer would not violate securities laws or ERISA
- transferee is not an airline or member of a consolidated group with more than 10% airline revenues
- transferee is a U.S. citizen for FAA purposes
- Only 1 owner participant after transfer, unless all other terms complied with or unless GECC is transferor
- no more than 3 transfers unless among affiliates or unless the transferor is GECC
- GECC may transfer less than all its interest to a U.S. citizen which is not an airline and which does not meet the $75 million test if GECC remains obligated

0097271

Schedule
to the Lease

## BASIC RENT PAYMENT SCHEDULE

| Basic Rent Payment Date | Basic Rent Percentage Advance | Arrears |
|---|---|---|
| 2 JUL 1991 | 0.00000000 | 0.12788768 |
| 2 JAN 1992 | 0.00000000 | 4.94830800 |
| 2 JUL 1992 | 0.00000000 | 4.94830800 |
| 2 JAN 1993 | 0.00000000 | 4.94830800 |
| 2 JUL 1993 | 0.00000000 | 4.94830800 |
| 2 JAN 1994 | 0.00000000 | 4.94830800 |
| 2 JUL 1994 | 0.00000000 | 4.94830800 |
| 2 JAN 1995 | 0.00000000 | 4.94830800 |
| 2 JUL 1995 | 0.00000000 | 4.94830800 |
| 2 JAN 1996 | 0.00000000 | 4.94830800 |
| 2 JUL 1996 | 0.00000000 | 4.94830800 |
| 2 JAN 1997 | 0.00000000 | 4.94830800 |
| 2 JUL 1997 | 0.00000000 | 4.94830800 |
| 2 JAN 1998 | 0.00000000 | 4.94830800 |
| 2 JUL 1998 | 0.00000000 | 4.94830800 |
| 2 JAN 1999 | 0.00000000 | 4.94830800 |
| 2 JUL 1999 | 0.00000000 | 4.94830800 |
| 2 JAN 2000 | 0.00000000 | 4.94830800 |
| 2 JUL 2000 | 0.00000000 | 4.94830800 |
| 2 JAN 2001 | 0.00000000 | 4.94830800 |
| 2 JUL 2001 | 6.04793203 | 5.49812000 |
| 2 JAN 2002 | 6.04793203 | 0.00000000 |
| 2 JUL 2002 | 6.04793203 | 0.00000000 |
| 2 JAN 2003 | 6.04793203 | 0.00000000 |
| 2 JUL 2003 | 6.04793203 | 0.00000000 |
| 2 JAN 2004 | 6.04793203 | 0.00000000 |
| 2 JUL 2004 | 6.04793203 | 0.00000000 |
| 2 JAN 2005 | 6.04793203 | 0.00000000 |
| 2 JUL 2005 | 6.04793203 | 0.00000000 |
| 2 JAN 2006 | 6.04793203 | 0.00000000 |
| 2 JUL 2006 | 6.04793203 | 0.00000000 |
| 2 JAN 2007 | 6.04793203 | 0.00000000 |
| 2 JUL 2007 | 6.04793203 | 0.00000000 |
| 2 JAN 2008 | 6.04793203 | 0.00000000 |
| 2 JUL 2008 | 6.04793203 | 0.00000000 |
| 2 JAN 2009 | 6.04793203 | 0.00000000 |
| 2 JUL 2009 | 6.04793203 | 0.00000000 |
| 2 JAN 2010 | 6.04793203 | 0.00000000 |
| 2 JUL 2010 | 6.04793203 | 0.00000000 |

