# ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
DEC 2 2005
U.S. COURT OF
FEDERAL CLAIMS

No. 03-2164 T

(Judge Mary Ellen Coster Williams)

JADE TRADING, LLC, by and through ROBERT W. ERVIN
and LAURA KAVANAUGH ERVIN on behalf of ERVIN
CAPITAL, LLC, Partners Other Than the Tax Matters Partner,

Plaintiffs

v.

THE UNITED STATES,

Defendant

## REPLY FOR THE UNITED STATES
## TO POST-TRIAL BRIEF FOR PLAINTIFFS

EILEEN J. O'CONNOR
  Assistant Attorney General

STUART J. BASSIN
DAVID GUSTAFSON
MATTHEW C. HICKS
MICHAEL S. RAUM
JENNIFER P. WILSON
  Attorneys
  U.S. Department of Justice, Tax Division
  Court of Federal Claims Section
  P.O. Box 26
  Washington, D.C. 20044
  (202) 307-6506

2.  **Substantial underpayment penalty.**

The unfocused arguments presented by plaintiffs concerning the substantial underpayment penalty are both legally inadequate and unpersuasive. As we explained (D. Br. at 71-74), the penalty applies in cases involving tax shelters, such as the Jade Son of BOSS transaction, unless the taxpayer can establish that substantial authority existed for the return position they took and they reasonably believed that the return position was more likely than not the proper tax treatment. Plaintiffs' brief does not dispute that the Jade Son of BOSS transaction involved a tax shelter and does not argue that plaintiffs reasonably believed that their return position was probably correct. The best that plaintiffs offer is their invocation of <u>Helmer</u>, perhaps contending that the decision constituted the "substantial authority" required to avoid the penalty. That decision is, as defendant has repeatedly demonstrated, inapplicable to both the legal and factual questions presented by the Jade Son of BOSS transaction; it can hardly serve as the predicate for a claim of "substantial authority."[23]

3.  **Negligence penalty.**

The legal arguments presented by plaintiffs concerning the negligence penalty are contrary to precedent. (Defendant will address plaintiffs' factual contentions in conjunction with its analysis of reasonable cause.) In arguing that penalties ought not be determined in cases involving novel transactions and so-called "soft doctrines" like the age-old economic substance and substance-over-form rules (P. Br. at 59-63), plaintiffs ignore rulings like <u>Neonatology Associates v. Commissioner</u>, 299 F.3d 221, 235 (3d Cir. 2002), which uphold penalty

---

[23] Plaintiffs' reference (P. Br. at 67-68) to the fact that Treas. Reg. § 1.752-6T was not effective until a few days after the execution of the Jade Son of BOSS transaction does nothing to bolster their argument. That regulation simply reflects the Congressional enactment of Section 358(h) to explicitly reject the arguments presented by plaintiffs in this case. Congress applied that statute retroactively to October 18, 1999 and directed the Service to apply its regulations retroactively to that date. Pub. L. No. 106-554 at § 309(d). The regulation simply follows the Congressional regulation. Plaintiffs have not shown that Congress or the Service intended their explicit rejection of the theory underlying the Son of BOSS tax shelters in this legislation and regulation to constitute a blessing for transactions executed before that date (and none exists). Thus, all that plaintiffs' argument represents is another recycling of their flawed argument that the Tax Court decision in <u>Helmer</u> immunizes their tax scheme.

determinations, reject comparable arguments, and instead state that the taxpayer's argument "does not sway us for this case does not involve novel question of law but rather is concerned with the application of well-settled principles of taxation." *See also* Nicole Rose Corp. v. Commissioner, 320 F.3d 282, 284-85 (2d Cir. 2003). Similarly, plaintiffs' argument (P. Br. at 73-74) that "too good to be true" tax benefit claims can only be addressed by Congress misses the point of the regulation and case law cited by defendant (D. Br. at 76)—i.e., that taxpayers file returns based upon shelter promoters' claims of too-good-to-be- true tax benefits at their peril because such claims should strongly indicate to a prudent taxpayer that something is amiss.

  B. <u>The Court does not have jurisdiction to resolve the Ervins' claims to a partner-level reasonable cause/good faith defense in this TEFRA partnership proceeding.</u>

Section 6221 establishes, as we showed (D. Br. at 41 and 66-67), that the applicability of penalties arising out of a partnership return is properly determined at the partnership level in a TEFRA partnership proceeding, and plaintiffs do not contend otherwise. (*See* P. Br. at 12.) The jurisdictional dispute in this case, however, concerns plaintiffs' assertion of the reasonable cause/good faith exception arising out of the Ervins' purported efforts to evaluate the Jade Son of BOSS transaction as part of this TEFRA partnership proceeding. As we explained (D. Br. at 41-42 and 82-83), Treas. Reg. § 301.6221-1(d) controls and specifically provides that "partner-level defenses . . . [to penalty determinations] may not be asserted in the partnership-level proceeding, but may be asserted through separate refund actions." The regulation, in fact, identifies the reasonable cause exception as an example of a partner-level defense which cannot be asserted in a TEFRA partnership proceeding. Under the governing legal principles, the Service's regulation is valid and controlling if it implements the Congressional mandate in some reasonable manner. <u>Rowan Cos. v. United States</u>, 452 U.S. 247, 252 (1981), and <u>United States v. Correll</u>, 389 U.S. 299, 307 (1967).

Plaintiffs, in their response (P. Br. at 13-15), apparently recognize that the regulation bars assertion of the reasonable cause exception related to the Ervins' activities in this proceeding,

34

but attempt to avoid this result by challenging the validity of the regulation.[24] In so arguing, they seek to demonstrate (as they must) that the regulation "repeals unambiguous mandatory language in two separate statutes." P. Br. at 14.

