**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TIFD III-E INC., the Tax Matters Partner of CASTLE HARBOUR-I LIMITED-LIABILITY COMPANY, ) ) ) ) ) | |
| Plaintiff, ) ) | Case Nos.: 3:01-CV-01839 (SRU) (lead case) 3:01-CV-01840 (SRU) |
| v. ) ) | |
| UNITED STATES OF AMERICA, ) ) | |
| Defendant. ) ) | |

**PLAINTIFF'S REPLY BRIEF ON SECTION 704(e) OF
INTERNAL REVENUE CODE**

MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C.  20036
Telephone:   (202) 775-1880


KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia  30309
Telephone:   (404) 572-3566


CARMODY & TORRANCE LLP
195 Church Street, P.O. Box 1950
New Haven, Connecticut  06509-1950
Telephone:   (203) 777-5501


Attorneys for Plaintiff, TIFD III-E INC.

## TABLE OF CONTENTS

I.  **The Banks' Interests Were Equity** ...................................................................................2

    A.  The Second Circuit's decision does not characterize the Banks' interests as debt.............2

    B.  The Government fails to distinguish the Banks' interests from garden variety
        preferred stock. ....................................................................................................................3

    C.  Conclusion. ..........................................................................................................................5

II.  **The Banks Owned Capital Interests For Purposes Of Section 704(e)(1)**............................5

    A.  The Second Circuit's *Culbertson* holding does not preempt section 704(e)(1)...................5

    B.  Section 704(e)(1) is not limited to "family partnerships."....................................................8

    C.  Capital was a material income-producing factor in Castle Harbour....................................8

    D.  The allocation of the Partnership's income is irrelevant to the application of
        section 704(e)(1). ..................................................................................................................9

# TABLE OF AUTHORITIES

## CASES

*Atlas v. United States*, 555 F. Supp. 110 (N.D. Ill. 1982) ................................................................6

*Commissioner v. O.P.P. Holding Corp.*, 76 F.2d 11 (2d Cir. 1935) ..............................................4

*Crane Co. v. American Standard, Inc.*, 603 F.2d 244 (2d Cir. 1979) ............................................7

*Culbertson v. Commissioner*, 337 U.S. 733 (1949) ............................................................. *passim*

*Fagan v. City of Vineland*, 22 F.3d 1283 (3d Cir. 1994) ..............................................................7

*Jewel Tea Co. v. United States*, 90 F.2d 451 (2d Cir. 1937) ..........................................................4

*Poggetto v. United States*, 306 F.2d 76 (9th Cir. 1962) ................................................................9

*Sparks v. Commissioner*, 238 F.2d 845 (7th Cir. 1956) ................................................................9

*TIFD III-E INC. v. United States*, 342 F. Supp. 2d 94 (D. Conn. 2004) ......................................2

*TIFD III-E INC. v. United States*, 459 F.3d 220 (2d Cir. 2006) .......................................... *passim*

*United States v. Cuddy*, 147 F.3d 1111 (9th Cir. 1998) ................................................................7

## STATUTES AND REGULATIONS

I.R.C. § 704(e) ..................................................................................................................... *passim*

Treas. Reg. § 1.704-1(e)(1) ......................................................................................................3, 9

Treas. Reg. § 1.704-1(e)(2) ......................................................................................................6, 7

## LEGISLATIVE MATERIALS

H.R. Rep. No. 82-586 (1951) ......................................................................................................8

## ADMINISTRATIVE MATERIALS

Rev. Rul. 78-142, 1978-1 C.B. 111 ............................................................................................4

Rev. Rul. 90-27, 1990-1 C.B. 50 ................................................................................................4

## MISCELLANEOUS

Donald Korb, Remarks at the 2007 University of Southern California Tax Institute: What
  a Difference Two Years Makes (Jan. 23, 2007), *in* Tax Notes Today, Jan. 24, 2007,
  LEXIS 2007 TNT 16-65 ...........................................................................................................1

Robert Willens, *Are "Maximum Contingent" Instruments Debt?*, 112 Tax Notes 607
  (Aug. 14, 2006) ......................................................................................................................2

Plaintiff submits this Reply Brief to the United States' Response Brief Regarding Section 704(e), dated March 2, 2007 ("Gov't Br.").  Plaintiff's opening brief observed that the Government's arguments appeared to put the Banks' interests in a "twilight zone" category of interest that is neither debt nor a partnership interest.  In response, the Government accuses Plaintiff of "fear-mongering," stating that there is no gap or third category other than debt or equity.  Gov't Br. at 17.  Plaintiff agrees there is no gap:  the Banks' interests were either debt or equity.

