3:01CV01839 (SRU)
3:01CV01840 (SRU)

*IN THE UNITED STATES DISTRICT COURT FOR THE*
*DISTRICT OF CONNECTICUT*

TIFD III-E INC.,THE TAX MATTERS PARTNER OF
CASTLE HARBOUR-I LIMITED-LIABILITY COMPANY,

Plaintiff

v.

UNITED STATES OF AMERICA,

Defendant

**UNITED STATES' REPLY BRIEF**

KEVIN J. O'CONNOR
    United States Attorney
JOHN B. HUGHES
    Chief, Civil Division
ROBERT J. HIGGINS
    Trial Attorney
     United States Department of Justice (Tax)
     Washington, D.C. 20044

Page

# TABLE OF CONTENTS

**United States' Reply Brief**………………………………………………………….…1

    **A.**    **Castle Harbour was a tax shelter and the FPAA determination that the substantial understatement penalty applies should be sustained**………...…..1

        **1.**    **Introduction**………………………………………………………1

        **2.**    **Castle Harbour is a tax shelter and its principal purpose was to avoid or evade income tax**...........................................................3

    **B.**    **The Partnership lacked substantial authority**…………………………....7

    **C.**    **The partnership lacked a reasonable belief that its reporting of the transaction was proper**……………………………………………………10

    **D.**    **The Negligence Penalty is Applicable**……………………………………… 12

    **E.**    **Castle Harbour has waived any partnership-level reasonable cause defense**........................................................................................15

**Conclusion**………………………………………………………………………...…17

Appendix D  ………………………………………………………………… 20

# TABLE OF AUTHORITITIES

**Cases:**

*Chimblo v. Commissioner*, 177 F.3d 119, 126 (2d. Cir. 1999)……………………………14

*Commissioner v. Culbertson*, 337 US 733 (1949)……………………………………7, 8, 13

*Commissioner v. O.P.P. Holding Corp.*, 76 F.2d 11 (2d Cir.1935)………………………...9

*Fox v. Commissioner*, 80 T.C. 972, (1983)………………………………………………..12

*Gilbert v. Commissioner*, 248 F.2d 399 (2nd Cir. 1957)……………………………………8

*Goldman v. Commissioner*, 39 F.3d 402, 408 (2d Cir. 1994) ……………………………..14

i

**Page**

*Klamath Strategic Investment Fund, LLC v. United States*,
2007 WL 283790 (E.D. Tex. January 31, 2007)………………………………………16

*Lucas v. Earl*, 281 U.S. 111 (1930)………………………………………………………… 13

*Long-Term Capital Holdings v. United States*,
330 F. Supp. 2d 122 (D. Conn. 2004)…………………………………………… *Passim*

*Jewel Tea Co. v. United States*, 90 F.2d 451 (2d Cir.1937)…………………………………9

*John Kelley Co. v. Commissioner*, 326 U.S. 521 ( 1946)..……………………….…..…..8

*Nicole Rose Corp. v. Commissioner*, 117 T.C. 328, 341 (2001),
*aff'd*, 320 F.3d 282 (2d Cir., 2003)………………………………………………………13

*O'Hare v. Commissioner*, 641 F.2d 83 (2d Cir. 1981)…………………………………...…8

*Pasternak v. Commissioner*, 990 F.2d 893, 903 (6th Cir. 1993)……………………………14

*Santa Monica Pictures v. Commissioner,* T.C. Memo 2005-104 (2004)…………………12, 15

*TIFD III-E, Inc. v. United States*, 223 F.R.D. 47 (D. Conn. 2004)………………………...14

*TIFD III-E, Inc. v. United States*, 459 F.3d 220 (2d Cir. 2006), *rev'g and
remanding*, 342 F.Supp. 2d (D. Conn. 2004)………………………………………… *Passim*

**Page**

**Statutes:**

Internal Revenue Service of 1986 (26 U.S.C.):

§ 704…………………………………………………………………5 6, 8, 14, 15

§ 723……………………………………………………………………..6

§ 6221…………………………………………………………………..11

§ 6222…………………………………………………………………… 11

§ 6226……………………………………………………………...10, 11, 15

§ 6662 …………………………………………………………10, 12, 13, 15

§ 6664 …..………………………………………………………………12

**Miscellaneous:**

Treasury Regulations (26 C.F.R):

§ 1.704-1……………………………………………………………….6

§ 1.6662-3…………………………………………………………...13, 15

§ 1.6662-4………………………………………………………..*Passim*

§ 1.6664-4…………………………………………………………...…12

§ 301.6221……………………………………………………………10, 11

§ 301.6221T……..………………………………………………10, 11, 15

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIFD III-E INC.,THE TAX MATTERS PARTNER OF CASTLE HARBOUR-I LIMITED-LIABILITY COMPANY, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NOS. 3:01CV01839(SRU) |
| | ) | 3.01CV01840(SRU) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' REPLY BRIEF

Pursuant to the Court's November 15, 2006 Memorandum of Conference, the United

States files this brief in reply to the plaintiff's brief in opposition to the applicability of accuracy-

related penalties to Castle Harbour and the form of judgment proposed by the United States. [1]

**A.    Castle Harbour was a tax shelter and the FPAA determination that the substantial understatement penalty applies should be sustained**

**1.    Introduction**

Plaintiff has the burden to prove that the substantial understatement penalty does not

apply to the tax shelter item at issue, *i.e.* Castle Harbour's income for 1997 and 1998.  The

---

[1]   This Court's order of November 15, 2006, setting the briefing schedule for the issues on remand, did not require or request additional proposed factual findings.  As the Second Circuit remanded the case for proceedings consistent with its opinion, the trial court should not make factual findings inconsistent with the Second Circuit's conclusions.  The government's response here fully addresses the factual and legal allegations in plaintiff's proposed findings regarding penalties.