Exhibit
to Lease

| Settlement Date | Termination & Stipulated Loss Value As % Of Cost ( Rent Not Included ) |
|---|---|
| 2 JAN 1991 | 100.95946726 |
| 2 FEB 1991 | 102.16752663 |
| 2 MAR 1991 | 103.14249097 |
| 2 APR 1991 | 104.11788923 |
| 2 MAY 1991 | 105.30651333 |
| 2 JUN 1991 | 106.29003903 |
| 2 JUL 1991 | 107.13870790 |
| 2 AUG 1991 | 107.28381088 |
| 2 SEP 1991 | 107.46487625 |
| 2 OCT 1991 | 107.60694669 |
| 2 NOV 1991 | 107.75524189 |
| 2 DEC 1991 | 107.90980195 |
| 2 JAN 1992 | 108.05480794 |
| 2 FEB 1992 | 108.15627603 |
| 2 MAR 1992 | 108.26370747 |
| 2 APR 1992 | 108.37009210 |
| 2 MAY 1992 | 108.47626094 |
| 2 JUN 1992 | 108.58842340 |
| 2 JUL 1992 | 108.70040726 |
| 2 AUG 1992 | 108.76864061 |
| 2 SEP 1992 | 108.84262332 |
| 2 OCT 1992 | 108.91618162 |
| 2 NOV 1992 | 108.99552356 |
| 2 DEC 1992 | 109.08068639 |
| 2 JAN 1993 | 109.16549679 |
| 2 FEB 1993 | 109.20638172 |
| 2 MAR 1993 | 109.25283992 |
| 2 APR 1993 | 109.30214693 |
| 2 MAY 1993 | 109.35494338 |
| 2 JUN 1993 | 109.41338981 |
| 2 JUL 1993 | 109.47538452 |
| 2 AUG 1993 | 109.49330685 |
| 2 SEP 1993 | 109.51665461 |
| 2 OCT 1993 | 109.54332468 |
| 2 NOV 1993 | 109.57547649 |
| 2 DEC 1993 | 109.61314536 |
| 2 JAN 1994 | 109.65422873 |
| 2 FEB 1994 | 109.65110509 |
| 2 MAR 1994 | 109.65327137 |
| 2 APR 1994 | 109.65981138 |
| 2 MAY 1994 | 109.67247457 |
| 2 JUN 1994 | 109.69052933 |
| 2 JUL 1994 | 109.71478140 |
| 2 AUG 1994 | 109.69471809 |
| 2 SEP 1994 | 109.67983564 |
| 2 OCT 1994 | 109.67093843 |
| 2 NOV 1994 | 109.66729397 |
| 2 DEC 1994 | 109.66893607 |
| 2 JAN 1995 | 109.67666982 |
| 2 FEB 1995 | 109.63998183 |

44

0097273

Exhibit
to Lease

| Settlement<br>Date | Termination<br>& Stipulated<br>Loss Value<br>As % Of Cost<br>( Rent Not<br>Included ) |
|---|---|
| 2 MAR 1995 | 109.60836766 |
| 2 APR 1995 | 109.58220265 |
| 2 MAY 1995 | 109.56195024 |
| 2 JUN 1995 | 109.54687747 |
| 2 JUL 1995 | 109.53778872 |
| 2 AUG 1995 | 109.48416992 |
| 2 SEP 1995 | 109.43551592 |
| 2 OCT 1995 | 109.39262973 |
| 2 NOV 1995 | 109.35477744 |
| 2 DEC 1995 | 109.32199147 |
| 2 JAN 1996 | 109.29507548 |
| 2 FEB 1996 | 109.22351465 |
| 2 MAR 1996 | 109.15680310 |
| 2 APR 1996 | 109.09531474 |
| 2 MAY 1996 | 109.03951155 |
| 2 JUN 1996 | 108.98865909 |
| 2 JUL 1996 | 108.94356029 |
| 2 AUG 1996 | 108.85369958 |
| 2 SEP 1996 | 108.76857033 |
| 2 OCT 1996 | 108.68897403 |
| 2 NOV 1996 | 108.61417528 |
| 2 DEC 1996 | 108.54420496 |
| 2 JAN 1997 | 108.47986520 |
| 2 FEB 1997 | 108.37063964 |
| 2 MAR 1997 | 108.26602086 |
| 2 APR 1997 | 108.16638120 |
| 2 MAY 1997 | 108.07581743 |
| 2 JUN 1997 | 107.98998060 |
| 2 JUL 1997 | 107.91330853 |
| 2 AUG 1997 | 107.79167127 |
| 2 SEP 1997 | 107.67456086 |
| 2 OCT 1997 | 107.56641387 |
| 2 NOV 1997 | 107.46288060 |
| 2 DEC 1997 | 107.36399075 |
| 2 JAN 1998 | 107.27418162 |
| 2 FEB 1998 | 107.13932272 |
| 2 MAR 1998 | 107.00890554 |
| 2 APR 1998 | 106.88491755 |
| 2 MAY 1998 | 106.77348505 |
| 2 JUN 1998 | 106.66664511 |
| 2 JUL 1998 | 106.57247108 |
| 2 AUG 1998 | 106.43321917 |
| 2 SEP 1998 | 106.29838070 |
| 2 OCT 1998 | 106.17602787 |
| 2 NOV 1998 | 106.05819729 |
| 2 DEC 1998 | 105.94491808 |
| 2 JAN 1999 | 105.84426331 |
| 2 FEB 1999 | 105.69848894 |
| 2 MAR 1999 | 105.55708601 |
| 2 APR 1999 | 105.42365770 |