Plaintiffs cannot meet this burden. As their brief demonstrates, plaintiffs cannot point to any specific statutory language authorizing litigation of partner-level reasonable cause defenses in TEFRA partnership proceeding. In fact, the statutory scheme, with its system of consecutive determinations of partnership items at the partnership level in a TEFRA partnership proceeding followed by determination of partner-specific issues in a separate partner-level proceeding, supports the Service's regulation. Section 6230(c)(4), which coordinates these two types of proceedings, provides that in a subsequent partner-level proceeding–

> the determination under the final partnership administrative adjustment or under the decision of the court (whichever is appropriate) concerning the applicability of any penalty . . . which relates to a partnership item shall also be conclusive. Notwithstanding the preceding sentence, <u>the partner shall be allowed to assert any partner level defenses</u> . . .

(Emphasis added). Thus, contrary to plaintiffs' contention, the statute contemplates that partner level reasonable cause defenses, like those plaintiffs seek to litigate here, will not be litigated as part of a TEFRA partnership proceeding. As this is precisely the division of jurisdiction codified in the regulation, plaintiffs cannot establish that the regulation is invalid as contrary to the statute and the regulation, therefore, is valid, binding, and fatal to plaintiffs' effort to litigate the Ervin-specific reasonable cause claims.[25]

---

[24] This is the third time in the past six months that plaintiffs have contended that an inconvenient regulation is invalid. Previously, plaintiffs challenged the validity of Treas. Reg. § 1.701-2 upon summary judgment and summarily challenged the validity of Treas. Reg. § 1.988-2(f) in their pretrial reply (at 48-49)–a contention that they did not repeat in their post-trial brief.

[25] Consideration of the policies underlying the TEFRA partnership provisions further demonstrates the reasonableness of the regulation. As we explained (D. Br. at 32-37), the provisions were intended to facilitate litigation of issues common to the partnership and the partners in a common partnership-level proceeding and litigation of partner-specific issues in separate partner-level proceedings. Yet, if plaintiffs' challenge to the regulation were to prevail, resolution of common issues effecting all participants in a thousand-partner partnership would be delayed while individual partners litigated their personal reasonable cause claims.

35

### C. Plaintiffs have not established their entitlement to the reasonable cause/good faith exception to the penalty statutes.

Plaintiffs' discussion of reasonable cause, P. Br. at 62-67, conflates the analysis of the return positions taken by Jade and the analysis of the return positions taken by the Ervins. Likewise, it conflates the virtually non-existent efforts undertaken by Jade to evaluate the reasonableness of its return positions with the efforts supposedly undertaken by the Ervins to evaluate theirs. As the preceding section established, the only inquiry within the Court's jurisdiction is the relatively limited efforts undertaken at the partnership level by Jade to determine the proper reporting for its partnership return, filed in March 2000. Nonetheless, even if the entirety of the efforts undertaken by Jade, Sentinel, and the Ervin LLCs were considered, they would not constitute reasonable cause under the governing law.

The efforts supposedly undertaken by plaintiffs to evaluate the Jade Son of BOSS transaction prior to filing of the erroneous partnership tax return do not add up to reasonable cause. Because that return was filed before Mr. Bricker had undertaken his analysis of the Jade Son of BOSS transaction, the only investigation of the tax implication of the transaction had been undertaken by BDO and Sentinel–the promoters of the tax shelter. The authority (*see* D. Br. at 79-80 n. 41) establishes, however, that advice rendered by a promoter cannot provide the predicate for a reasonable cause defense to penalties. Further, the BDO advice was premised upon the assumptions that the Ervin LLCs would earn a pre-tax profit, after transaction costs, and that the components of the option spreads could be separately assigned or liquidated. As plaintiffs knew that those assumptions were unlikely to be true, plaintiffs' receipt of the advice rendered by BDO on the basis of those fallacies cannot provide the predicate for a reasonable cause defense under the governing regulations. (*See* D. Br. at 83-85.)

Even if the Court had jurisdiction to consider the so-called investigation that the Ervins undertook after the filing of the Jade partnership return (jurisdiction it does not have), plaintiffs' reasonable cause argument would still fail. As we explained before (D. Br. at 84-86), plaintiffs may not assert reliance upon the advice of Mr. Bricker as evidence of reasonable cause, because

he was not independent of the promoters, and he premised his advice upon factual assumptions that the Ervins knew were false. Nor may the Ervins' boot-strap their reliance argument with the "advice" they purportedly obtained through their advisors in Kentucky (Mr. Mountjoy, Mr. McElroy, and Ms. Davis). The record contains no evidence that any of these people made any contribution whatsoever to the advice provided by Mr. Bricker and BDO; indeed, none of them seem to have even noticed that Mr. Bricker plagiarized large portions of his "independent" advice from the BDO marketing opinion letter. Regardless, after the issuance of Notice 2000-44, the Ervins knew that the advice was (at least) suspect, and they chose to continue pursuing the supposed tax windfall they had purchased from BDO and Sentinel.

## CONCLUSION

For the foregoing reasons, the Service's determinations set forth in the FPAA must be sustained. Plaintiffs' complaint should be dismissed with all costs and attorneys fees assessed against plaintiffs.

Respectfully submitted,

*/s/ Stuart J. Bassin*
STUART J. BASSIN
Attorney of Record for Defendant
Department of Justice
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6418
FAX (202) 514-9440

EILEEN J. O'CONNOR
  Assistant Attorney General
DAVID GUSTAFSON
  Acting Chief, Court of Federal Claims Section
MATTHEW C. HICKS
  Trial Attorney
MICHAEL S. RAUM
  Trial Attorney
JENNIFER P. WILSON
  Trial Attorney

*/s/ David Gustafson*
Of Counsel

December 2, 2005

38