While the Government repeatedly asserts that the Banks' interests were "not equity," it nevertheless assiduously avoids calling them "debt."  *See, e.g.*, Gov't Br. at 2, 11, 12, 17.  But since the parties agree there is no twilight zone category, the Government's position is untenable.

The Government now finds itself on the horns of a dilemma.  To win this case, it must convince this Court to hold that the Banks' interests were "not equity."  But it does not want a holding that the Banks' interests were debt.  The reason the Government has avoided arguing on appeal or on remand that the Banks' interests were debt—and the reason the IRS's chief legal official has taken the unusual step of publicly and repeatedly stating that the Second Circuit did not hold that the interests were debt—is inescapable.[1]  The Government realizes that a holding reclassifying the Banks' interests as debt would open up a Pandora's box of problems for the IRS (and opportunities for taxpayers) by disrupting the well-established and extensive body of law

---

[1]    The Chief Counsel of the IRS has gone out of his way to emphasize that the Second Circuit was "careful" not to characterize the Banks' interests as debt and that the Second Circuit's decision "does not stand for any position on the debt/equity issue."  Donald Korb, What a Difference Two Years Makes, Remarks at the 2007 University of Southern California Tax Institute (Jan. 23, 2007), *in* Tax Notes Today, Jan. 24, 2007, LEXIS, 2007 TNT 16-65.

supporting equity treatment for preferred stock and preferred partnership interests that are at least as (if not more) debt-like than the Banks' interests in Castle Harbour.[2]

## I.     The Banks' Interests Were Equity

A.     <u>The Second Circuit's decision does not characterize the Banks' interests as debt.</u>

At trial, the Government argued explicitly that the Banks' interests were debt. Gov't Trial Br. at 37-44. This Court rejected that argument and held that the Banks were partners. *TIFD III-E INC. v. United States*, 342 F. Supp. 2d 94, 114-17 (D. Conn. 2004). The Government appealed this Court's holding that the Banks were partners, but it did not challenge the holding that the Banks' interests were not debt. *See* Appellant Br. at 49. Although the Second Circuit held that the Banks' interests were not a "bona fide equity participation" under the subjective test of *Culbertson v. Commissioner*, 337 U.S. 733 (1949), it did not hold that the Banks' interests were debt. *TIFD III-E INC. v. United States*, 459 F.3d 220, 240 (2d Cir. 2006). The Second Circuit certainly did not hold that the Banks' interests could not be recognized as partnership equity under tests other than *Culbertson*. To the contrary, the Second Circuit remanded the case for this Court to determine whether the Banks' interests were capital interests that qualify as partnership equity under section 704(e)(1). *Id.* at 241 n.19.

On remand, the Government argues that the Banks' interests were not equity. Since there is no category other than debt or equity, it would be logical to infer that the Government is asserting that the Banks' interests were debt. But it did not make this argument on appeal; indeed, it suggested that the Second Circuit could resolve the *Culbertson* issue without

---

[2]     *See, e.g.*, Robert Willens, *Are "Maximum Contingent" Instruments Debt?*, 112 Tax Notes 607 (Aug. 14, 2006) ("The holy grail for a designer of financial products is an instrument that will be treated as debt for federal income tax purposes (because section 163(a) allows a deduction for all interest paid or accrued during a tax year with respect to indebtedness) but will also be regarded for nontax purposes as equity (in whole or in part).").

determining whether the Banks' interests were debt.  *See* Appellant Br. at 53 (An entity "may or

may not . . . be a lender, but it should not be deemed a valid partner for tax purposes.").  And the

brief it has filed in this remand conspicuously avoids asserting that the Banks' interests were

debt.