1

regulations provide that plaintiff must satisfy two tests to sustain its burden.  Treas. Reg. §§

1.6662-4(d), 1.6662-4(g)(1)(i) (A) and (B) and (ii):[2]

> (A) There is substantial authority (as provided in
> paragraph (d) of this section) for the tax treatment
> of that item; **and**

> (B) The taxpayer reasonably believed at the time the
> return was filed that the tax treatment of that item
> was more likely than not the proper treatment.

Treas. Reg. § 1.6662-4(g)(1)(i) (A) and (B) (emphasis added).

"The substantial authority standard is an objective standard involving an analysis of the

law and application of the law to relevant facts."  Treas. Reg. § 1.6662-4(d)(2).  Substantial

authority exists where "the weight of the authorities supporting the treatment is substantial in

relation to the weight of authorities supporting contrary treatment." Treas. Reg. § 1.6662-

4(d)(3)(i).  Weight is determined in light of the particular facts and circumstances of the case at

hand and the weight accorded any particular authority depends on its relevance and

persuasiveness.  See Treas. Reg. § 1.6662-4(d)(3)(i & ii).  The definition of what constitutes

"authority" is explicitly limited to written determinations provided to the taxpayer and legal

sources (including statutes, regulations, case law, legislative history, etc.).  See Treas. Reg. §

1.6662-4(d)(3)(iii & iv);  *Long Term Capital Holdings v. United States,* 330 F. Supp. 2d 122, 201

---

[2]  Section 6662(d)(2)(C)(ii), App. B,  provides generally that corporations engaged in tax shelter
transactions cannot escape the substantial understatement penalty on the grounds of "substantial
authority" and "reasonable belief." But the Treasury regulation provides a special transition rule
for transactions that occurred before December 9, 1994. The transaction at issue here occurred in
October 1993. In those limited circumstances such taxpayers may seek relief from the penalty
upon a showing of both "substantial authority" and "reasonable belief." *See* Treas. Reg. §
1.6662-4(g)(1)(i); *See Long Term Capital*, 330 F. Supp. 2d at 201-05.

(D. Conn. 2004).  As explained by the district court in *Long Term Capital*, *id. at 203 [footnotes omitted]*,

> In sum, the regulation permits a taxpayer to escape penalties where the taxpayer can cite legal sources that would hold for the taxpayer on the merits of identical or closely analogous facts if the same were found by the court, even if such legal authority was rejected during determination of the taxpayer's liability.  It does not permit consideration as authority rejected evidence offered by the taxpayer, even in cases in which the merits of the taxpayer's tax liability and the threshold application of a substantial understatement penalty are decided jointly merely by making fact findings.

In this partnership-level proceeding, the plaintiff (TIFD III-E, Inc., the tax matters partner) has not established substantial authority for the return position of Castle Harbour and failed to assert, and consequently waived, a reasonable belief defense by Castle Harbour.   Castle Harbour thus failed to satisfy the two-prong test set forth in the regulations.  The FPAA determination that the accuracy-related penalty for substantial understatement of income tax (substantial understatement penalty) is applicable to Castle Harbour should be sustained.

## 2.  Castle Harbour is a tax shelter and its principal purpose was to avoid or evade income tax.

Castle Harbour first tries to avoid the application of this two-prong test by contending that it is not a tax shelter, in which case it would not have to satisfy the "reasonable belief" test.  The regulations define a "tax shelter" as an entity with a principal purpose to "avoid or evade Federal income tax," and which does not claim tax benefits "in a manner consistent with the statute and Congressional purpose."  Treas. Reg. § 1.6662.4(g)(2)(ii) and (ii).  The record is clear that Castle Harbour was "largely tax motivated."  *TIFD III-E, Inc. v. United States*, 459 F.3d 220, 224 (2d Cir. 2006), *rev'g and remanding*, 342 F.Supp. 2d. 94 (D.Conn. 2004).  The Second Circuit's observation about Castle Harbour's tax-motivated purpose is dispositive.  Pl. Rsp. Br.

20.[3]  The Second Circuit's view parallels the applicable regulation. The plaintiff's contention

that this Court should disregard the Second Circuit's view of their tax motivated purpose is

wishful thinking.

An entity is a tax shelter if its principal purpose is "to avoid or evade Federal income

tax." Treas. Reg. § 1.6662-4(g)(2)(i).   A "principal purpose" is a purpose that "exceeds any

other purpose."  *Id.*  The regulation provides further that the "existence of economic substance

does not of itself establish that a transaction is not a tax shelter."  *Id.*  With respect to this Court's

holding regarding economic substance, the Second Circuit noted that the "our disposition makes

it unnecessary for us to reconsider whether the district court correctly determined that the

characterization of the banks' interest as equity was not a sham."  *Id.* at 231 n. 11.  Thus, even if

there were some elements of economic substance present when GECC's created the Castle

Harbour entity, those elements are insufficient to establish that Castle Harbour's principal

purpose was other than "to avoid or evade Federal income tax."  Treas. Reg. § 1.6662-4(g)(2)(i).

The Second Circuit's opinion is quite definitive in this regard.