4

0097274

Exhibit
to Lease

| Settlement Date | Termination & Stipulated Loss Value As % Of Cost ( Rent Not Included ) |
|---|---|
| 2 MAY 1999 | 105.30272410 |
| 2 JUN 1999 | 105.18631188 |
| 2 JUL 1999 | 105.08252401 |
| 2 AUG 1999 | 104.93358629 |
| 2 SEP 1999 | 104.78899965 |
| 2 OCT 1999 | 104.65683589 |
| 2 NOV 1999 | 104.52931120 |
| 2 DEC 1999 | 104.40593432 |
| 2 JAN 2000 | 104.29525789 |
| 2 FEB 2000 | 104.13941745 |
| 2 MAR 2000 | 103.98788366 |
| 2 APR 2000 | 103.84425924 |
| 2 MAY 2000 | 103.71306389 |
| 2 JUN 2000 | 103.58633386 |
| 2 JUL 2000 | 103.47214167 |
| 2 AUG 2000 | 103.31274271 |
| 2 SEP 2000 | 103.15762747 |
| 2 OCT 2000 | 103.01486732 |
| 2 NOV 2000 | 102.87649802 |
| 2 DEC 2000 | 102.74254785 |
| 2 JAN 2001 | 102.62108904 |
| 2 FEB 2001 | 102.36274133 |
| 2 MAR 2001 | 102.10863026 |
| 2 APR 2001 | 101.86235812 |
| 2 MAY 2001 | 101.62981065 |
| 2 JUN 2001 | 101.40166593 |
| 2 JUL 2001 | 101.18736260 |
| 2 AUG 2001 | 95.72984379 |
| 2 SEP 2001 | 96.32405845 |
| 2 OCT 2001 | 96.93150930 |
| 2 NOV 2001 | 97.54287129 |
| 2 DEC 2001 | 98.15816960 |
| 2 JAN 2002 | 98.78683985 |
| 2 FEB 2002 | 93.31078168 |
| 2 MAR 2002 | 93.88633762 |
| 2 APR 2002 | 94.46978168 |
| 2 MAY 2002 | 95.06681822 |
| 2 JUN 2002 | 95.66769884 |
| 2 JUL 2002 | 96.28228421 |
| 2 AUG 2002 | 90.79205047 |
| 2 SEP 2002 | 91.35333957 |
| 2 OCT 2002 | 91.92807849 |
| 2 NOV 2002 | 92.50651794 |
| 2 DEC 2002 | 93.08868172 |
| 2 JAN 2003 | 93.68442974 |
| 2 FEB 2003 | 88.17523738 |
| 2 MAR 2003 | 88.71744577 |
| 2 APR 2003 | 89.26751675 |
| 2 MAY 2003 | 89.83096533 |
| 2 JUN 2003 | 90.39804173 |