Moreover, the Government's Proposed Judgment is incompatible with characterization of

the Banks' interests as debt:  it would tax the GECC partners on all the Partnership's income,

with no reduction for the return received by the Banks on their investment.[3]  If the Banks'

interests were debt, Castle Harbour (and indirectly the GECC partners) would be entitled to

deduct the return received by the Banks on their investment.  Thus, despite its insistence that

there is no investment class other than debt and equity, the Government's Proposed Judgment

seeks a tax result that is incompatible with treating the Banks' interests as either debt or equity.

By seeking to tax the GECC partners on the Banks' economic profits, the Government asks for a

result that, in the words of *Culbertson*, "would violate the first principle of income taxation:  that

income must be taxed to him who earns it."  337 U.S. at 739-40 (citations omitted); *see* Treas.

Reg. § 1.704-1(e)(1)(i).

B.    <u>The Government fails to distinguish the Banks' interests from garden variety

preferred stock.</u>  The Government emphasizes statements from the Second Circuit's opinion

observing that the Banks' interests were in some respects economically similar to a secured loan.

*See, e.g.*, Gov't Br. at 4-6.  As Plaintiff's initial section 704(e) brief explained, however,

numerous cases and IRS rulings confirm that highly secure, debt-like preferred stock and

---

3    The FPAAs identified four alternative theories, including the theory that the Banks were
     lenders to, rather than equity investors in, Castle Harbour.  *See* PX 377 at 0101357-64.  The
     FPAA's computations associated with the debt theory allowed Castle Harbour (and indirectly
     the GECC partners) an interest deduction equal to the profits earned by the Banks.  *Id.* at
     0101359-60.

3

partnership interests often are recognized as equity for tax purposes.  *See* Plaintiff's 704(e) Br. at 39-43.

The Government does not dispute the accepted tax treatment of debt-like equity instruments, nor does it explain why the Banks' interests are any less equity-like than, for example, the preferred stock respected as equity under Revenue Rulings 78-142, 1978-1 C.B. 111, and 90-27, 1990-1 C.B. 50.  Instead, the Government makes the summary assertion that the Second Circuit's "findings" disprove Plaintiff's point that the Banks' return was more dependent on Partnership operations than that of most preferred shareholders.  *See* Gov't Br. at 16-17 (quoting 459 F.3d at 239-40).  The Government is mistaken:  the Second Circuit did not purport to make any new findings.[4]

Furthermore, the Second Circuit did not compare the Banks' interests to preferred stock. The Government observes that the Second Circuit cited two cases—*Jewel Tea Co. v. United States*, 90 F.2d 451 (2d Cir. 1937) and *Commissioner v. O.P.P. Holding Corp.*, 76 F.2d 11 (2d Cir. 1935)—that recognize preferred stock as equity for tax purposes even though highly debt-like.  Gov't Br. at 16.  While the Second Circuit cited *Jewel Tea* and *O.P.P. Holding* regarding general indicia of debt, it did not address the statements in those cases regarding the substantial similarity between preferred stock and debt.  If anything, the fact that the Second Circuit mentioned these cases while making no attempt to distinguish the Banks' interests from

---

[4] The Government's brief relies on certain statements by the Second Circuit that reflect some apparent misunderstandings of this Court's findings.  *See* Plaintiff's 704(e) Br. at 9-14 (relating to the GECC performance guaranty) and 33-38 (relating to the economic reality of the Banks' interest in profits).  Regardless of their inaccuracy, some of the statements relied on by the Government are irrelevant in distinguishing between debt and preferred equity interests.  For example, since preferred stock typically does not participate in profits beyond a fixed dividend, the Second Circuit's statements regarding the Banks' participation in profits provide no basis for distinguishing the Banks' interests from preferred stock.

preferred stock seemingly confirms that the court was not issuing a definitive holding that the Banks were lenders.

C.    Conclusion.  The Second Circuit's opinion accepted the Government's narrow argument that the Banks' interests were too debt-like to qualify as a "bona fide equity participation" under *Culbertson*, but did not hold those interests to be debt.  Even if the Banks were not partners under *Culbertson*, their interests, like preferred stock and preferred partnership interests, were equity under other well-established law.

## II.    The Banks Owned Capital Interests For Purposes Of Section 704(e)(1)

The Banks must be respected as partners under section 704(e)(1), because (1) their interests were capital interests, (2) capital was a material income-producing factor in the Partnership, and (3) the Banks were the "real owners" of their interests.  *See* Plaintiff's 704(e) Br. at 6-16.  The Government's brief swings between flawed argument and innuendo to support its assertion that section 704(e)(1) does not apply to the Banks' interests.