Plaintiff's rehash of its non-tax business purpose arguments (Pl. Resp. Br. 20-23) cannot

obviate the fact that GECC sheltered over $310 million of income from 1993 through 1998 and

reaped an immediate reduction of $55 million in its tax reserve in 1993 when the Castle Harbour

entity began to function.  The GECC executives who testified admitted they were not tax experts

and did not understand the details of Castle Harbour, undercutting any claim that tax avoidance

was other than a principal purpose.  Initial Brief on Remand 6.[4]

---

[3]  References to "Pl. Rsp. Br." are to the plaintiff's brief filed on March 2, 2007.
[4]   References to "Initial Brief on Remand" are to the United States Initial Brief on Remand, filed
on January 31, 2007.

4

The operation of Castle Harbour demonstrates that, from start to finish, the principal purpose of Castle Harbour was to avoid income taxes otherwise owed by GECC.  A fee of $9 million was paid to Babcock & Brown for bringing the transaction to GECC.  The Second Circuit held that the Dutch banks' return on their investment at the Applicable Rate was a virtual certainty.  459 F.3d at 226-29.  The opinion recognized that the use of the Dutch banks' investment was restricted severely by the operating agreements requirement that Castle Harbour keep Core Financial Assets in amount equal to 110% of the unpaid balance of the Dutch banks investment.  *Id.* at 228.  Other aspects of Castle Harbour's operation also demonstrate that a principal purpose of the transaction was tax avoidance.  The record is clear that Castle Harbour contracted with other GECC entities to manage the leases on the aircraft contributed by GECC.  The Dutch banks had no managerial role and Castle Harbour itself had no operational employees.  It operated totally outside the United States to avoid potential taxation of the Dutch banks.  Finally, GECC ended the Dutch banks' participation in Castle Harbour after it became concerned that, due to a change in U.S. tax laws, the Dutch banks might be taxable on the income allocated to them.  As part of the shelter transaction, GECC's had agreed to pay any United States taxes imposed on the Dutch banks.

There is no merit to the argument that Castle Harbour can avoid classification as a tax shelter under the regulations by asserting now that the factual record demonstrates that the principal purpose of Castle Harbour was to claim tax benefits consistent with any statute or Congressional purpose. Treas. Reg. § 1.6662-4(g)(2)(ii).  App. A, A32.  Castle Harbour, through the testimony of GECC executives and documents, contended throughout this partnership proceeding that the purpose of Castle Harbour was to raise capital.  App. B. Ex. 2.  But this self-

5

serving testimony fell far short of providing a complete picture about the plaintiff's purposes; recall that plaintiff withheld from the record documents, or portions of documents, that may have elaborated on any tax saving purposes.  App. B. Exs. 2, 4.

Moreover, plaintiff's apparent contention that Castle Harbour's alleged compliance with § 704(c) would satisfy Treas. Reg. § 1.6662-4(g)(2)(ii) is misplaced.  As the Second Circuit observed, § 704(c) and the so-called "Ceiling Rule" was part and parcel of the "extraordinarily complex maze of partnership provisions" that comprised the Castle Harbour scheme.  459 F. 3d at 226, 226n4.   In fact, the Castle Harbour entity allocated $310 million of Castle Harbour's taxable income to the tax indifferent Dutch banks to avoid taxation of GECC's income, not to faithfully comply with the Congressional purpose in adopting § 704(c).  This section had zero impact on the Castle Harbour tax shelter scheme as there was no taxable depreciation to allocate among the GECC entities and the tax indifferent Dutch banks.  The aircraft contributed by GECC were fully depreciated for tax purposes.  459 F.3d at 225.  Section 723 of the Internal Revenue Code required the tax basis of the aircraft to carryover to Castle Harbour.  App. D.[5]

Part of Castle Harbour's "extraordinarily complex maze" was the investment accounts, capital accounts, and Exhibit E payments to the Dutch banks that involved the allocation of 98% of "operating income" to the Dutch banks.  *Id.*  It was with respect to "tax book income," as calculated pursuant to § 704 and the regulations thereunder, that § 704(c) is implicated.   Treas. Reg. § 1.704-1(b)(2)(iv).  These calculations affected the financial statements of Castle Harbour, not the allocation of taxable income.  The financial statements, in turn, were the product of the GECC self-defined terms (in accordance with the Babcock and Brown shelter proposal) designed

---

[5]  References to "App. D" are to the appendix filed with this brief.

to ensure that the banks received essentially a fixed return at the Applicable Rate of 9.03587%.

*Id.* The "aggressive depreciation" of Castle Harbour's aircraft and the allocations of such

depreciation to the Dutch banks helped facilitate the fine-tuning of the actual amounts paid the

Dutch banks and guaranteed their fixed return.   The Second Circuit described these provisions

as "window dressing." *Id*. at 236.   Plaintiff's attempt to interject the "ceiling rule" of § 704(c)

as a shield for this shelter is without merit.  GECC only solicited tax indifferent foreign

companies to participate in Castle Harbour.  *Id.* at 225.  Tax indifferent entities would not suffer

regardless of the amount of taxable income allocated to them, but only GECC would benefit.

Allocating tax book depreciation to the Dutch banks facilitated the operation of the tax shelter

Castle Harbour, hardly a Congressional purpose.

### B.    The Partnership lacked substantial authority

The FPAA determination that the substantial understatement penalty is applicable should

be sustained as Castle Harbour lacked substantial authority for its allocation of $310 million of

income to Dutch banks that the Second Circuit has determined were not bona fide equity

participants in the enterprise and therefore not partners for tax purposes.  459 F.3d 240-41.