4

0097275

Exhibit
to Lease

| Settlement Date | Termination & Stipulated Loss Value As % Of Cost ( Rent Not Included ) |
|---|---|
| 2 JUL 2003 | 90.97860523 |
| 2 AUG 2003 | 85.45413057 |
| 2 SEP 2003 | 85.98095828 |
| 2 OCT 2003 | 86.52101393 |
| 2 NOV 2003 | 87.06454679 |
| 2 DEC 2003 | 87.61157925 |
| 2 JAN 2004 | 88.17196974 |
| 2 FEB 2004 | 82.62719219 |
| 2 MAR 2004 | 83.13358628 |
| 2 APR 2004 | 83.64761236 |
| 2 MAY 2004 | 84.17478397 |
| 2 JUN 2004 | 84.70534982 |
| 2 JUL 2004 | 85.24916769 |
| 2 AUG 2004 | 79.68771082 |
| 2 SEP 2004 | 80.17731820 |
| 2 OCT 2004 | 80.67991388 |
| 2 NOV 2004 | 81.18574557 |
| 2 DEC 2004 | 81.69483411 |
| 2 JAN 2005 | 82.21703639 |
| 2 FEB 2005 | 76.63382475 |
| 2 MAR 2005 | 77.10153728 |
| 2 APR 2005 | 77.57663276 |
| 2 MAY 2005 | 78.06462309 |
| 2 JUN 2005 | 78.55575540 |
| 2 JUL 2005 | 79.05988583 |
| 2 AUG 2005 | 73.45848599 |
| 2 SEP 2005 | 73.90789322 |
| 2 OCT 2005 | 74.37002991 |
| 2 NOV 2005 | 74.83514212 |
| 2 DEC 2005 | 75.30324901 |
| 2 JAN 2006 | 75.78420576 |
| 2 FEB 2006 | 70.15948303 |
| 2 MAR 2006 | 70.58541721 |
| 2 APR 2006 | 71.01846533 |
| 2 MAY 2006 | 71.46413758 |
| 2 JUN 2006 | 71.91267935 |
| 2 JUL 2006 | 72.37394500 |
| 2 AUG 2006 | 66.72940439 |
| 2 SEP 2006 | 67.13539309 |
| 2 OCT 2006 | 67.55383170 |
| 2 NOV 2006 | 67.97496448 |
| 2 DEC 2006 | 68.39880876 |
| 2 JAN 2007 | 68.83521792 |
| 2 FEB 2007 | 63.16566077 |
| 2 MAR 2007 | 63.54647186 |
| 2 APR 2007 | 63.93410635 |
| 2 MAY 2007 | 64.33407259 |
| 2 JUN 2007 | 64.73661404 |
| 2 JUL 2007 | 65.15158322 |

4.

0097276

Exhibit
to Lease

| Settlement Date | Termination & Stipulated Loss Value As % Of Cost ( Rent Not Included ) |
|---|---|
| 2 AUG 2007 | 59.46044804 |
| 2 SEP 2007 | 59.81954217 |
| 2 OCT 2007 | 60.19078428 |
| 2 NOV 2007 | 60.56441667 |
| 2 DEC 2007 | 60.94045472 |
| 2 JAN 2008 | 61.32874985 |
| 2 FEB 2008 | 55.61076889 |
| 2 MAR 2008 | 55.94284438 |
| 2 APR 2008 | 56.28142949 |
| 2 MAY 2008 | 56.63203053 |
| 2 JUN 2008 | 56.98488895 |
| 2 JUL 2008 | 57.34985520 |
| 2 AUG 2008 | 51.60839514 |
| 2 SEP 2008 | 51.91684037 |
| 2 OCT 2008 | 52.23710747 |
| 2 NOV 2008 | 52.55943664 |
| 2 DEC 2008 | 52.88384117 |
| 2 JAN 2009 | 53.22017031 |
| 2 FEB 2009 | 47.44988877 |
| 2 MAR 2009 | 47.72932695 |
| 2 APR 2009 | 48.01493583 |
| 2 MAY 2009 | 48.31221955 |
| 2 JUN 2009 | 48.61141736 |
| 2 JUL 2009 | 48.92237750 |
| 2 AUG 2009 | 43.12656361 |
| 2 SEP 2009 | 43.38030505 |
| 2 OCT 2009 | 43.64551613 |
| 2 NOV 2009 | 43.91243481 |
| 2 DEC 2009 | 44.18107207 |
| 2 JAN 2010 | 44.46127489 |
| 2 FEB 2010 | 38.63450565 |
| 2 MAR 2010 | 38.85709242 |
| 2 APR 2010 | 39.08548386 |
| 2 MAY 2010 | 39.32518173 |
| 2 JUN 2010 | 39.56642392 |
| 2 JUL 2010 | 39.81905328 |
| 2 AUG 2010 | 33.96453405 |
| 2 SEP 2010 | 34.15919216 |
| 2 OCT 2010 | 34.36493951 |
| 2 NOV 2010 | 34.57201159 |
| 2 DEC 2010 | 34.78041692 |
| 2 JAN 2011 | 35.00000000 |

44

0097277