A.    The Second Circuit's *Culbertson* holding does not preempt section 704(e)(1). The Government's principal argument under section 704(e)(1) is that (1) the Second Circuit held that *Culbertson* requires a facts-and-circumstances analysis, (2) the section 704(e)(1) regulations employ a facts-and-circumstances test to determine whether the donee of a capital interest is the real owner, and (3) therefore, the Second Circuit's *Culbertson* analysis precludes any determination that section 704(e)(1) applies to the Banks' interests.  *See* Gov't Br. at 2-3, 12-16. The Government's syllogism is fundamentally flawed.

First, the courts consistently have recognized that *Culbertson* and section 704(e)(1) establish different substantive standards.  *See* Plaintiff's 704(e) Br. at 30-33.  The *Culbertson* standard is subjective:  whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."  337 U.S. at 742.  In contrast,

section 704(e)(1) establishes an objective standard based on ownership of a capital interest in a capital-intensive partnership. The legislative history of section 704(e)(1) confirms that Congress enacted section 704(e)(1) to provide an independent standard for determining partner status in such cases. *See* Plaintiff's 704(e) Br. at 22-27.[5]

Second, because *Culbertson* and section 704(e)(1) establish different standards, the facts-and-circumstances test used to apply *Culbertson* does not apply for purposes of section 704(e)(1). It would have been absurd for Congress to try to resolve the confusion caused by *Culbertson*'s facts-and-circumstances test by enacting a statute that merely replicated that test.[6] Instead, Congress enacted a new objective test in section 704(e)(1) that implicates different facts and circumstances from those relevant in applying the *Culbertson* test.

Third, contrary to the Government's assertion, Gov't Br. at 13, the factors listed in Treasury Regulation § 1.704-1(e)(2) are irrelevant to whether the Banks' interests were "capital interests." These factors apply only to determine whether a donee is the real owner of an interest acquired by gift. The Banks were not donees, and the Government apparently agrees that they owned their interests. *See* United States' Response in Opposition to Plaintiff's Additional Proposed Findings of Fact and Conclusion of Law, at 4-5. And contrary to the Government's

---

5    The Government tries to bolster its importation of *Culbertson* principles into section 704(e)(1) by citing *Atlas v. United States*, 555 F. Supp. 110, 114 (N.D. Ill. 1982), for the proposition that "*Culbertson* is still good law." Gov't Br. at 8-9 n.7. The Government ignores the very next sentence in *Atlas*, which notes that "section 704(e)(1) replaced the 'good-faith/business purpose' test in force in 1949 with the 'ownership of a capital interest' test." 555 F. Supp. at 114. Thus, *Atlas* supports the conclusion that section 704(e)(1) and *Culbertson* establish different standards.

6    The Government suggests that Congress enacted section 704(e)(1) in response to judicial interpretations of *Culbertson*, rather than in response to the decision itself. *See* Gov't Br. at 8-9 n.7. Whatever the merits of that distinction, it does not support the Government's apparent position that only those who satisfy *Culbertson*'s intent test can be respected as partners under section 704(e)(1). Indeed, that interpretation would thwart Congressional intent by leaving intact the very confusion that prompted the enactment of section 704(e)(1).

assertion, Gov't Br. at 13, these factors are completely different from the facts and circumstances cited by the Second Circuit.[7]

Finally, because section 704(e)(1) establishes a different standard from *Culbertson*, the Government's invocation of the law of the case in arguing against additional findings by this Court, *see* Gov't Br. at 2, 11, is incorrect.  The Government does not dispute the accuracy or veracity of Plaintiff's proposed findings, but argues only that this Court's hands are tied.  *See* United States' Response in Opposition to Plaintiff's Additional Proposed Findings of Fact and Conclusion of Law, at 1-2.  This Court's hands are not tied.  The Second Circuit decided not to remand for additional findings under *Culbertson*, 459 F.3d at 240, but it expressly remanded the case so this Court could consider section 704(e)(1), *id.* at 241 n.19.  In addressing the section 704(e)(1) issue presented by the remand, this Court has the discretion to make additional findings and to clarify or correct prior findings.[8]  Thus, while the existing record and findings are more than sufficient for this Court to conclude that, by comparison to other preferred equity