Treas. Reg. §§ 1.6662-4(a).  App. A, A25.  As the district court in *Long Term Capital Holdings*

*v. United States*, 330 F. Supp. 2d at 201 noted,

> "The substantial authority standard is an objective standard
> involving an analysis of the law and application of the law to
> relevant facts."   Treas.  Reg. § 1.6662-4(d)(2).  It exists where
> "the weight of the authorities supporting the treatment is
> substantial in relation to the weight of authorities supporting
> contrary treatment."   Treas.  Reg. § 1.6662-4(d)(3)(i).  Weight is
> determined in light of the particular facts and circumstances of the
> case at hand and the weight accorded any particular authority
> depends on its relevance and persuasiveness.  *See* Treas.  Reg. §
> 1.6662-4(d)(3)(i & ii).  The definition of what constitutes

7

"authority" is explicitly limited to written determinations provided
to the taxpayer and legal sources (including statutes, regulations,
case law, legislative history, etc.).   *See* Treas.  Reg. § 1.6662-
4(d)(3)(iii & iv).

The plaintiff cannot satisfy this standard.  The Second Circuit's opinion in this case is a
clear rejection of the authorities relied upon by the plaintiff as support for Castle Harbour's
position when applied to the facts in this case.  Pl. Rsp. Br. 7-15.  Furthermore, plaintiff's
apparent contention that relying on *Commissioner v. Culbertson*, 337 US 733 (1949), in its trial
brief demonstrates substantial authority for plaintiff's return position is difficult to comprehend.
Pl. Rsp. Br. 7.  *Culbertson* is substantial authority for the return position not taken by Castle
Harbour.   In order to agree with the plaintiff, this Court would have to reject the reasoning of the
Second Circuit regarding *Culbertson* and wish away the Second Circuit's opinion by describing
it as "novel."  Pl. Rsp. Br. 8.  Nothing in the opinion, however, suggests that the Second Circuit
viewed its application of *Culbertson* as novel or even an extension of existing law.

With respect to reliance on § 704(e), the government's brief filed on March 2, 2007,
clearly establishes that the Dutch banks do not qualify as members of a family partnership.  The
Second Circuit's opinion "compels the conclusion" that the Dutch banks did not "own a capital
interest" in Castle Harbour.  The Dutch Banks are not partners within the meaning of § 704(e).
Moreover, § 704(e) is a scarcely utilized provision of the Internal Revenue Code and none of the
previous instances of its application are remotely analogous to the Dutch banks' participation in
Castle Harbour.

Plaintiff's analysis of four cases identified by the government as "well-established law"
applied by the Second Circuit misses the mark.  The Second Circuit cited these cases, among

others, in the opinion rejecting Castle Harbour's return position, thus recognizing substantial legal authority in opposition to Castle Harbour's treatment of the Dutch banks as equity partners. Pl. Rsp. Br. 10; Initial Brief on Remand 3 n4; Treas. Reg. §1. 6662-4(d)(3).[6]  Plaintiff's *Culbertson* analysis fails as it is based on a false premise, *i.e.*, describing the Dutch banks' interest as "an equity interest" when in fact the Second Circuit held that it was the opposite: "not a bona fide equity participation." 459 F. 3d at 241.  With respect to plaintiff's comments regarding *O'Hare v. Commissioner*, 641 F.2d 83 (2d Cir. 1981), plaintiff overlooked the Second Circuit's repeated citations to this case in the opinion rejecting Castle Harbour's return position. 459 F.3d at 232-33, 241.  The Second Circuit found *O'Hare* quite helpful in determining that the Dutch banks' interests were not bona fide equity.  *Id.* at 233.  The comments by the plaintiff regarding *John Kelley Co. v. Commissioner*, 326 U.S. 521, and  *Gilbert v. Commissioner*, 248 F.2d 399 (2d Cir. 1957) fall flat for the same reasons.   The Second Circuit relied on these decisions in holding that the Dutch banks were not bona fide equity participants in Castle Harbour.  459 F.3d *passim*.  These cases represent substantial authority contrary to the return position taken by Castle Harbour.  Treas. Reg. §1. 6662-4(d)(3).

The plaintiff's attempt to identify substantial authority for Castle Harbour's return position that the Dutch banks held an equity interest also falls short.  Pl. Rsp. Br. 13-14.  Perhaps if the Dutch banks had agreed to be preferred shareholders of Castle Harbour the decision in *Jewel Tea Co. v. United States*, 90 F.2d 451, 453 (2d Cir. 1937) (L. Hand, J.) would be of some utility to the plaintiff.  Here, though, the Second Circuit relied on the actual facts of this case, and

---

[6]   "There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment . . ." Treas. Reg. § 1. 6662-4(d)(3).

the teachings of *Jewel*, 459 F.3d at 239, to hold that the Dutch banks' interests were akin to debt and not a bona fide equity participation. 459 F.3d at 240-41. In a similar vein, the Second Circuit relied upon *Commissioner v. O.P.P. Holding Corp.*, 76 F.2d 11, 12 (2d Cir. 1935). 459 F. 3d at 232. These cases thus constitute substantial authority for the government's position, not the plaintiff's. The Second Circuit, being fully aware of this well established case law, applied the case law to the facts and circumstances of this case to hold that the Dutch banks' interest was akin to debt and not a bona fide equity participation. The plaintiff has not identified a single case that has analogous facts and a holding that the plaintiff desired.

**C.  The partnership lacked a reasonable belief that its reporting of the transaction was proper.**

Plaintiff argues that Castle Harbour is not a tax shelter in order to avoid application of the second prong of the test, i.e., that it reasonably believed at the time that it filed its return that it had properly reported the transaction on its return.  It is plain, on the record in this case, where plaintiff withheld the opinion letters, that plaintiff cannot even begin to satisfy the reasonable belief test.  Indeed, plaintiff foregoes any such attempt.   Therefore this Court should find that the substantial authority penalty is appropriate.