---

[7]  For example, the first regulatory factor for determining whether a donee is the real owner of a capital interest is whether the partnership may retain income beyond the reasonable needs of its business without the consent of its partners.  *See* Treas. Reg. § 1.704-1(e)(2)(ii)(a). Thus, a donee's inability to require distribution of its share of partnership income may indicate that the donee has not acquired full ownership of that interest.  In contrast, the Government has never claimed that the Partnership could retain income to which the Banks were entitled.  In fact, the Government asserts the opposite:  it maintains that the Banks' interests were "in the nature of" debt because the Banks had an enforceable right to receive regular payments of "principal" and "interest."  *See* Gov't Br. at 13.  Similarly, while the Government's brief identifies subordination to general creditors as one of the facts and circumstances considered by the Second Circuit, Gov't Br. at 13, the section 704(e) regulations do not even remotely imply that subordination to general creditors affects whether a donee of a capital interest is the "real owner" of that interest.

[8]  Contrary to the assertions in the Government's brief, Gov't Br. at 9, nothing in the law-of-the-case doctrine precludes this Court from clarifying or, where appropriate, correcting the factual record.  *See Crane Co. v. Am. Standard, Inc.*, 603 F.2d 244, 246 n.1 (2d Cir. 1979); *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998); *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994).

instruments, the Banks' interests were equity for tax purposes and that the Banks were partners under section 704(e)(1), it is entirely appropriate for this Court to make additional findings or to clarify its prior findings.

B.     Section 704(e)(1) is not limited to "family partnerships."  While insinuating that section 704(e)(1) applies only to "family partnerships," *see* Gov't Br. at 7, the Government ignores the authorities cited in Plaintiff's brief that are directly on point.  Those authorities— including administrative pronouncements by the IRS—eliminate any doubt that section 704(e)(1) applies beyond the family partnership context.  The Government's suggestion that the legislative history supports limiting section 704(e)(1) to "family partnerships" is wrong.[9]  To the contrary, the legislative history shows that Congress intended to "harmonize the rules" by applying to family partnerships the same principles that apply to other forms of business.  *See* Plaintiff's 704(e) Br. at 16-18.  The Government's argument—which implies that Congress enacted section 704(e)(1) to make it easier to create family partnerships than to create partnerships between unrelated parties—turns the legislative history on its head.

C.     Capital was a material income-producing factor in Castle Harbour.  The Government asserts that capital was not a material income-producing factor in Castle Harbour because, in its view, the maintenance of assets by CHLI prevented the Banks' investment from contributing to the production of income by Castle Harbour.  *See* Gov't Br. at 11 n.8.[10]

---

[9]  It is also inconsistent with the Government's acknowledgement, on appeal, that section 704(e)(1) applies outside the family partnership context.  *See* Appellant Reply Br. at 14.

[10]  The Government's argument ignores the fact that the Banks' capital contributions were important to achieving the business purposes for creating the Partnership, such as enabling GECC to reduce its consolidated debt/equity ratio.  Further, the legislative history states that section 704(e)(1) may apply even if the partnership does not benefit from admission of a new partner.  *See* Plaintiff's 704(e) Br. at 25 (quoting H.R. Rep. No. 82-586 (1951)).

The regulations refute the Government's argument: "Capital *is* a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business conducted by the partnership." Treas. Reg. § 1.704-1(e)(1)(iv) (emphasis added). The undisputed fact that a substantial portion of Castle Harbour's income resulted from the employment of capital ends the inquiry.[11] Once again, the Government ignores the plain language of its own regulations: it offers no explanation for how to reconcile its position with the unambiguous language of the regulations.[12]

D.    The allocation of the Partnership's income is irrelevant to the application of section 704(e)(1). The Government's brief maintains that, regardless of whether the Banks were partners under section 704(e)(1), the allocation of Partnership income to them was invalid under section 704(b) and (e). *See* Gov't Br. at 4 ("Nothing in § 704(e) or the corresponding regulations requires or allows the allocation of 98% of the taxable income to the banks."). This Court's prior opinion addressed the application of section 704(b), and it is not at issue in this remand. Section 704(e)(1) does not address the allocation of partnership income, and although sections 704(e)(2) and (3) address allocation issues, neither of those provisions applies to the Banks' interests.