Plaintiff suggests that the reasonable belief test is exclusively a question to be raised only in a partnership level proceeding.  We disagree with that suggestion.  At issue in this partnership level proceeding for the years 1997 and 1998 is the "applicability of any penalty . . . which relates to an adjustment to a partnership item." § 6226(f); Treas. Reg. §§ 301.6221-1T(c), 301.6221-1(c), App. D.  Here, the FPAA for 1997 and 1998 determined, *inter alia*,  that the underpayments of tax resulting from the Castle Harbour transaction were attributable to "negligence or disregard of rules or regulations" and/or  caused "substantial understatements" and thus subject to a 20% penalty on any resulting "underpayment of tax."  App. B, B16.   The applicability of the § 6662 underpayment penalty is therefore at issue in this partnership level proceeding.  § 6226(f).[7]  The plaintiff filing the partnership level petition must raise all partnership level defenses or they are waived.

---

[7]  After a final judgment sustaining any penalties is entered, if the Court sustains the FPAA penalty determination, the applicability of the penalty will be included in the judgment issued.  Subsequently, the Internal Revenue Service will advise the Castle Harbour partners, TIFD III-E, Inc. and TIFD III-M, Inc., of their increased liabilities, which will include an amount

Here, the plaintiff (TIFD III-E, Inc., wholly owned by GECC) incorrectly asserts that the reasonable belief defense to the application of the substantial understatement penalty to tax shelters such as Castle Harbour cannot and should not be raised in this partnership proceeding. Reasonable belief is not a partner level defense.  "Partner-level defenses are limited to those that are personal to the partner or are dependent upon the partner's separate return and cannot be determined at the partnership level."  Treas. Reg. §§  301.6221-1T(d), 301.6221-1(d).

First, the regulations provide that assessment of any penalty shall be made based on partnership level determinations and such determinations "include all the legal and factual determinations that underlie the determination of any penalty."  Treas. Reg. §§ 301.6221-1T(c), 301.6221-1(c).  Judicial review should include the legal standards set forth in the regulations, including the two tests found in Treas. Reg. § 1.6662-4(g)(1)(i) (A) and (B).  *Long Term Capital*, 330 F. Supp. 2d at 205-12.

Second, the determination of "reasonable belief" is not personal to the individual partners.  The relevant "reasonable belief" here is the "reasonable belief" that the tax treatment of items on the Castle Harbour tax returns, which flow through to the partners but is not necessarily controlled by the partners, was "more likely than not proper."  The partners, in turn, must report the tax treatment of the items which flow through to them consistent with the reporting by Castle Harbour on its form 1065 and the forms K-1 Castle Harbour provides to the partners.  § 6222.  The "reasonable belief" is based on the belief of Castle Harbour, as reflected

---

attributable to penalties.  These partners will then have the right to raise partner-level defenses to the penalty liability in a separate, partner level proceeding, *e.g.* a refund action.  Treas. Reg. §§ 301.6221-1T(d), 301.6221-1(d).  The partners, however, are bound by the factual and legal determinations from this proceeding. §§ 6221 & 6226.

by those in effective control of Castle Harbour, in this case GECC.[8]  Courts have generally

looked to the motivations and actions of those in effective control of the partnership when

determining partnership intent.  *Fox v. Comm'r,* 80 T.C. 972, 1007-1008 (1983) (examined

motivations and actions of those who actually ran the partnership affairs and influenced decision-

making), *aff'd*, 742 F.2d 1441 (2d Cir. 1984), *aff'd sub nom.*, *Barnard v. Comm'r,* 731 F.2d 230

(4th Cir. 1984) and *Zemel v. Comm'r,* 734 F.2d 9 (3d Cir. 1984) (unpub. decision); *Agro Science*

*Corp. v. Comm'r,* 934 F.2d 573, 576 (5th Cir. 1991); *ACM Partnership v. Comm'r,* 157 F.3d 231,

258 n.53, (3d Cir. 1998) (quoting *Simon v. Comm'r,* 830 F.2d 499, 507 (3d Cir.1987)).  *See also*,

*Wolf v. Comm'r,* 4 F.3d 709, 713 (9th Cir. 1993) (examining general partner in control of

partnership for evidence of partnership profit motive).

        In this case, the relevant conduct is all of the facts and circumstances that resulted in the

creation of the entities that formed Castle Harbour and the formation of the Castle Harbour

venture with the Dutch Banks, the terms and conditions of the operating and other agreements,

the tax reporting on the forms 1065 of Castle Harbour and the forms K-1 issued by Castle

Harbour to its members and the termination of the Dutch Banks participation in Castle Harbour.

Plaintiff, TIFD III-E is a wholly owned subsidiary of GECC.  The Second Circuit, 459 F.3d at

225, recounted facts found by this Court, beginning with GECC's solicitation of proposals from

investment banks to finance fully depreciated airplanes it was leasing to third parties:

---

[8]        TEFRA requires partners to report consistently with the K-1 flowing from the
partnership, unless they notify the IRS why they are reporting inconsistently.  § 6222.  Treas.
Reg. 1.6664-4 (b) provides that reliance on an information return is reasonable cause only if the
taxpayer did not know or have reason to know the information on the information return was
incorrect.  Treas. Reg. 1.6664-4(c) further provides that when the tax liability which is the
subject of the penalty relates to items from a pass-through entity, such as Castle Harbour, all the
facts and circumstances concerning the individuals and the entities must be taken into account.