---

[11] *See* Plaintiff's 704(e) Br. at 5; *see also* JX 20 at 0008769; JX 24 at 0008809; JX 37 at 0016341; JX 49 at 0008963; JX 53 at 0009076; JX 61 at 0018000; JX 68 at 0027168; Tr. at 532:22 - 533:3 (7/26/04, Hyde); Tr. at 776:18 - 777:8 (7/27/04, Myers).

[12] In support of its effort to rewrite the section 704(e) regulations for this case, the Government cites *Poggetto v. United States*, 306 F.2d 76 (9th Cir. 1962). *Poggetto* involved a partnership whose principal revenue source consisted of sales commissions. *Id.* at 78. Over its first 15 years the partnership had operated with nominal capital of $500. *Id.* The taxpayers' daughter purportedly contributed $5,000 in exchange for an interest. *Id.* The court held that capital was not a material income-producing factor in the partnership's service business, relying on the same regulation (§ 1.704-1(e)(1)(iv)) that the Government has chosen to ignore in its brief. *See id.* at 79. Moreover, unlike the Banks' investment, the daughter's contribution did not have any non-tax business purpose. *See id.* In *Sparks v. Commissioner*, 238 F.2d 845, 849-50 (7th Cir. 1956), cited in the Government's quotation of *Poggetto*, the court applied *Culbertson* in two tax years (1948 and 1949) preceding the enactment of section 704(e)(1).

The Government's real complaint is not with section 704(e)(1), but with the ceiling rule

of section 704(c).  In 1984, Congress gave the IRS the right to modify the ceiling rule.  Nine

years later, after the Castle Harbour transaction had closed, the IRS issued regulations

prospectively changing the ceiling rule.  The Government's effort to reclassify the Banks'

interests as "not equity" is really an attempt to backdate those regulations.

Respectfully submitted this 23rd day of March 2007,

> PLAINTIFF, TIFD III-E INC., the Tax Matters Partner of
> CASTLE HARBOUR-I LIMITED-LIABILITY COMPANY
>
> _____
> David S. Hardy, ct20904
> Ann H. Rubin, ct04486
> Anthony M. Fitzgerald, ct04167
> CARMODY & TORRANCE LLP
> 195 Church Street, P.O. Box 1950
> New Haven, Connecticut  06509-1950
> Telephone:     (203) 777-5501
> Facsimile:     (203) 784-3199
> Email:         dhardy@carmodylaw.com
>                arubin@carmodylaw.com
>                afitzgerald@carmodylaw.com

OF COUNSEL

William F. Nelson, ct22883
David J. Curtin, ct22881
John A. Galotto, ct22882
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C.  20036
Telephone:     (202) 775-1880
Facsimile:     (202) 775-8586
Email: wnelson@mckeenelson.com
       dcurtin@mckeenelson.com
       jgalotto@mckeenelson.com

Suzanne Feese, ct23162
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia  30309
Telephone:     (404) 572-3566
Facsimile:     (404) 572-5100
Email: sfeese@kslaw.com

<u>**CERTIFICATE OF SERVICE**</u>

It is hereby certified that service of the foregoing Plaintiff's Reply Brief on Section

704(e) of Internal Revenue Code has been made today, March 23, 2007, by sending a true and

correct copy thereof via overnight delivery to the following:

>Robert J. Higgins
>Trial Attorney, Tax Division
>U.S. Department of Justice
>555 4th Street, N.W., Rm. 8816
>Ben Franklin Station
>Washington, D.C.  20001

and by regular mail, postage prepaid to:

>John B. Hughes
>Assistant U.S. Attorney
>Chief, Civil Division
>157 Church Street
>New Haven, CT  06508


>_____
>David S. Hardy, ct20904
>Ann H. Rubin, ct04486
>Anthony M. Fitzgerald, ct04167
>CARMODY & TORRANCE LLP
>195 Church Street, P.O. Box 1950
>New Haven, Connecticut  06509-1950
>Telephone:     (203) 777-5501
>Facsimile:     (203) 784-3199
>Email:          dhardy@carmodylaw.com
>                     arubin@carmodylaw.com
>                     afitzgerald@carmodylaw.com