> The Castle Harbour partnership, which is the subject of this litigation, resulted from a proposal resented to GECC by Babcock & Brown, to which GECC paid $9 million for its assistance in the creation and execution of the plan. Following Babcock & Brown's proposal in 1993, GECC caused the formation of an eight-year partnership, later named Castle Harbour, and solicited foreign financial companies, which are not subject to tax in the United States, as investors in the partnership. GECC caused its subsidiaries to transfer the ownership of a fleet of fully depreciated aircraft under lease to airlines to the Castle Harbour partnership, in which its subsidiary TIFD III–E, the taxpayer in this action, became the tax-matters partner.

Moreover, in light of the Second Circuit's holding that the Dutch Banks' interests were not equity, 459 F.3d at 241, the only remaining partners with an equity interest were wholly-owned and controlled by GECC.  Plaintiff TIFD III-E's attempt to separate the partnership's conduct and defenses to the penalties from GECC (Pl. Rsp. Br. 23-30) is unavailing on the facts of this case.

Third, the record is barren of any evidence tending to prove that Castle Harbour had a reasonable basis for believing that the tax treatment of the items on the Castle Harbour tax returns was more likely than not proper.  As demonstrated in our opening brief, the record in this case does not support such a defense, a result, at least in part, due to plaintiff's trial strategy of claiming privilege with respect to alleged tax advice.

Plaintiff suggests that its position finds support in the regulations, but it is plain that reasonable belief is a partnership-level item, and plaintiff is unable to cite any decision validating its position.  In fact, the cases support the opposite view.  In this case, as in *Long Term Capital Holdings,* 330 F. Supp. 2d at 205-212, and *Santa Monica Pictures v. Commissioner,* T.C. Memo 2005-104, application of the penalties, including the "reasonable belief" element of § 6662 (and any partnership-level reasonable cause defense pursuant to § 6664) is appropriately determined in the partnership-level proceedings.  § 6662(b)(2) and (d);  § 6664(c)(1). App. B.  In *Long Term*

*Capital*, itself a partnership level proceeding, the petitioners (represented by the same counsel as plaintiff here) argued the applicability of the § 6664(c)(1) "reasonable cause" exception. The trial court adjudicated both the "reasonable belief" element of § 6662 and the reasonable cause defense of § 6664, and concluded that petitioners had not satisfied their burden in either case.

### D.     The Negligence Penalty is Applicable

The Second Circuit's opinion in this case affirmed the IRS's determinations in the FPAA that Castle Harbour improperly allocated taxable income to the Dutch banks. 459 F.3d 220, 223. The allocations to the Dutch banks violated the "first principle of taxation: that income must be taxed to him that earns it." *Commissioner v. Culbertson*, 337 U.S. at 739-40 (citing, *e.g.*, *Lucas v. Earl*, 281 U.S. 111 (1930)). Castle Harbour's allocations to the Dutch banks were attributable to "negligence or disregard of rules or regulations" and are subject to the 20% accuracy-related penalty for negligence. § 6662(a), (b)(1); Treas. Reg. § 1.6662-3. App. A. For the purposes of this statute,

> 'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard.

§ 6662(c); *Nicole Rose Corp. v. Commissioner*, 117 T.C. 328, 341 (2001), *aff'd*, 320 F.3d 282, 284-85 (2d Cir. 2003). As discussed above, plaintiff's reliance on this Court's earlier opinion is misplaced given the subsequent opinion by the Second Circuit. Pl. Rsp. Br. 31.

Plaintiff's attempt to avoid the "too good to be true" indicator of negligence misses the mark. Pl. Rsp. Br. 31-33; Treas. Reg. § 1.6662-3(b)(ii). The fact that some reported cases indicate that other taxpayers, in unrelated circumstances, have convinced a court that this regulation was inapplicable to them, does not advance Castle Harbour's cause here. Pl. Rsp. Br.

32-33.   Plaintiff alleges that Castle Harbour relied upon *Culbertson* in taking its return position

but this fact is not established by the record as the plaintiff claimed privilege with respect to tax

advice received by Castle Harbour.   The Second Circuit emphatically rejected plaintiff's

arguments that *Culbertson* provided substantial authority for Castle Harbour's return position

regarding the allocation of taxable income to the Dutch banks, since the Second Circuit

determined they were not bona fide partners for income tax purposes.   Plaintiff chose to exclude

any such guidance from the trial record by asserting claims of privilege in response to the

government's discovery claims.   App. B, Ex. 4; *TIFD III-E, Inc. v. United States*, 223 F.R.D. 47

(D. Conn. 2004). Furthermore, any internal legal or otherwise expert advice regarding tax

treatment of the transaction was excluded from the trial record by redacting an internal document

to exclude any legal or other advice regarding tax treatment of the transaction.   App. B, Ex. 3.

Plaintiff cannot demonstrate "a reasonable attempt" by Castle Harbour "to ascertain" the

correctness of its return position -- This precludes the plaintiff from establishing on behalf of

Castle Harbour that a "reasonable or prudent person" would not have found this transaction–and

its sought after tax benefits–"too good to be true." *Chimblo v. Commissioner*, 177 F.3d 119, 126

(2d. Cir. 1999) ("too-good-to-be true" offering was clear indication that partnership was created

only to generate tax deductions"); *Goldman v. Commissioner*, 39 F.3d 402, 408 (2d Cir. 1994),

citing *Pasternak v. Commissioner*, 990 F.2d 893, 903 (6th Cir. 1993) (reasonably prudent

persons should investigate claims when they are likely "too good to be true").

Finally, plaintiff's reliance on § 704(c) is again misplaced.   There was no allocation of

depreciation for the purposes of determining the taxable income allocated away from GECC

entities to the tax indifferent Dutch banks.   Plaintiff's reference to the shifting of "the incidence

of taxation on income from one partner to another" did not occur here.  Pl. Rsp. Br. 33.  No

depreciation deductions were taken on Castle Harbour's income tax returns since the assets had

been fully depreciated for tax purposes before contribution.  In any event, the Second Circuit

held that the Dutch banks were not partners for income tax purposes.  The allocation of

depreciation for "tax book income" in Castle Harbour's financial statements was part of the

"complex maze of partnership provisions" designed to ensure that the Dutch banks received the

return of their cash contributions plus interest at the Applicable Rate. 459 F.3d at 226.   The

plaintiff cannot invoke the ceiling rule of § 704(c) to satisfy Treas. Reg. § 1.6662-3(b)(ii).

### E.    Castle Harbour has waived any partnership-level reasonable cause defense

As we have described above, and in our opening memorandum, at issue in this

partnership level proceeding for the years 1997 and 1998 is the "applicability of any penalty . . .

which relates to an adjustment to a partnership item." § 6226(f); Treas. Reg. §§  301.6221-1T(c),

301.6221-1(c), App. D.  Penalties may be relevant at both the partner and partnership level. The

applicable Treasury regulation during the years at issue provides that "[a]ny penalty, addition to

tax, or additional amount that relates to an adjustment to a partnership item, shall be determined

at the partnership level. Treas. Reg. § 301.6221-1T(c). Such determinations at the partnership

level "include all the legal and factual determinations that underlie the determination of any

penalty, addition to tax, or additional amount, other than partner level defenses specified in

paragraph (d) of [the Temporary regulation]." this section. In turn, Treas. Reg. § 301.6221-1T(d)

provides that "[p]artner level defenses to any penalty, addition to tax, or additional amount that

relates to an adjustment to a partnership item, may not be asserted in the partnership level

proceeding, but may be asserted through separate refund actions following assessment and

payment," and such defenses are "limited to those that are personal to the partner or are dependant upon the partner's separate return, and cannot be determined at the partnership level. Examples of these determinations are: whether any applicable threshold underpayment of tax has been met with respect to the partner or whether the partner has met the criteria of section 6664(b)(penalties applicable only where return is filed), or section 6664(c)(1)(reasonable cause exception) subject to partnership level determinations as to the applicability of section 6664(c)(2)."

Here, the FPAA for 1997 and 1998 determined, *inter alia*,  that the underpayments of tax resulting from the Castle Harbour transaction were attributable to "negligence or disregard of rules or regulations" and/or  caused "substantial understatements"  and thus subject to a 20% penalty on any resulting "underpayment of tax."  App. B, B16.   The applicability of the § 6662 underpayment penalty is, without question, at issue in this partnership level proceeding.  § 6226(f).[9]  The plaintiff filing the partnership level petition must raise all partnership level defenses or they are waived.

One such defense is the reasonable cause defense.  I.R.C. 6664(c).  The plaintiff bears the burden of raising and proving any reasonable cause defense.  *Long Term Capital*, 330 F. Supp. 2d at 205-12.  Reasonable cause may be raised at the partnership level, as demonstrated by the decisions in *Long Term Capital Holdings,* 330 F. Supp. 2d at 205-212, and *Santa Monica*

---

[9]  After a final judgment sustaining any penalties is entered, if the Court sustains the FPAA penalty determination, the applicability of the penalty will be included in the judgment issued.  Subsequently, the Internal Revenue Service will advise the corporate partners, TIFD III-E, Inc. and TIFD III-M, Inc., of their increased liabilities, which will include an amount attributable to penalties.  These partners will then have the right to raise partner-level defenses to the penalty liability in a separate, partner level proceeding, *e.g.* a refund action.  Treas. Reg. §§ 301.6221-1T(d),  301.6221-1(d).  The partners, however, are bound by the factual and legal determinations from this proceeding. §§ 6221 & 6226.

*Pictures v. Commissioner,* T.C. Memo 2005-104.  As we pointed out above, counsel for Castle

Harbour is well aware of these cases, particularly of *Long Term Capital Holdings*, since counsel

had represented the taxpayer in that case.

Finally, the government's position here is consistent with those taken in other partnership

level proceedings involving tax shelters.  Pl. Rsp. Br. 34-36.  Plaintiff refers to the recent trial

decision in the Eastern District of Texas, *Klamath Strategic Investment Fund, LLC v. United

States*, No. 5:04-CV-278 (Jan. 31, 2007).  In that partnership-level proceeding, the district court

decided a reasonable cause defenses raised by individual partners, Nix and Patterson.  The

Government had argued, and still maintains, that the court should not have reached those

particular defenses because they were to be decided at the partner level.

This Court need not decide the question whether in a future court hearing a partner-level

proceeding brought by GECC, GECC may raise a reasonable cause defense.  All that is before

the Court now is this partnership-level proceeding.  While the plaintiff could have chosen to

assert a partnership-level reasonable cause defense, it has not done so.  Therefore, there is no

reasonable cause defense at issue, and if the Court finds that penalties are otherwise appropriate,

that is the end of the matter, at least in this partnership-level case.

## CONCLUSION

For the reasons set forth above and in the government's Initial Brief on Remand, the FPAA determinations for 1997 and 1998 regarding the accuracy-related penalties for the substantial understatement of income tax and negligence should be sustained.   A judgment reflecting this determination and the reallocation of income from the Dutch banks to the GECC entities TIFD III-E, Inc. and TIFD III-M, Inc. should be issued.  App. B, B27.

KEVIN J. O'CONNOR
United States Attorney
JOHN B. HUGHES
Chief, Civil Division


_____
ROBERT J. HIGGINS (ct23378)
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C. 20044
Telephone:  (202) 307-6580
Facsimile:  (202) 514-5440


March        , 2007

# Appendix D

**SEC. 723. BASIS OF PROPERTY CONTRIBUTED TO PARTNERSHIP.**

The basis of property contributed to a partnership by a partner shall be the adjusted basis of such property to the contributing partner at the time of the contribution increased by the amount (if any) of gain recognized under section 721(b) to the contributing partner at such time.

******

**§ 301.6221-1T Tax treatment determined at partnership level (temporary).**

 **(a) In general**. A partner's treatment of partnership items on the partner's return may not be changed except as provided in sections 6222 through 6231 of the Code and the regulations thereunder. Thus, for example, if a partner treats an item on the partner's return consistently with the treatment of the item on the partnership return, the Internal Revenue Service generally cannot adjust the treatment of that item on the partner's return except through a partnershiplevel proceeding. Similarly, the taxpayer may not put partnership items in issue in a proceeding relating to nonpartnership items. For example, the taxpayer may not offset a potential increase in taxable income based on changes in nonpartnership items by a potential decrease based on partnership items.

 (b) **Restrictions inapplicable after items become nonpartnership items**. Section 6221 and paragraph (a) of this section cease to apply to items arising from a partnership with respect to a partner when those items cease to be partnership items with respect to that partner under section 6231(b).

 **(c) Penalties determined at partnership level (partnership taxable years ending after August 5, 1997).** Any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item, shall be determined at the partnership level. Partner level defenses to such items can only be asserted through refund actions following assessment and payment. Assessment of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item shall be made based on partnership level determinations. Partnership level determinations include all the legal and factual determinations that underlie the determination of any penalty, addition to tax, or additional amount, other than partner level defenses specified in paragraph (d) of this section.

 (d) Partner level defenses. Party defenses to any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item, may not be asserted in the partnership level proceeding, but may be asserted through separate refund actions following assessment and payment. See section 6230(c)(4). Partner level defenses are limited to those that are personal to the partner or are dependent upon the partner's separate return, and cannot be determined at the partnership level. Examples of these determinations are: whether an applicable threshold underpayment of tax has been met with respect to the partner or whether the partner has met the criteria of section 6664(b)(penalties applicable only where return is filed), or section 6664(c)(1)(reasonable cause exception) subject to partnership level determinations as to the applicability of section 6664(c)(2).

(e) Cross reference. See §§ 307 and 301.6231(c)-2T for special rule relating to certain applications and claims for refund based on losses, deductions, or credits from abusive tax shelter partnerships.

[T.D. 8128, 52 FR 6781, March 5, 1987; T.D. 88808; 64 FR 3838, Jan. 26, 19991

• *Regulations*

[1 37,5661 § 301.6221-1. **Tax treatment determined at partnership level.-(a)** In *general.-A partner's* treatment of partnership items on the partner's return may not be changed except as provided in sections 6222 through 6231 and the regulations thereunder. Thus, for example, if a partner treats an item on the partner's return consistently with the treatment- -of the item on the partnership return, the IRS generally cannot adjust the treatment of that item on the partner's return except through a partnership-level proceed-
ing. Similarly, the taxpayer may not put partnership items in issue in a proceeding relating to nonpartnership items. For example, the taxpayer may not offset a potential increase in taxable income based on changes to nonpartnership items by a potential decrease based on partnership items.

(b) *Restrictions inapplicable after items become nonpartnership* items.-Section 6221 and paragraph (a) of this section cease to apply to items arising from a partnership with respect to a partner when those items cease to be partnership items with respect to that partner under section 6231(b).

(c) *Penalties determined at partnership level.-*Any penalty*,* addition to tax, or additional amount that relates to an adjustment to a partnership item shall be determined at the partnership level. Partner-level defenses to such items can only be asserted through refund actions following assessment and payment. Assessment of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item shall be made based on partnership-level determinations. Partnership-level determinations include all the legal and factual determinations that underlie the determination of any penalty, addition to tax, or additional amount, other than partner-level defenses specified in paragraph (d) of this section.

(d) *Partner-level defenses.-Partner-level defenses* to any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item may not be asserted in the partnership-level proceeding, but may be asserted through separate refund actions following assessment and payment. See section 6230(c)(4). Partner-level defenses are limited to those that are personal to the partner or are dependent upon the partner's separate return and cannot be determined at the partnership level. Examples of these determinations are whether any applicable threshold underpayment of tax has been met with respect to the partner or whether the partner has met the criteria of section 6664(b) (penalties applicable only where return is filed), or section 6664(c)(1) (reasonable cause

exception) subject to partnership-level determinations as to the applicability of section 6664(c)(2).

(e) *Cross-references.-See § § 301.*6231(c)-1 and 301.6231(c)-2 for special rules relating to certain applications and claims for refund based on losses, deductions, or credits from abusive tax shelter partnerships.

(f) *Effective date.-This section* is applicable to partnership taxable years beginning on or after October 4, 2001. For years beginning prior to October 4, 2001, see § 301.6221-1T contained in 26 CFR part 1, revised April 1, 2001. [Reg. § 301.6221-1.1

.O1 **Historical Comment**: Proposed 3/2/87. Adopted 10/3/2001 by T.D. 8965.

**2007(15)CCH-StandardFederalTaxReports**                    **Reg.§301.6221-1(f)T37,566**

CERTIFICATE OF SERVICE

I certify that service of the United States' Reply Brief has been made this _____ day of

March, 2007, on plaintiff's counsel by electronic mail to David Curtin

(DCurtin@McKeeNelson.com) and by overnight delivery to the following address:

David Curtin, Esquire
 McKee Nelson LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036


_____
U.S. Department of Justice
Tax Division
 Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C.  20044
(202) 307-6440